David D. Lin
Michael J. Druckman
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
david@iLawco.com
mdruckman@iLawco.com

*Attorneys for Douglas Senderoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In Re:** <br><br> **Rahul Dev Manchanda** | Case No. 23-22095 (SHL) <br><br> *Return Date*: 04/06/2023 (10:00 AM) |
| **Douglas Senderoff**, <br><br>   Plaintiff; <br><br> v. <br><br> **Rahul Manchanda**, <br><br>   Defendant. | Adv. Pro. No. 23-07008 (SHL) |

**Reply in Support of Motion for Relief from Automatic Stay for Defamation Claims by Douglas Senderoff**

 Creditor and Adversary-Plaintiff Douglas Senderoff ("Senderoff") submits this reply in support of his motion for an order lifting the automatic stay of his pre-petition defamation claims against Debtor Rahul Dev Manchanda ("Manchanda") (ECF 12), and in response to Manchanda's objection to the same (ECF 22).

# TABLE OF CONTENTS

**Table of Authorities** ......................................................................................................... iii

**Introduction** ......................................................................................................................1

**Argument** .........................................................................................................................2

    A.   Senderoff is Not Seeking a Distributive Advantage ..................................2

    B.   The *Sonnax* Factors Favor Relief..............................................................5

    C.   The Defamation Litigation is Relevant ......................................................6

    D.   Manchanda's Petition was Brought in Bad Faith........................................7

**Conclusion**......................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Gonzalez-Servin v. Ford Motor* Co.,
   662 F.3d 931 (7th Cir. 2011) ...................................................................................1

*In re Breitburn Energy Partners LP*,
   571 B.R. 59 (Bankr. S.D.N.Y. 2017) ....................................................................2, 3

*In re Finizie*,
   184 B.R. 415 (Bankr. D. Conn. 1995) ......................................................................8

*In re Goidel,*
   150 B.R. 885 (Bankr. S.D.N.Y. 1993) ..................................................................4, 5

*In re Kerivan*,
   No. 09-14581 (AJG), 2010 WL 2472674 (Bankr. S.D.N.Y. June 15, 2010) ...........8

*In re Leibowitz*,
   147 B.R. 341 (Bankr. S.D.N.Y. 1992) ..................................................................2, 3

*In re MacInnis*,
   235 B.R. 255 (S.D.N.Y. 1998) .................................................................................7

*In re Montalvo*,
   416 B.R. 381 (Bankr. E.D.N.Y. 2009) .....................................................................9

*In re Oh*,
   No. 19-10562, 2020 WL 8184208 (Bankr. S.D. Ohio Mar. 31, 2020) .................4, 5

*In re Sonnax Indus.*, *Inc.*,
   907 F.2d 1280 (2d Cir. 1990) ...................................................................................8

**Statutes**

11 U.S.C. § 521 ...............................................................................................................9

**Rules**

Fed. R. Bankr. 9011 .......................................................................................................10

# INTRODUCTION

For the past four years, Senderoff has been trying to hold Manchanda accountable for a cruel and malicious defamation campaign through a lawsuit in state court. However, rather than litigate the case on the merits, Manchanda has repeatedly stalled it with frivolous filings and other bad faith behavior. This is not hyperbole. The Second Circuit warned Manchanda about meritless filings and appeals, he reported both his own and Senderoff's attorney to the First Department's Grievance Committee, and he sued judges resulting in recusal. Given this behavior, Senderoff was understandably skeptical when Manchanda filed the present bankruptcy, and he moved to seek relief from the stay.

Senderoff's motion is based on two grounds. *First*, even if this were a "regular" bankruptcy case, lifting the stay to allow Senderoff to liquidate a pre-petition claim for a (likely) non-dischargeable debt would be efficient and fair. *Second*, this is *not* a "regular" case—between false and suspicious claims in Manchanda's petition, his prior behavior in this Court, and his tactics litigating against Senderoff, there are many indications of bad faith.

Manchanda's opposition makes several arguments discussed below. But it is more notable for what it omits. It does not cite any cases involving pre-petition defamation claims or respond to those cited by Senderoff; it does not attempt to justify the false and suspicious financial statements in his petition; it does not dispute his dilatory and vexatious behavior in the litigation with Senderoff; and it barely addresses his prior bankruptcies beyond vaguely suggesting he "actively participated" in them. But ignoring these issues does not make them go away. *Cf. Gonzalez-Servin v. Ford Motor* Co., 662 F.3d 931, 934 (7th Cir. 2011) ("The ostrich is a noble animal, but not a proper model for an appellate advocate.")

# ARGUMENT

Manchanda principally opposes the motion on four grounds: (1) Senderoff only has a "potential unsecured claim" and is not "entitled to an advantage over all of the Debtor's other unsecured claims" (Obj. at 2); (2) several *Sonnax* factors weigh against lifting the stay, including the burden of litigating the case and trial readiness; (*id.* at 5-6); (3) the "allegations in the defamation case and other matters . . . are not relevant to … whether cause exists to lift the stay" (*id.* at 2); and (4) Senderoff has not demonstrated that Manchanda is acting in bad faith (*id.* at 6-7.) Each of these arguments fails.

## A. Senderoff is Not Seeking a Distributive Advantage

Manchanda describes Senderoff's claim as "unsecured," and argues that he has not provided a compelling reason it should be "entitled to an advantage over all of the Debtor's other unsecured claims." (Obj. at 2). In support, he relies on two cases where courts denied unsecured creditors relief from a stay, *In re Leibowitz*, 147 B.R. 341 (Bankr. S.D.N.Y. 1992) and *In re Breitburn Energy Partners LP*, 571 B.R. 59 (Bankr. S.D.N.Y. 2017). As the court in *Leibowitz* explained:

> Generally, unsecured claims should not be granted relief from the stay because to do so would result in a violation of one of the fundamental concepts of bankruptcy law; that there should be an equality of distribution among creditors. An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code.

147 B.R. at 345; *accord In re Breitburn Energy Partners LP*, 571 B.R. at 65. However, Manchanda does not explain how merely *liquidating* a potentially non-dischargeable claim would harm other creditors in this no-asset Chapter 7 case, and the two case he cites dealt with very different situations.

In *Leibowitz*, a general contractor sought relief from the stay in a Chapter 13 case to foreclose on the debtor's home pursuant to a mechanic's lien. 147 B.R. at 343. However, the Court found that two prior liens on the home exceeded the property's value and held that this rendered the contractor's claim unsecured. *Id.* at 343-44. Since the claim was unsecured, the contractor could not proceed with foreclosure because that would give it an unfair advantage over other unsecured creditors. *Id.* at 345.

In *Breitburn*, a royalty trust sought relief from the stay in multiple Chapter 11 cases brought by debtors in the oil and gas industry. 571 B.R. at 61-64. Prior to the bankruptcies, one of the debtors sued the trust for a declaratory judgment over royalty payments, and the trust counterclaimed with breach of contract and tort claims against the debtors and third parties. *Id.* at 63-64. On the trust's motion for relief, the court lifted the stay on the breach of contract claim but maintained it on tort claims. *Id.* at 67-69. Although the analysis of the tort claims was brief, the court made two important observations: (1) the trust could still proceed against non-debtors and obtain pre-trial discovery from the debtors; and (2) keeping the stay in place would allow the debtors to "avoid the time and expense of participating in a trial involving numerous parties when the ultimate distribution to the unsecured class may prove that the value of the claim in 'bankruptcy dollars' is not worth the expense to either party of litigating it." *Id.* at 69.

*Leibowitz* and *Breitburn* are nothing like this case. Other than an interesting analysis of the lien "strip-down" process in a Chapter 13 case, *Leibowitz* stands for the unremarkable proposition that an unsecured creditor cannot bypass the distributive scheme by *collecting* on a debt absent extraordinary circumstances. *Breitburn* is slightly more analogous, but not by much. It was a Chapter 11 case; the business tort claims involved numerous parties and

would have been complex and expensive to litigate (e.g., the debtors were represented by Weil, Gotshal & Manges); there was no indication that the tort claims were potentially non-dischargeable; and there was a substantial concern that the parties would waste time and resources on claims that might ultimately be worth less than the cost of litigation. Neither considered the issue here—whether to lift the stay in a no-asset Chapter 7 case to liquidate a pre-petition defamation claim alleged to be non-dischargeable. It is telling that Manchanda relied on these decisions while ignoring the two directly on-point cases cited by Senderoff.

In *In re Goidel,* 150 B.R. 885 (Bankr. S.D.N.Y. 1993) and *In re Oh*, No. 19-10562, 2020 WL 8184208 (Bankr. S.D. Ohio Mar. 31, 2020), the courts considered whether to lift the stay in Chapter 7 cases to allow pre-petition defamation actions to proceed in state court. In both, the courts lifted the stay and abstained from considering dischargeability, unless and until it became necessary. *See In re Goidel*, 150 B.R. at 889 (creditor could "proceed with her state court defamation action to judgment, but there shall be no execution on any such judgment pending further determination by this court."); *In re Oh*, 2020 WL 8184208, at *6 (Bankr. S.D. Ohio Mar. 31, 2020) ("cause exists to grant [creditor] relief from the automatic stay pursuant to § 362(d)(1) for the limited purpose of litigating the Defamation Claim in the Georgia State Court").

This procedure poses minimal risk to unsecured creditors, particularly in a no-asset Chapter 7 case like this one. As the *Oh* court observed, there can be little impact on the administration of the estate in "a no-asset chapter 7 case with no expected distribution of assets to creditors regardless of the outcome of the State Court Action." 2020 WL 8184208, at *4. Other than quoting the out-of-context standard from *Leibowitz* and *Breitburn*, Manchanda does not provide any reason to believe the same would not be true here too.

**B. The *Sonnax* Factors Favor Relief**

In addition to the unarticulated concerns for unsecured creditors, Manchanda makes several other arguments under the *Sonnax* factors. But none are particularly persuasive.

Manchanda first objects to Senderoff's claim that that determining the amount and existence of the debt are prerequisites to a decision on dischargeability. (*See* Obj. at 5, Mot. at 12. But in support, he makes an entirely different argument—that bankruptcy courts have the *authority* to enter monetary judgments. (Obj. at 5). Senderoff never disputed that point. Rather, for legal and practical reasons, it makes sense to determine whether a debt exists and how much it is before determining whether it is dischargeable. *See In re Goidel,* 150 B.R. at 888 ("In order to determine if [the] claim is nondischargeable … it must be established that the debtors owe a debt"); *In re Oh*, 2020 WL 8184208 at * 2 ([p]rior to obtaining a determination that a debt is excepted from discharge . . ., a plaintiff-creditor must first establish that a debt exists.") While the bankruptcy or district court may have the authority to adjudicate Senderoff's case, the New York Supreme Court is much closer to making a decision, and allowing the case to proceed could lead to a partial resolution of the issues (*Sonnax* 1).

Manchanda also argues that his having not sat for a deposition, the parties are "clearly not ready for trial." (Obj. at 5.) This misconstrues the status of the case, which has been pending for *four years*. Manchanda's deposition has not taken place because he refused to cooperate in discovery, at one point telling his attorney "fuck what this judge 'requires,' as he is biased and full of shit." (ECF 12-1 at 5). This behavior, combined with his failure to answer the amended complaint, show a steadfast refusal to litigate the case on the merits. Prior to the stay, the court was considering a fully briefed motion for default judgment,[1] there

---

[1] *Senderoff v. Manchanda,* No. 152538/2019, Dkt. 180, *available at*:
https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=/3BB15xi5gjs3xjWXxGAQQ==&system=prod

is a reasonable probability it will be successful, and it could lead directly to a judgment on liability.

Finally, Manchanda claims that litigating Senderoff's case would be burdensome and "a major reason that [he] filed this case was to relieve himself of the burdens of defending several claims." (Obj. at 6). He does not say whether he means a *financial* burden, or merely the burden of facing responsibility for his actions. In any event, he does not dispute that he is an attorney, that he often litigates cases *pro se*, and that he litigated Senderoff's case *pro se*. Nor does he offer any evidence the case would be burdensome to litigate, e.g., competing demands on his time or anticipated costs. Again, there is currently a fully briefed dispositive motion pending. Even if the motion does not resolve the dispute, it is a simple two-party defamation case involving few witnesses and documents, and there is no reason it should be costly to litigate—other than Manchanda's own attempts to make it so.

### C. The Defamation Litigation is Relevant

Senderoff's opening brief included a detailed overview of his defamation allegations, and Manchanda's response to the same. (Mot. at 2-7). This included the appearance of new defamatory posts referencing Senderoff's attorneys immediately after Manchanda was served with the first complaint (*id.* at 5); outrageous claims against judges, court staff, and Manchanda's first attorney (*id.* at 6); numerous frivolous filings and appeals (*id.* at 6-7); emails showing Manchanda knowingly disobeyed court orders (*id.* at 7); and a claim by Manchanda's second attorney that Manchanda made "numerous crude, false, and defamatory allegations against [him]." (*Id.*)

Manchanda's opposition does not respond to these points, claiming "[t]his Objection will not address these statements because they are not relevant to the Bankruptcy Court's

determination of whether cause exists to lift the stay." (Obj. at 2.) But they *are* relevant, both to the *Sonnax* factors and the analysis of bad faith.

For example, Manchanda's repeated attempts to delay the litigation and make it more complex and expensive to litigate are relevant to assessing judicial economy (*Sonnax* 10) and the balance of harms (*Sonnax* 12). The strong factual support for Senderoff's original defamation allegations, along with Manchanda making defamatory claims about attorneys, judges, and court staff, support an inference that Senderoff is likely to prevail on the merits. Combined with Manchanda's documented refusal to obey court orders, this suggests that Senderoff is likely to prevail on his motion for default. That is relevant to judicial economy (*Sonnax* 10), trial readiness (*Sonnax* 11) and the balance of harms (*Sonnax* 12). Finally, Manchanda's penchant for frivolous filings is also directly relevant to the bad faith inquiry—both because they suggest he is trying to delay Senderoff's case, and because they show a general disrespect for the legal process.

### D.  Manchanda's Petition was Brought in Bad Faith

The legal standard section of Senderoff's opening brief cited *In re MacInnis* for the proposition that it is "well established that a debtor's lack of good faith in filing a petition for bankruptcy constitutes sufficient 'cause' to lift the stay." 235 B.R. 255, 259 (S.D.N.Y. 1998). It also cited *In re Kerivan* for a list of factors courts have considered when assessing bad faith in a related context, whether to allow the debtor to convert a Chapter 7 case to a Chapter 13 case:

> (1) whether the debtor was forthcoming with the court; (2) whether the debtor accurately stated facts, debts, and expenses; (3) whether the debtor misled the court through fraudulent misrepresentation; (4) the timing of the petition; (5) the debtor's motive in filing the petition; (6) how the debtor's actions affect

creditors; and (8) whether the debtor has abused the purpose of the bankruptcy code.

No. 09-14581 (AJG), 2010 WL 2472674, at *2 (Bankr. S.D.N.Y. June 15, 2010)

Manchanda does not dispute that a "lack of good faith" is "sufficient" cause to lift the stay, or that it can at least be considered in the *Sonnax* analysis. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Finizie*, 184 B.R. 415, 419 (Bankr. D. Conn. 1995). Nor does he challenge the proposition that bad faith must be analyzed considering the "totality of the circumstances," which includes the factors listed in *Kerivan.* 2010 WL 2472674, at *2. Instead, he argues the cases are distinguishable—*MacInnis* was an indefinite Chapter 11 case and *Kerivan* involved the concealment of assets. (Obj. at 6).

Neither of these distinctions is compelling. Abuse of the bankruptcy process is no more acceptable in a Chapter 7 case than a Chapter 11 case. Either way, it creates undue delay and expense for creditors and wastes court resources. Moreover, Senderoff *does* assert that Manchanda is concealing income and assets, an issue that is conspicuously absent from the opposition brief. Indeed, the opposition devotes little discussion to bad faith generally.

In the past twelve years, Manchanda has filed six bankruptcies, five personally and one on behalf of his solely held law firm. (*See* Mot. at 8). In the opening motion, Senderoff identified multiple indications of bad faith in these cases. For example, in his last bankruptcy, the trustee moved to dismiss after he failed to timely file documents and remit payments. (See 2016-10222, ECF 163). Manchanda then ignored the motion for months, requested a last-minute adjournment blaming a non-appearing attorney, and then moved to dismiss the case without explanation. (*Id.*, ECF 180, 185).

This was hardly an isolated incident. In Manchanda's 2014 case, his creditors filed objections to a discharge and the confirmation plan. (2014-11259, ECF 21, 23). Rather than

file a response, he simply moved to dismiss the case (*id.* 31). In Manchanda's 2011 Chapter 7 bankruptcy, the court automatically dismissed the case, *nunc pro tunc,* after he failed to file required information under 11 U.S.C. § 521(a)(1). (2011-14666, ECF 33).

Manchanda's response to this is that he acted in good faith because he received one discharge and "actively participated" in the prior cases. (Obj. at 6-7.) While Manchanda did actively participate in the cases, that does not demonstrate good faith. His participation was not remedying deficiencies, demonstrating workable plans for reorganization, or responding to objections from creditors. Rather, it was filing *dozens* of frivolous contempt motions, at one point prompting Judge Bernstein to observe his conduct implied he was "attempting to intimidate his creditors and their attorneys." (2011-15837, ECF 27).

In support, Manchanda cites *In re Montalvo*, 416 B.R. 381 (Bankr. E.D.N.Y. 2009), but does not explain the relevance of the case or provide a pincite. (Obj. at 6.) *Montalvo* does say that courts have "varied on whether a bankruptcy court can infer an intent to hinder, delay and defraud from the fact of serial filings alone," *id.* at 386, but Senderoff is hardly relying on serial filings alone. Manchanda's prior *conduct* in the serial bankruptcies and his vexatious tactics in the litigation against Senderoff are indications of bad faith. They are also useful context for considering Manchanda's filings *in this case*, the most critical factor when analyzing bad faith.

The fundamental problem with Manchanda's petition is that it is based on false and highly suspicious statements about his financial status. These are not the result of an innocent misunderstanding of the law or facts, because they all point in the same direction—Manchanda understates his income and assets, and overstates his liabilities and exemptions, even where that results in inconsistency.

For example, Manchanda claims an income for the current and preceding two years of approximately $52,000. (ECF 10 at 1-2). However, he also claims to pay his entire $6,517.39 mortgage payment "from his business since he uses it for business purposes." (ECF 5 at 4). That means his income statement is false or, to the extent it is based on the claim that the entire mortgage is a *deductible* business expense, it is a legal contention not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. 9011(b)(2). Manchanda and his attorney both claim experience with tax law, and they know better.[2]

This is not a trivial issue. If the mortgage payment is properly included in Manchanda's income, it would easily trigger the presumption of abuse. (*See* ECF 6). And even if taken at face value, this position is inconsistent with claims regarding other assets. Manchanda claims that his business, Manchanda Law Office PLLC, is only worth $100. (ECF 13). However, if the business is paying the entire mortgage payment as a business expense, then it should have a large equity interest in the property. It also strains credulity to believe that Manchanda is that aggressive in claiming business expenses, yet the business owns no other assets, such as the computers currently listed as exempt personal property on Schedule C. (*Id.*)

These issues were raised in Senderoff's opening brief and extensively discussed at the 341 meeting, which also raised serious questions about Manchanda's lack of a personal bank account, use of business funds to pay for meals and utilities, and the source of the mortgage down payment, including whether he used an SBA loan to pay for it. Yet none of these issues are even *mentioned* in the opposition. Why?

---

[2] *See* <https://manchanda-law.com/irs-tax-offer-in-compromise-oic-lawyer/> and <https://www.bronsonlawoffices.com/legal-services/tax-services/>, last accessed Apr. 3, 2023.

## CONCLUSION

Senderoff respectfully asks the Court to enter an order granting him relief from the automatic stay as to *Senderoff v. Manchanda*, Index No. 152538/2019 (Sup. Ct., N.Y. Cty.) and the claims underlying that dispute. Senderoff also requests that the Court exercise the full extent of its authority to supervise Manchanda's behavior, scrutinize his petition, and take any actions that it deems fit to ensure the integrity of the bankruptcy process.

| | |
|---|---|
| Respectfully Submitted,<br>April 3, 2023 | /s/ *David D. Lin*<br>David D. Lin<br>Michael J. Druckman<br>LEWIS & LIN, LLC<br>77 Sands Street, 6th Floor<br>Brooklyn, NY 11201<br>Tel: (718) 243-9323<br>david@iLawco.com<br>mdruckman@iLawco.com<br><br>*Attorneys for Douglas Senderoff* |