1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-22095-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   RAHUL DEV MANCHANDA,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  300 Quarropas Street, Room 248

13                  White Plains, NY 10601

14

15                  March 16, 2023

16                  2:13 PM

17

18

19

20

21  B E F O R E :

22  HON SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ART

1    HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   UNITED STATES DEPARTMENT OF JUSTICE

 4        Attorney for United States Trustee

 5        201 Varick Street, Suite 1006

 6        New York, NY 10014

 7

 8   BY:  GREG ZIPES (TELEPHONICALLY)

 9

10   OFFICE OF THE CHAPTER 7 TRUSTEE

11        Attorneys for the Chapter 7 Trustee

12        2 Depot Plaza, Suite 2 E

13        Bedford Hills, NY 10507

14

15   BY:  MARIANNE T. O'TOOLE (TELEPHONICALLY)

16

17   BRONSON LAW OFFICES, P.C.

18        Attorneys for the Debtor

19        480 Mamaroneck Avenue

20        Harrison, NY 10528

21

22   BY:  H. BRUCE BRONSON (TELEPHONICALLY)

23

24   ALSO PRESENT TELEPHONICALLY:

25   MIRIAM GLADDEN
```

1          P R O C E E D I N G S

2               THE COURT:  Good afternoon.  This is Judge Sean

3     Lane, in the United States Bankruptcy Court for the Southern

4     District of New York.  And we are here for a 2:00 in the

5     Chapter 7 case, Rahul Dev Manchanda, Case Number 23-22095.

6     And we'll start as we always do with appearances.  So let me

7     find out who is here for the Debtor in this Chapter 7?

8               MS. GLADDEN:  Good afternoon.  I called this

9     morning.  I'm calling from the law office of Rahul

10    Manchanda.

11              THE COURT:  All right.  Are you a lawyer?

12              MS. GLADDEN:  I am an attorney, but I have to tell

13    you I just found out about this matter this morning when I

14    called you.

15              THE COURT:  Well, is Mr. -- I think the direction

16    was to have the Debtor, Mr. Manchanda, here.  Is Mr.

17    Manchanda making an appearance?

18              MS. GLADDEN:  I have no control over that, sir.

19    And no, he's not here.  He's not making an appearance.  He

20    asked me to sit on this call.

21              THE COURT:  All right.  Well, say you're sitting

22    in essentially as an interested member of the public,

23    essentially.

24              MS. GLADDEN:  Say it again?

25              THE COURT:  So, I will -- well, we'll get to it.

1    All right.  I have your appearance.  So let me get Mr.

2    Bronson's appearance.

3              MR. BRONSON:  Bruce Bronson, on behalf of the

4    Debtor, I suppose, Your Honor.

5              THE COURT:  All right.  And the Chapter 7 Trustee?

6    Oh, you're on mute.

7              MS. O'TOOLE:  See that?  I'm being warned.

8    Marianne O'Toole, the Chapter 7 Trustee.

9              THE COURT:  All right.  And on behalf of the

10   United States Trustee's office?

11             MR. ZIPES:  Good afternoon, Your Honor.  Greg

12   Zipes, with the U.S. Trustee's office.

13             THE COURT:  All right.  Good afternoon.  And any

14   other appearances?  All right.  So this status conference

15   was scheduled at my request for a number of reasons.  And so

16   let me sort of set the stage.

17             On the one hand, Mr. Manchanda, as the Debtor, has

18   been sending an extensive amount of emails to chambers.  And

19   I think visual -- a picture's worth a thousand words.  I

20   think this is the stack of the emails that we've received.

21   I think, if I'm counted correctly, there's some 19 emails

22   that we've received.  And email communications with chambers

23   are not the norm.  In fact, we didn't really have much of

24   them at all, other than people submitting proposed orders.

25   We had some modifications to that during COVID, but it's

1    never meant to be a substantive channel for communication

2    with the Court.  People are supposed to file things on the

3    docket.

4           There's another point as to the emails, which is

5    that they contain some wildly inappropriate information.  I

6    don't really know how else to say it.  So, one of them

7    contains Mr. Manchanda's communications back and forth with

8    other people, complaining about his conflicts with the Chief

9    Clerk and Chief Judge in New York Civil Courts.  Another has

10   his complaints about somebody who is some fee dispute

11   committee chief.  There's actually an expletive used to

12   describe her.

13          And others are also inappropriate; perhaps not

14   wildly inappropriate, but they include communications

15   between Mr. Manchanda and Mr. Bronson about various things

16   that are supposed to happen or not happen in the case, which

17   of course are attorney-client communications.

18          So it will come as no surprise, I think, to the

19   U.S. Trustee, to Mr. Bronson or Ms. O'Toole that I -- in

20   light of this avalanche of information that's been submitted

21   this way, that I'm going to order that...  Well, let me ask,

22   before I do.

23          One other thing that's a problem is Mr. Manchanda

24   is sending these for the Debtor directly to chambers, when I

25   understand Mr. Bronson is currently his counsel in this

1    Chapter 7 case.  And so we can't communicate directly with

2    somebody who is represented.  That's how the ethical rules

3    work.  So that's another significant hurdle.

4            So the takeaway, which is that I'm going to -- I

5    have to issue an order that requires that any communications

6    Mr. Manchanda wants to make, or Mr. Manchanda's counsel

7    wants to make with the Court, the Bankruptcy Court, need to

8    be on the docket like everybody else, filed on the docket.

9    There are rules about that.  I understand Mr. Manchanda's an

10   attorney, so I certainly would imagine he understands how

11   that's supposed to work.

12           And certainly, in those communications I would

13   certainly encourage him to avoid the kind of -- a lot of the

14   kind of information that, frankly, is being submitted to me

15   in these emails.  And that becomes even more clear when

16   there was something that was actually said to the Bankruptcy

17   Court Clerk's office that was not filed.  And it was filed

18   by -- again, by Mr. Manchanda, who again is represented in

19   this case.  And there are a couple of these filings.

20           And one of them that is entitled, "Notice of

21   Motion for Contempt Against Dennis (indiscernible) and Tory

22   (indiscernible), and Paragraph 2 and 3 has -- I don't know

23   what else to call it other than ethnic slurs that are

24   contained.  And so, because of that, when we received them

25   the Clerk's office asked me whether they should be filed,

1   and I did not file them because they contained that kind of

2   scandalous inappropriate -- wildly inappropriate

3   information.

4          And so I can get into the details of this but,

5   frankly, talking about insurance entities, motivated and

6   pushed by mainly Jewish ethnic organized crime in New York

7   City to try and essentially take actions against him.

8   That's Paragraph 2.

9          Another talks about ethnic corruption, certain

10  ethnic over-representation.  And so things that are wildly

11  inappropriate and, frankly, it was very hard to figure out

12  where some or any of this had to do with the actual

13  bankruptcy case.

14         So there's a couple of these that were sent to the

15  Clerk's office but were not filed because they contained

16  that kind of a problem.  And they were all -- one was

17  another notice of grievance that he's -- apparently he's

18  filing with some other courts.  And so they contain similar

19  sort of ethnic slurs that I did not -- I directed the

20  Clerk's office not file.  I have them here, but I'm not

21  going to put them on the docket.

22         So that's why I wanted Mr. Manchanda here to hear

23  it directly from me as to what my concerns are.  And

24  frankly, it's astonishing that I would have these kind of

25  concerns of somebody who's a lawyer who is a debtor.  But

1    nonetheless, that's where we are.

2            So, I know Mr. Bronson has filed a motion to

3    withdraw as counsel in the Chapter 7 case.  That's on for

4    April.  We already had a hearing date for that.  And that

5    will go ahead as scheduled.  But in the meantime, I'm going

6    to enter an order that bars the submission of any email to

7    chambers and directs that everything be put on the docket,

8    filed on the docket.  The Court reserves the Court's right

9    to essentially strike something on the docket if it contains

10   scandalous information (indiscernible) --

11           MR. BRONSON:  Your Honor, you froze for a second,

12   just as you were referencing my motion to withdraw as

13   counsel.

14           THE COURT:  Oh.  All right.

15           MR. BRONSON:  So I didn't hear what you said right

16   after --

17           THE COURT:  No, that's fine.  Sorry.  The hazards

18   of the COVID era.  So your motion is going to go ahead as

19   scheduled.  But in light of the kind of information we're

20   receiving, I didn't want to wait until then to address these

21   issues.

22           And so that's why I'm going to issue an order that

23   bars the submission of emails by Mr. Manchanda directly to

24   chambers, and he's going to do what everybody else does,

25   which is file things on the docket of the Court in his case.

1    But they have to be about his case.  And if they contain

2    scandalous or defamatory information, they will be stricken,

3    or when the Clerk's office comes to me with the inevitable

4    question, should this be filed, Judge, I will say, no, I

5    will hold onto it.  So it will be part of the record but it

6    won't be on the public docket.

7              So I would hope that Mr. Manchanda would be here

8    to hear these kinds of concerns so that he can act

9    accordingly, but he seems intent on not being here.

10             So, with that, I realize that since I called the

11   conference, I thought it was only fair and incumbent upon me

12   to sort of lay out why I did and where -- what issues I had

13   -- led to the conference and what actions I'm going to take.

14   And then I thought, the people who are here, I'm happy to

15   canvass the room if anybody has any other concerns or other

16   suggestions about ways to proceed.

17             So let me start -- Mr. Bronson, I know you have a

18   motion to withdraw for a Chapter 7, so you may or may not

19   have anything you want to add beyond that.  But anything --

20   I'll give you the opportunity, obviously.

21             MR. BRONSON:  Well, Your Honor, you got 19 emails;

22   I got 1,019 emails.  I guess I need to limit, you know, what

23   I'm saying here.  But I think it's -- my problems with the -

24   - I thought I could thread the needle and get this client to

25   a discharge in the Chapter 7.  And I think we were well on

1     the way to do that.  But when --

2             THE COURT:  Well, we're not going to deal with

3     your motion to withdraw now, so --

4             MR. BRONSON:  I know.

5             THE COURT:  -- I just say that, just because I

6     don't -- you know, you're obviously free to comment on it,

7     but you're also free to wait until we have a hearing.

8             MR. BRONSON:  My -- the only thing is, I cannot

9     represent somebody that questions my ethics and my morality

10    and makes the kind of statements that Mr. Manchanda made to

11    me.  And you know, that's -- I could -- again, at the net

12    hearing, you know, maybe I'll go into more detail, maybe I

13    won't.

14            But there's a plethora of -- he's put a grievance

15    in on me.  He's put a grievance in on Ms. O'Toole.  Or at

16    least I've seen copies of them.  I think they've been filed.

17    And the statements are ridiculous, Your Honor.  And I just

18    can't -- I can't represent somebody that isn't going to

19    follow my advice.  I did think I could get a difficult case

20    like his to the finish line.  And I'm sorry, I just can't --

21    I can't do that in light of the statements he's made about

22    me.

23            THE COURT:  All right.  All right.  Well, we're

24    going to keep your motion on.  I'm trying to remember what

25    date we had set in April.  Is it April 6th?

1         MR. BRONSON:  April 6th, Your Honor.

2         THE COURT:  Okay.  So we'll deal with that on

3    April 6th.  And to the extent that there's from Mr.

4    Manchanda's office here, April 6th is the date.  And so, Mr.

5    Manchanda, I'm considering has more than ample notice of

6    that.  So (indiscernible) --

7         WOMAN 1:  I will relay the information to him

8    immediately.  I understand.

9         THE COURT:  All right.  Thank you.  So, with that,

10   I'll turn to the Chapter 7 Trustee, Ms. O'Toole.  And again,

11   in each of these instances, people may have something they

12   want to say, they may not.  But I wanted to give you an

13   opportunity.  So let me hear from the Chapter 7 Trustee.

14        MS. O'TOOLE:  Your Honor, I have nothing to add.

15   I would only ask, could you ask the person on the phone to

16   identify who she is by name?

17        THE COURT:  That seems like a very fair request.

18        MS. GLADDEN:  Hello.

19        THE COURT:  Hello?

20        MS. GLADDEN:  Yes.  My name is Miriam Gladden, and

21   I'm here from the Manchanda's office.

22        THE COURT:  All right.  Thank you very much.

23   Anything else for the Chapter 7 Trustee?

24        MS. O'TOOLE:  No, Your Honor.

25        THE COURT:  All right.  And last but not least,

1    Mr. Zipes, anything from the United States Trustee's office?

2            MR. ZIPES:  Your Honor, Greg Zipes, with the U.S.

3    Trustee's office.  I wasn't sure what this conference was

4    going to be and I understand the Court is entering an order.

5    Can I make an unusual request and just adjourn this five

6    minutes -- five minutes so I can confer internally and just

7    --

8            THE COURT:  Yeah.  That would be fine.  I realize

9    people had no idea what I was going to say.  And frankly, I

10   had a busy couple weeks, so I didn't have a chance to draft

11   an order, to set the schedule and explain what I was going

12   to say.  So that's fine.  I'm happy to do that.  So I'll --

13           MR. ZIPES:  I may have --

14           THE COURT:  I'll put myself on mute and you can do

15   the same and then come back.  That would be fine.

16           MR. ZIPES:  It'll be no more than five minutes,

17   and it may be that -- the order -- we may have an additional

18   request.  But, let me just --

19           THE COURT:  Okay.  That's fine.  So we'll -- I'll

20   hold on.  I'm going to put myself on mute.  And I'll unmute

21   myself when you come back.

22           MR. ZIPES:  Thank you.

23       (Recess)

24           THE COURT:  All right.  I see Mr. Zipes back on

25   the Zoom.  So, with that, I'll pass the virtual podium over

1    to him.

2              MR. ZIPES:  Yes.  Your Honor, thank you.  My

3    office is obviously alarmed if the Court is getting email

4    correspondence.  Pro se debtors every once in a while need

5    to be educated and they have to be taught that parties are

6    entitled to notice of these documents, but also in light of

7    the way the Court is characterizing them.

8              So, what I'm struggling with a little bit is -- I

9    think my office wants to see these documents, but it could

10   be limited to any future documents.  So the Debtor is now on

11   notice at the moment, but if the Debtor continues with these

12   filings with the Clerk's office, I think my office would

13   want to see these, whatever is being filed.  And --

14             THE COURT:  So, perhaps we could do this.  We

15   could enter an order that prohibits the submission of things

16   by email, gives sort of a counsel to the Debtor, who -- it's

17   a matter of title, perhaps only, he's represented by Mr.

18   Bronson, but it sounds like communications have irreparably

19   broken down.  So it gives him notice about submitting things

20   and what kind of content is appropriate.

21             And the order could also reserve the U.S.

22   Trustee's office right to request to see any and all

23   documents submitted directly to the Court in the future,

24   should the need arise and that request be appropriate.  No

25   problem with that.

1          MR. ZIPES:  Thank you, Your Honor.  And if we need

2     to refine that, we would probably do it by application to

3     the Court.

4          THE COURT:  All right.  And if you want, the other

5     parts of that order are fairly straightforward, which is no

6     file -- no submissions by email.  If you want to -- if you

7     want to draft the order so that you get the language in a

8     way that's comfortable for your office, I'm happy to do

9     that.  Otherwise, we're happy to drafted in chambers.

10    Whatever you prefer.

11         MR. ZIPES:  Your Honor, I don't -- I think it's

12    most appropriate for the Court to draft --

13         THE COURT:  All right.

14         MR. ZIPES:  -- the order.

15         THE COURT:  That's fine.  That's fine.  All right.

16    So, with that, I think the reason for this status conference

17    being convened has been accomplished.  And while we always

18    hope that filings, new cases reach successful conclusions,

19    there are certain rules of the road and they need to be

20    followed.

21         So I'll get that order out and I expect I will see

22    you all on April 6th.  If there's any reason to chat about

23    things before then, folks can request a conference, just on

24    notice to all interested parties, and I'd be happy to do

25    that if I can be of assistance.  But otherwise, I'll see you

1  April 6th.

2  MR. ZIPES:  Your Honor, I just want to apologize

3  for not having a jacket.  I'm traveling and I didn't bring

4  one.

5  THE COURT:  That's fine.  You have a tie.  And

6  during COVID, there were quite a few appearances without a

7  tie.  And sometimes I was sitting in my daughter's bedroom,

8  which I had made a makeshift work area, which was a bit of a

9  disaster.  And I (indiscernible) if I put on a tie and a

10  robe, the least you could do is put on a tie.

11  MR. ZIPES:  Yes.

12  THE COURT:  So, no, it's perfectly fine.  All

13  good.  If that's my big problem today, I have no problems at

14  all.  Thank you very much and have a good afternoon, all.

15  And see you April 6th at (indiscernible).  Thank you.

16  MS. GLADDEN:  Thank you.

17  MAN 1:  This guy was from the U.S. something, he

18  was talking.  He said it's only fair that we get our -- we

19  get a copy of all those emails that were sent by Mr.

20  Manchanda to the Clerk's office.  The Judge said no problem

21  (indiscernible).

22  WOMAN 1:  He's from the U.S. what?

23  MAN 1:  I think the U.S. Office something,

24  trustees, or...?

25  WOMAN 1:  Well, the Judge is going to send an

1    order out and the order is going to direct Manchanda not to

2    contact chambers directly, not to email chambers --

3              MAN 1:  Yeah.

4              WOMAN 1:  -- to avoid using any inappropriate

5    language --

6              MAN 1:  To put everything on the docket.

7              WOMAN 1:  Okay.  Yes.  So --

8              MAN 2:  He's going to draft another order for this

9    --?

10             WOMAN 1:  This is not an order.  This is a phone

11   call.

12             MAN 2:  Hmm?

13             WOMAN 1:  This is just a conference call.  He's

14   going to draft an order saying that.  I guess it'll be here

15   in a couple of days.

16             MAN 1:  Yeah.  And he's --

17             WOMAN 1:  Well, it'll be on the email.  It'll be

18   on the uploaded --

19             MAN 1:  Right.  And he's also going to like draft

20   an order or something that allows this guy to have an access

21   to those emails, because he wants a copy of them.  The last

22   guy he was talking --

23             WOMAN 1:  Yeah, but what's the last guy going to

24   do with them?

25             MAN 1:  I don't know.  He said it's -- remember

1   when he asked for five minutes?  He said my office's

2   requesting that it's only fair that we get a copy of all

3   those emails that are being sent to the Clerk's office --

4               WOMAN 1:  Is he from the Attorney Grievance

5   Committee?

6               MAN 1:  No, he said, I'm from the U.S. something.

7   I didn't get it.  U.S. something.  Did you get it

8   (indiscernible)?  Get that name?

9               WOMAN 2:  Please disconnect from the call.

10              (Whereupon these proceedings were concluded at

11  2:38 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6     *[signature: Sonya M. Ledanski Hyde]*

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  April 4, 2023