1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-22095-shl

4   Adv. Case No. 23-07008-shl

5   - - - - - - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RAHUL DEV MANCHANDA,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12  SENDEROFF,

13               Plaintiff,

14          v.

15  MANCHANDA,

16               Defendant.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - -x

18                    United States Bankruptcy Court

19                    300 Quarropas Street, Room 248

20                    White Plains, NY 10601

21

22                    April 6, 2023

23                    11:21 AM

24

25

1    B E F O R E :

2    HON SEAN LANE

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   HEARING re 23-22095-shl Status Conference

2

3   HEARING re Doc. #18 Motion to Withdraw Bronson Law Offices

4   PC as Attorney to Debtor

5

6   HEARING re Doc. #12 Motion for Relief from the Automatic

7   Stay Re:  Defamation Claims by Douglas Senderoff

8

9   HEARING re Adversary Proceeding 23-07008-shl Scheduling &

10   Status Conference Re:  Doc. #14 Motion to Dismiss Adversary

11   Proceeding Filed by Defendant Rahul Manchanda

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    BRONSON LAW OFFICES PC

4         Attorneys for the Debtor

5         480 Mamaroneck Avenue

6         Harrison, NY 10528

7

8    BY:  H. BRUCE BRONSON

9

10   O'TOOLE & O'TOOLE PLLC

11        Attorneys for the Chapter 7 Trustee

12        2 Depot Plaza, Suite 2E

13        Bedford Hills, 10507

14

15   BY:  MARIANNE T. O'TOOLE

16

17   UNITED STATES DEPARTMENT OF JUSTICE

18        Attorneys for the U.S. Trustee

19        201 Varick Street

20        New York, NY 10014

21

22   BY:  DANIEL RUDEWICZ

23

24

25

```
 1   LAW OFFICE OF WILLIAM F. MACREERY

 2        Attorneys for Marianne T. O'Toole, as Trustee

 3        7 Granite Springs Road

 4        Granite Springs, NY 10527

 5

 6   BY:  WILLIAM F. MACREERY

 7

 8   UNITED STATES ATTORNEY'S OFFICE

 9        Attorneys for the IRS and SBA

10        86 Chambers Street, Floor 3

11        New York, NY 10007

12

13   BY:  DANA KUMAR

14

15   LEWIS LIN LLC

16        Attorneys for Douglas Senderoff

17        77 Sands Street, 6th Floor

18        Brooklyn, NY 11201

19

20   BY:  MICHAEL J. DRUCKMAN

21

22   ALSO PRESENT:

23   RAHUL DEV MANCHANDA

24

25
```

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  Good morning once

3     again.  Thank you again for folks' patience as we dealt with

4     the rest of the calendar this morning and for being hidden

5     behind a large television screen.  So we're here for Rahul

6     Dev Manchanda, a Chapter 7 case that is on for a variety of

7     matters.  And so we'll start as we always do with

8     appearances.  So let me start with the Debtor and find out

9     who's here for the Debtor.

10             MR. MANCHANDA:  Rahul Manchanda, Debtor.

11             THE COURT:  Good morning.

12             MR. BRONSON:  Good morning, Your Honor.  Bruce

13    Bronson on behalf of Bronson Law Offices and the Debtor for

14    the moment.

15             THE COURT:  All right.  And let me find out who's

16    here on behalf of the Chapter 7 Trustee.

17             MS. O'TOOLE:  Good morning.  Marianne O'Toole, the

18    Chapter 7 Trustee.

19             THE COURT:  All right.  Good morning.  And just as

20    you all are doing, you all can be heard and recorded with

21    the microphones that are in front of you, so the podium

22    exists, obviously, to the extent somebody wants to use it,

23    but I'm certainly happy with people using the microphones

24    that are right in front of them.  Let me get other

25    appearances.

1          MR. RUDEWICZ:  Good morning, Your Honor.  Daniel

2     Rudewicz with the Office of United States Trustee.

3          THE COURT:  All right.  Good morning.

4          MR. DRUCKMAN:  Good morning, Your Honor.  Michael

5     Druckman on behalf of Creditor Douglas Senderoff.

6          THE COURT:  All right.  Good morning.

7          MS. KUMAR:  Good morning, Your Honor.  Dana Kumar

8     from the U.S. Attorney's Office on behalf of the IRS and

9     SBA.

10         THE COURT:  All right.  Thank you very much.  Good

11    morning.  So we have a number of things that are on for

12    today, and so as you couldn't help but notice we're here in

13    person.  That's for a couple of reasons.  One is I'm getting

14    back to having hearings in person and getting back to the

15    default setting of having hearings in person, and

16    particularly in cases where I think it would be helpful to

17    do so.  I think there's no substitute for it, frankly.  We

18    all made do as best we could during COVID with virtual

19    hearings, but I think the last hearing we just had this

20    morning demonstrates that it is better to have these things

21    in person in most instances.

22         So we have several things on for today, a Motion

23    to Withdraw by the Bronson Law Offices and Motion for Relief

24    from the Automatic Stay by Douglas Senderoff.  And we also

25    have a -- something that was filed recently, a Motion to

1     Dismiss by the Debtor Mr. Manchanda.  And so before we get

2     to all those, I just want to start with a couple of things.

3            The Court, as folks are aware, has issued a number

4     of orders in these cases.  And I need to -- I think they

5     speak for themselves, but I need to make sure that everybody

6     understands why they were issued.  In any case where we get

7     an extensive amount of direct contact to chambers, be it by

8     email or be it by telephone calls, we are very conscious of

9     the potential problems that may stem from that.  So people

10    will contact chambers for things like scheduling, and that's

11    appropriate.

12            But for anything that's substantive, it's

13    inappropriate because we cannot engage with folks on

14    substantive matters ex parte.  That's a problem.  That in

15    this case is particularly a problem Mr. Bronson is currently

16    retained as counsel.  He's filed a Motion to Withdraw.  It's

17    on for today, but we did get numerous emails that were sent

18    directly to chambers as well as phone calls from -- directly

19    from the Debtor.  I can't talk to a represented party.

20    Again, ex parte issues, but also nobody can talk to a

21    represented party without the attorney being present.

22            There's another concern that's implicated by the

23    orders that were issued on the docket at Docket 20 and

24    Docket 27.  One's from March 17th and one's from April 5th.

25    That concerns sort of the court burden and appropriate

1    communications with the Court.  The default is, always has

2    been that when folks want to communicate with the Court they

3    file documents on the docket.  They go through ECF, or they

4    go to the window and they file things with the court that

5    way.

6              There are two notes here.  One is we received an

7    extensive amount of emails from Mr. Manchanda directly.

8    That's not the appropriate way to communicate to the Court.

9    That's why I issued the order regarding contact with

10   chambers on March 17th, and that order barred the Debtor

11   from contacting the Court by email or telephone.

12   Notwithstanding that, the Court has continued to receive

13   email correspondence from Mr. Manchanda.  If that continues,

14   I'll have no choice but to figure out an appropriate

15   sanction for each such violation because you're already in

16   violation of the court order by continuing with that.  So --

17   and again, I can't speak -- and nobody in chambers can speak

18   to a represented party.

19             So the other thing I wanted to point out is the

20   background for the order that was issued yesterday.  We had

21   gotten a call from Mr. Manchanda, who left a message in

22   chambers.  Again, we can't speak to a represented party.  We

23   can't speak -- we also can't speak to someone ex parte about

24   substantive issues.  And the voicemails that were left

25   reflected issues that Mr. Manchanda had with counsel.  Not

1    even his counsel who's currently representing him, but some

2    other counsel who I don't -- has not entered an appearance

3    in this case, so I don't even, frankly, know who that is.

4            But in any event, regardless of who it is, that's

5    not an appropriate communication for a party to have with

6    the Court.  It certainly is not an appropriate communication

7    for a party to have with the Court ex parte.  So those

8    things usually manifest themselves in motions that are filed

9    with the court for some particular relief.  A motion to

10   withdraw, a motion to have counsel no longer represent a

11   party, but that's the appropriate vehicle.

12           So I realize that this could all probably be

13   gleaned from the orders, the two orders that were issued,

14   but since they're important issues, I thought it was

15   appropriate to go over the groundwork once again in an

16   abundance of caution so that it's abundantly clear that we

17   do things here in court.  Although frankly, the rules that

18   we have here I don't think are any different from the rules

19   in Federal District Court or, frankly, in state court

20   because these are issues that are fundamental representation

21   ex parte communications and the like.

22           So with that, I thought the first thing that had

23   been filed that is on for the docket today is the Motion to

24   Withdraw, and I thought that was probably the most relevant

25   thing -- the most appropriate thing to start with first.  So

1    I'll turn the podium over to Mr. Bronson and we'll take it

2    from there.

3              MR. BRONSON:  Your Honor, I did put a response in

4    on the Motion to Lift the Stay.  So if my motion is granted

5    to withdraw, I don't think I can appear on that Motion to

6    Lift the Stay --

7              THE COURT:  All right.

8              MR. BRONSON:  -- so I'm suggesting maybe a

9    different order.

10             THE COURT:  A different -- I'm fine with that.  So

11   if we want to deal with the Motion to Lift the Stay, I do

12   have your response as counsel for Mr. Manchanda to that

13   motion.  So I'm happy to do that.  Thank you for the

14   suggestion.  So I've looked at all the papers, but I'm happy

15   to hear from the movant on the Motion to Lift the Stay that

16   was filed by Douglas Senderoff.  So let me ask counsel if

17   you want -- anything in particular you wanted to highlight

18   for purposes of today.

19             MR. DRUCKMAN:  Your Honor, I don't need to repeat

20   what's in our papers.  I guess I just would offer a

21   correction and an update.  You know, in our reply brief, we

22   suggested that for legal and practical reasons, the Court

23   had to determine the existence and amount of a debt prior to

24   dischargeability, and that is referenced in the In re O. and

25   In re Goidel cases that we cited.

1          I think that that's really more of a practical

2     consideration than a legal consideration because we found a

3     number of cases suggesting that the Court actually can

4     determine dischargeability even before a judgment has been

5     entered.  And these are in response to Mr. Manchanda's

6     Motion to Dismiss on standing grounds.  There's a number of

7     cases that say you don't actually have to proceed to

8     judgment to get a dischargeability determination.  We still

9     think it would be efficient to proceed to judgment, but we

10    wanted to make that correction.

11          And then in terms of the bad faith issues we

12    raised, there have been just a couple of developments since

13    the reply brief.  One is the Motion to Dismiss.  You know,

14    again, there's many cases that suggest that, you know, not

15    only does Douglas Senderoff have standing to bring the non-

16    dischargeability claim, but that he has to because if he

17    doesn't do it, his unliquidated pre-judgment claim could get

18    discharged.  So he's really compelled to bring the claim.

19    And Mr. Manchanda's Motion to Dismiss seeks sanctions, and

20    that request we think is frivolous and goes to the bad

21    faith.

22          THE COURT:  All right.  Let me just ad a

23    clarifying comment that I should've covered earlier, but

24    thank you for the reminder.  The Motion to Dismiss was just

25    recently filed, so it's not on for today.  I identified it

1    just as something that's out there.  So we'll table

2    conversations on that motion.  Before we all leave here

3    today we'll have a date for that.

4             MR. DRUCKMAN:  Okay.

5             THE COURT:  But certainly to the extent you're

6    mentioning it in terms of why you filed -- why you're

7    seeking the relief you're seeking on the Motion to Lift the

8    Stay, I get it.

9             MR. DRUCKMAN:  Okay.  And then the other issue

10   was, you know, in the emails last night, the Attorney

11   Grievance Committee was copied, the Office of Special

12   Counsel was copied, and I would just suggest that this is

13   similar to the behavior that Judge Brightburn noted about

14   attempting to intimidate and harass creditors.

15            THE COURT:  All right.

16            MR. DRUCKMAN:  And so unless the Court has any

17   questions, I'll rest on the papers.

18            THE COURT:  I do not.  Thank you very much.

19   Obviously we'll hear from Mr. Manchanda's counsel on this.

20   The question, Mr. Bronson, is whether I should hear from the

21   Chapter 7 Trustee first who may or may not have comments so

22   then that way you have one opportunity to respond.  So Ms.

23   O'Toole, as the Chapter 7 Trustee, anything that you wish to

24   be heard?

25            MS. O'TOOLE:  Your Honor, the only thing I would

1    say in terms of the amount of the claim now that it's in

2    bankruptcy, obviously they -- it hasn't been determined to

3    be an asset case, so a bar date hasn't been set.  But they

4    could file a proof of claim, and that proof of claim could

5    be the procedure for fixing the amount of claim, if any, and

6    dischargeability could be determined in terms of the

7    dischargeability complaint.  But I'm not opposing lifting

8    the stay for a determination in that case and fixing the

9    amount short of enforcing any kind of judgment.

10         THE COURT:  All right.  Thank you very much.  So

11   Mr. Bronson, you're up on behalf of the Debtor Mr.

12   Manchanda.

13         MR. BRONSON:  Thank you.  Your Honor, as stated in

14   my papers, I believe that generally the stay is not lifted

15   for an unsecured debt of this nature or any nature, and that

16   it's unfair to the other Creditors to do so.  Chapter 7

17   cases are generally fairly short, and there are other things

18   going on in this case which, you know, would make it not

19   relevant anyway.  But I do think the stay should remain in

20   place based on the case law.

21         I think a lot that's in the Movant's brief can be

22   -- has to do with what's in the petition, what's

23   appropriate, what's not appropriate.  I didn't argue any of

24   those points because I didn't really think it was necessary

25   to get into that for this purpose.  I do think the filed

1    petition, you know, did, at least at the time, state the

2    truth as to what the Debtor's position, financial position,

3    was.  So I would urge the Court not to lift the stay at this

4    moment.  Thank you, Your Honor.

5              THE COURT:  All right.  I guess my only question

6    for you, Mr. Bronson, is a very specific bankruptcy kind of

7    question.  There is a reference in -- certainly I'll preface

8    my question with the comment that, yes, it is normally the

9    rule.  Unsecured creditors in a case like a Chapter 7 case

10   that moves quickly that this is the breathing spell that a

11   Debtor is normally entitled to.  The motion itself, though,

12   makes reference to the five bankruptcy cases that Mr.

13   Manchanda has previously filed.

14             And the second is that it makes reference to Judge

15   Bernstein's comment in one of those bankruptcies that Mr.

16   Manchanda's "conduct implies that he is attempting to

17   intimidate his creditors and their attorneys," and then goes

18   on to talk about a particular individual saying in Hauser's

19   case by sending a copy of his frivolous motion replete with

20   scandals and defamatory statements to the Department

21   Disciplinary Committee.

22             And so I mention that because certainly the emails

23   the Court has been receiving are -- which I don't know if

24   other folks have them because that's one of the problems

25   with sending things by email to the Court is I'm not sure

1    who's copied and who actually gets it -- is the same kind of

2    conduct which is extensive disciplinary complaints being

3    filed and a lot of very serious accusations being thrown out

4    there.  It's one of the reasons why I didn't permit some of

5    the materials to be filed.  So -- and certainly this is -- I

6    realize this question puts you in an awkward position, Mr.

7    Bronson, since I know having been retained, the short period

8    of time you're already yourself the subject of a

9    disciplinary complaint by Mr. Manchanda, which I suppose

10   somewhat proves the point.  So but steering clear of that,

11   I'd just ask you to address the specific bankruptcies and

12   Judge Bernstein's comment.

13           MR. BRONSON:  Your Honor, I think that that

14   behavior, you know, certainly is an issue in a motion to

15   dismiss the case.  Lifting the stay, on the other hand, I

16   think -- you know, my view was, and I don't know if it's --

17   my view was that Mr. Manchanda could've -- could get a

18   discharge in this case, that he had a difficult case, but

19   that he would be entitled to a discharged.

20           What happened since I filed the petition and the

21   correspondence, I can't really speak to that.  I said I

22   would not handle any of those matters, that I didn't think

23   they were appropriate, and that I was just not going to be

24   involved in any of those matters.  But I think it goes

25   towards other issues, a dismissal, other factors.  I don't

1   even want to get into what else --

2           THE COURT:  No, that's fine.  I --

3           MR. BRONSON:  -- it could be, but --

4           THE COURT:  I think I understand your point.

5           MR. BRONSON:  -- not for the lift stay.  Thank

6   you, Your Honor.

7           THE COURT:  All right.  So let me hear anything in

8   reply from the movant.

9           MR. DRUCKMAN:  Your Honor, I'd just like to

10  reiterate, yes, bad faith can go to a motion to dismiss the

11  petition, but we cited case law that it can support lifting

12  the stay.  Bad faith is discussed in the Sonix case itself,

13  and we think it's just as applicable in seeking relief from

14  the stay.

15          THE COURT:  All right.  Thank you very much.  All

16  right.  So I'm not going to belabor the record by citing the

17  chapter and verse on the importance of the automatic stay to

18  bankruptcy,  It's all in the papers that were submitted in

19  the motion itself or the opposition, and also the grounds

20  for which the stay can be lifted that deals with the Sonix

21  factors for cause, and also does address bad faith.

22          In a Chapter 7 case, I do think Mr. Bronson has

23  the general rule correctly stated that it's unusual to lift

24  it in these kind of circumstances given the speed of Chapter

25  7 cases and that this is the breathing spell that is

1    contemplated by the code.  Given that default rule, I'm not

2    going to lift the automatic stay today.  I recognize that

3    this case presents some unusual challenges and that are

4    clear from both the Court's orders that have been issued as

5    well as from the text of the motion itself that was filed

6    that lays out the reasons why and very legitimate concerns

7    why there's a request to lift the automatic stay.

8           So I am going to deny it without prejudice with

9    leave to reassert by simply filing a notice.  And my thought

10    is that it may be appropriate given how this case goes to

11    seek to renew that motion.  We're going to see how things go

12    in the case, but again, I think the concerns that are raised

13    by the movant are legitimate concerns, very legitimate

14    concerns, and I find the pleading to be entirely appropriate

15    lest someone tried to complain that this is an inappropriate

16    action by a creditor in a bankruptcy.  It's not.

17           It's entirely appropriate given the facts and

18    circumstances here.  And so -- and frankly, it was a much

19    closer call than most of the kinds of motions to lift stay

20    that are filed early on in a bankruptcy case tend to be.  So

21    what I'm going to do is we're going to continue to monitor

22    this case actively and see where it goes.  And I certainly

23    am happy to have folks participate in status conferences to

24    take the tenor of what's going on in the case.  And I'm

25    happy to also have hybrid hearings to the extent we have

1    hearings in person.  It may be appropriate for folks to

2    request permission to, if they're not going to participate

3    in the hearing, to simply -- a member of the public listen

4    in by Zoom.

5            So we'll take it as it comes.  Again, I think the

6    motion is appropriate.  I think it's appropriate, however,

7    for me to deny it at the moment, and we will see how the

8    case goes.  But again, if there's a request to reassert it,

9    it can be reasserted by filing a notice with any brief

10   supplement containing any additional information that the

11   Creditor wants to bring to bear, but no need to refile

12   everything that you've already put together.  So that's the

13   ruling on that motion for today.

14           And so with that, we can turn I believe to Mr.

15   Bronson's Motion to Withdraw as Counsel.  So Mr. Bronson?

16           MR. BRONSON:  Your Honor, I hesitated to put too

17   much into my motion, but I think it's clear that Mr.

18   Manchanda and I have come to an impasse.  I basically told

19   him if he insulted me one more time I would have to resign,

20   and he did.  I'd like to just read a couple of these insults

21   --

22           THE COURT:  Well, all --

23           MR. BRONSON:  -- just so you get --

24           THE COURT:  -- I will say is I understand he's

25   filed a disciplinary complaint against you.

1          MR. BRONSON:  Yes.

2          THE COURT:  I think that is sufficient evidence

3    for my purposes to understand that there's been an

4    irreparable breach in the attorney-client relationship.  So

5    I certainly -- I'll leave it then to proceed as you see fit.

6    Although my concern is that we might be jumping into a

7    rabbit hole, and I'm not sure that we need to go completely

8    down it in order to accomplish your requested relief for

9    today.

10          MR. BRONSON:  Noted, Your Honor.

11          THE COURT:  All right.  So maybe as Judge Chapman

12    used to say, keep your powder dry, and then I'll hear from

13    Mr. Manchanda, and then we'll see where we go.  So Mr.

14    Manchanda, there's been a request to leave as your counsel

15    by Mr. Bronson given an irreparable break in your

16    relationship.  And so I didn't see any opposition papers

17    from you, but you're here, and so I'll ask you for your

18    views on the motion.  Do you oppose it, or do you not oppose

19    it?

20          MR. MANCHANDA:  I oppose it because I can't find

21    alternate counsel.  The reality is I paid him the money, I

22    signed the retainer agreements.  He then proceeded to make

23    me defend and represent myself on literally everything.  So

24    when we were getting attacked by creditors, you know, when

25    people were defying the stay, we would send an email to Mr.

1    Bronson's office.  His paralegals would refuse to do

2    anything.  So he would tell me to actually approach --

3    reaching out to your chambers was actually his idea, Your

4    Honor, which I think was a setup.  So at the same time, you

5    know, he -- we paid the man $3,500 through Zelle.  We can't

6    get it back.  And then he refused to do any work.

7              I actually filled in the schedules myself, okay?

8    So he did a couple of touchups here and there, but what do

9    we need a bankruptcy lawyer -- I'm a lawyer myself for 21

10   years.  What do I need an attorney for --

11             THE COURT:  Well, Mr. Manchanda, I will --

12             MR. MANCHANDA:  Can I --

13             THE COURT:  -- warn you --

14             MR. MANCHANDA:  Yes.

15             THE COURT:  Well, when I talk --

16             MR. MANCHANDA:  Yes, Your Honor.

17             THE COURT:  -- then you talk --

18             MR. MANCHANDA:  Yes, Your Honor.

19             THE COURT:  -- but not at the same time.

20             MR. MANCHANDA:  Yes, Your Honor.

21             THE COURT:  So I will say given your conduct thus

22   far, which is the subject of already two orders, you've not

23   comported yourself as an attorney acting appropriately in

24   this court.  So I'm going to delude -- I'm going to remove

25   any delusions you have about the appropriateness of your

1    conduct.  So I just want that to be crystal clear if you

2    leave today with no other message.  So you oppose the

3    motion.  Anything else you want to say in your opposition?

4            MR. MANCHANDA:  Yeah, the point you just made,

5    Your Honor.  The second order that you put out, I didn't

6    contact the Court.  So that wasn't me.  Apparently Rahul Dev

7    Manchanda at the request for a virtual appearance that I got

8    last night was not even made by me.  It was made, you know,

9    by my of counsel without my knowledge or permission, and

10   that's a problem.  I'll have to deal with that.  I've

11   submitted the information to the Court, but --

12           THE COURT:  I don't even --

13           MR. MANCHANDA:  -- that may have been an accident.

14           THE COURT:  -- know what it means by --

15           MR. MANCHANDA:  So what I'm saying to you --

16           THE COURT:  -- of counsel but --

17           MR. MANCHANDA:  Yeah.  What I'm saying to you is

18   that I didn't breach your order.  The second thing is --

19           THE COURT:  So Mr. Manchanda --

20           MR. MANCHANDA:  Yes.

21           THE COURT:  -- I have in front of me an email

22   dated April 5th at 6:38, an email dated April 6that 4:31, an

23   email dated April 5th at 4:34, and email dated April 5th at

24   4:28, and email dated April 5th at 4:34.  I mean, I just

25   have -- these are all in violation of an order, and they

1  come from your email.

2          MR. MANCHANDA:  I've never read -- the first order

3  I never got.  The second order I never got because I had an

4  of counsel who read them who got them.  I never got them.  I

5  never read them.  The second issue is --

6          THE COURT:  Well, I --

7          MR. MANCHANDA:  -- every one of those --

8          THE COURT:  Mr. Manchanda --

9          MR. MANCHANDA:  If I may finish, Your Honor.

10          THE COURT:  -- I can't fix your inability to read

11  an order, which I find to be astonishing as counsel.

12          MR. MANCHANDA:  I have counsel.  I have an of

13  counsel, so I didn't -- I'm very busy right now with the

14  closing and the Chapter 7.

15          THE COURT:  So Mr. Manchanda, you're going to be

16  busy spending a bunch of time having a discussion about

17  sanctions in this court if your behavior does not comply

18  with court orders.  You are the Debtor in this case.  You

19  purposely availed yourself of this forum.  No one made you

20  file for bankruptcy.  Once you're in bankruptcy you get

21  certain benefits.  We just discussed one of them, the

22  automatic stay.  With those benefits come certain

23  responsibilities.  So I'm going to hold you to those

24  responsibilities just as I hold all Debtors to those

25  responsibilities.  So it is not an excuse that you couldn't

1  be bothered to read an order.

2        MR. MANCHANDA:  Yes, Your Honor.  I agree.

3        THE COURT:  Anything else on the Motion to

4  Withdraw?

5        MR. MANCHANDA:  So what I was saying was that the

6  emails that you're getting each corresponded to a different

7  attacker, a different Creditor which was violating the stay.

8  And I was forced to send it off --

9        THE COURT:  I don't care.

10        MR. MANCHANDA:  -- to your chambers because we

11  were getting default judgments --

12        THE COURT:  I don't --

13        MR. MANCHANDA:  -- left and right.

14        THE COURT:  Okay.

15        MR. MANCHANDA:  Default judgments.

16        THE COURT:  Mr. Manchanda, I'm now asking you

17  about the motion that Mr. Bronson has filed.  Anything else

18  you have on that?

19        MR. MANCHANDA:  I'm responding to what he was --

20        THE COURT:  Okay.

21        MR. MANCHANDA:  -- what he was saying.

22        THE COURT:  Well, that's all I wanted to hear at

23  this time.

24        MR. MANCHANDA:  So we have default judgments, a

25  lot of them, because of his --

1          THE COURT:  Okay.

2          MR. MANCHANDA:  -- inability to do his job.

3          THE COURT:  Okay.  Thank you very much.

4          MR. MANCHANDA:  Which I think is absolutely, you

5    know, important to understand that we paid this man fully

6    upfront, and he didn't do his job.  And we have, what, five

7    or six default judgments because the man wouldn't write back

8    to these Creditors and say cease and desist.  We had to do

9    it ourselves.  And part of that meant CCing the Court

10   because we were so desperate to avoid 5, 10, $20,000

11   judgments, you know, here and there because we were showing

12   up for court, or these people weren't listening, or whatever

13   the case may be.  But he was getting these emails from us to

14   please act, and he did nothing.

15         THE COURT:  All right.

16         MR. MANCHANDA:  And that's a problem for not just

17   us, but for every one of his other clients.  And that's part

18   and parcel of our grievance.

19         THE COURT:  All right.

20         MR. MANCHANDA:  And the Grievance Committee --

21         THE COURT:  Well, we're talking about --

22         MR. MANCHANDA:  -- is investigating that.

23         THE COURT:  We're talking about your case.  I know

24   --

25         MR. MANCHANDA:  Yes.

1          THE COURT:  -- based on your complaints --

2          MR. MANCHANDA:  Thank you, Your Honor.

3          THE COURT:  -- there are quite a few people --

4          MR. MANCHANDA:  Thank you, Your Honor.

5          THE COURT:  -- who were being --

6          MR. MANCHANDA:  Yes.

7          THE COURT:  -- examined, yes.  So a couple of

8   comments that I need to make to correct the record.  So as

9   anyone who's spent any time in bankruptcy court knows that

10  once you file a bankruptcy case, you do get the protection

11  of the automatic stay.  So I find it hard to believe that

12  this is a rampant violation of the automatic stay by people

13  seeking to collect.  I will also make it clear that Mr.

14  Bronson is -- putting aside whatever happened here, Mr.

15  Bronson is a frequent practitioner here in this court.  I

16  have found his behavior in other cases to be appropriate and

17  candid with the Court.

18          So to the extent that Mr. Manchanda is trying to

19  drag in other cases where Mr. Bronson may have appeared as

20  counsel, I'm going to reject any such request.  So Mr.

21  Bronson, I think now the door being opened to you reading

22  your statements, I will hear those now.

23          MR. BRONSON:  Your Honor, first I'd like to say we

24  did prepare the petition and went to a 341 hearing that was

25  maybe over an hour long that I thought, given the complexity

1  of the case, actually went pretty well and the request for

2  documents after that.  Mr. Manchanda disagreed as to how

3  much of the information he'd provide, but he did provide me

4  with a lot of it to give to the Trustee, and it was after

5  that that we had a falling out.  So the normal work in a

6  Chapter 7 case was 100 percent done or 90 percent done at

7  this point.  It was just providing additional documents to

8  the Chapter 7 Trustee.

9         As far as representing Mr. Manchanda, his big

10  complaint to me was I wouldn't represent him in his

11  corporate -- his law firm Chapter 11.  We had talked about

12  that initially.  He had signed a retainer agreement and not

13  paid the fee.  And when he did say to me I think it's time

14  for us to file, I said I'm not going to do it.  I -- you

15  know, I said I -- you haven't -- you didn't pay me for it,

16  and circumstances have changed.  I'm not going to be

17  involved in your law firm Chapter 11.

18         And you know, so I did do a tremendous amount of

19  work in this case.  I do not believe that when it comes to

20  the licensing authorities, that that is a stay violation.  I

21  believe there's an exception in the bankruptcy code for

22  licensing, and that was a lot of the complaints that that

23  Mr. Manchanda was referring to that I wouldn't respond to.

24  If people file judgments in violation of the automatic stay,

25  that right is still preserved for Mr. Manchanda to go back

1   and vacate those or for next counsel to vacate those, but I

2   didn't see anything like that.  Either the complaints were

3   against his law firm, or they were things that I looked at

4   and said the stay doesn't apply to it.  So I just was not

5   going to be involved in those.

6          Your Honor, the comments -- just a handful of the

7   comments that Mr. Manchanda made to me, he said I was a

8   discredit to the legal profession and the human race.  He

9   said, "Just do your job professional and ethically and stop

10  being an unethical and immoral pain in the ass."  He said I

11  was a con artist, liar, fraudulent inducer, lazy,

12  incompetent, and dishonest.  One of the last things that he

13  had said was -- I guess it was in the grievance that

14  Marianne O'Toole was a great -- that I said that Marianne

15  O'Toole was a great friend of his, and that apparently they

16  did many dirty deeds together.

17         Your Honor, yes, I've worked with Ms. O'Toole for

18  ten years or so as the Chapter 7 Trustee, and we've settled

19  -- and we've been involved in many cases together.  Some

20  have gone well for me, some have not.  All right.  Thank

21  you.

22         THE COURT:  Anything else, Mr. Bronson?

23         MR. BRONSON:  Yes.

24         THE COURT:  All right, Mr. Manchanda.

25         MR. MANCHANDA:  Yes.

1            THE COURT:  Briefly.

2            MR. MANCHANDA:  Yes, sir.  To respond to what he

3    talked about at the trustee meeting, that was another

4    example.  He never -- first he said he wanted to prepare me,

5    but he gave me a date to prepare it a day after the hearing.

6    So I had to correct him and actually call him to prep

7    myself.  And when we did prepare, when this prep was five

8    minutes at the trustee hearing, which he even admits was an

9    hour, it should be ten minutes, I was totally ambushed at

10   this trustee hearing.

11           There was a U.S. attorney there.  There was a

12   whole -- there was Druckman, there was Senderoff, and all

13   these people that he knew were going to be there.  He never

14   told me about any of that.  But on top of it, you know, he

15   didn't raise any objection to the trustee asking for three

16   years of business records from my law firm, including

17   employment salary records and attorney-client protected, you

18   know, privilege retainer fees.  Three years of bank

19   statements from my law firm for a personal Chapter 7, he

20   didn't even raise a peep.

21           And I literally had to shoot down every single one

22   of these participants.  You know, for example, Senderoff.  I

23   said you're not even a creditor.  There is no judgment.  I

24   had to do this myself.  I didn't even know they were going

25   to be there.  This man, this guy who took my retainer fee

1    didn't even tell me about any of that.  And he didn't raise

2    an objection.  He was quiet.  And I -- and then at the end

3    of it he said, oh, you did a great job.  And the only reason

4    I did a great job, Your Honor, is I have 21 years of legal

5    experience.

6          This man -- I shudder to think if I was like a

7    gardener or a non-attorney or something, I would be -- I

8    don't know what would've happened to me.  But this is not

9    the way.  And there's an email there where he tried to, you

10   know, say that he was going to prepare me, but it was the

11   day after.  Luckily I found it.  I found that he was wrong.

12   I called his office and said you're incorrect.  So that's

13   regarding the 341 hearing.

14         Regarding the comments, what he doesn't tell you

15   is the interplay back and forth.  It was on a weekend, and

16   three or four times I told him in writing please cease and

17   desist from insulting me further.  Please cease and desist,

18   you're escalating the matter.  It's a weekend.  I'm with my

19   family.  Please cease and desist.  Apparently he was

20   drinking because I had mentioned that as well.  So he kept

21   going.  He kept raising it and raising it and raising it.

22         And I kept telling him, I said to him four times

23   in writing cease and desist please.  Kind regards, thank

24   you.  We can talk about this on Monday or Tuesday, but I

25   really don't want to escalate this.  The man kept going.

1   And I -- the only reason I could see that is because he

2   literally realized that I was going to make him do some work

3   on this case.

4            THE COURT:  All right.

5            MR. MANCHANDA:  And he realized $3,500 was not

6   going to cut it.

7            THE COURT:  All right.

8            MR. MANCHANDA:  He wanted $5,000 --

9            THE COURT:  Mr. Manchanda --

10           MR. MANCHANDA:  -- every --

11           THE COURT:  -- I got the --

12           MR. MANCHANDA:  I'm sorry.

13           THE COURT:  -- notion about --

14           MR. MANCHANDA:  Yes, Your Honor.

15           THE COURT:  -- the work --

16           MR. MANCHANDA:  $5,000 --

17           THE COURT:  -- and about the 35 --

18           MR. MANCHANDA:  -- per adversary hearing.

19           THE COURT:  Okay.  I'm talking now, so when I --

20           MR. MANCHANDA:  Yes, Your Honor.

21           THE COURT:  -- talk, you --

22           MR. MANCHANDA:  I'm sorry, Your Honor.

23           THE COURT:  -- don't.

24           MR. MANCHANDA:  Yes, Your Honor.

25           THE COURT:  So it's his motion.  The way it works

1  in my court, which I suspect as an attorney you would know,

2  it's his motion.

3          MR. MANCHANDA:  Yeah.

4          THE COURT:  I hear from him, I hear from you, and

5  then I hear from him.

6          MR. MANCHANDA:  Yes, Your Honor.

7          THE COURT:  So you're in the nature of a surreply

8  at the moment, which means you should briefly respond to

9  what he just said, and then you should sit down.

10          MR. MANCHANDA:  Yes, Your Honor.

11          THE COURT:  So I've given you a few moments.  I'll

12  give you another minute for anything else that you want to

13  say --

14          MR. MANCHANDA:  Okay.  Yes.

15          THE COURT:  -- and that's it.

16          MR. MANCHANDA:  Yes, Your Honor.

17          THE COURT:  One minute.

18          MR. MANCHANDA:  Thank you, Your Honor.  So Your

19  Honor, you know, I could probably have done this bankruptcy

20  case by myself.  Probably wouldn't have done a great job.  I

21  have 21 years of experience.  I hired Mr. Bronson to make

22  sure that this bankruptcy case went without a hitch.  I

23  provided him the $3,500 of money that I didn't have.  My

24  family and I are going through bankruptcy proceedings.  The

25  man took my money, made me do the schedules, and didn't

1    respond to any adversary proceedings or any violations of

2    the stay.  Made me --

3              THE COURT:  All right.

4              MR. MANCHANDA:  -- do it.

5              THE COURT:  I -- those are all things you --

6              MR. MANCHANDA:  And on top of it --

7              THE COURT:  -- already said.

8              MR. MANCHANDA:  -- didn't prepare me for the

9    trustee hearing.

10             THE COURT:  Anything new?  Anything additional?

11             MR. MANCHANDA:  Yes, there is, Your Honor.

12             THE COURT:  Briefly.

13             MR. MANCHANDA:  Yeah, and what -- you know, I

14   tried to de-escalate the matter in those emails because I

15   wanted to keep him as my counsel because I have not been

16   able to find anybody else.  And so I'm now in a position

17   where I don't have a lawyer, and I need him to finish the

18   job professionally if he can do so.

19             There's not much left to do, but I have called

20   about ten different attorneys.  Half of them know Mr.

21   Bronson.  Half of them have told me that he's bad-mouthed me

22   to them in this town.  Apparently he's told everybody not to

23   take my case.  I can name you about five different attorneys

24   who've mentioned his name, so I can't find a lawyer.  And

25   I'm from New York City.  We just moved to New Rochelle last

1    year so I'm a new fish in this town.  I don't know anybody

2    here.  Every single bankruptcy attorney knows this man, and

3    he has poisoned the well.  I can't find another lawyer and

4    I'm asking --

5              THE COURT:  All right.

6              MR. MANCHANDA:  -- for the end of it if we can

7    keep our dialogue to a minimum, if he can do his job

8    professionally for which he's been totally paid, and I'll

9    even pay him more if he needs it for certain, you know,

10   hearings.  But I can't find an attorney, and we're --

11             THE COURT:  All right.

12             MR. MANCHANDA:  -- in a big problem right.

13             THE COURT:  I get it.

14             MR. MANCHANDA:  Thank you, Your Honor.

15             THE COURT:  Thank you very much.

16             MR. MANCHANDA:  Thank you, Your Honor.

17             THE COURT:  So I'm going to grant the Motion to

18   Withdraw as Counsel.  This is a clear a case as I've ever

19   seen of an irreparable break between an attorney and a

20   client.  And so there are several comments -- well, the back

21   and forth that are reflected in emails that the Court has

22   received, which are part of the record, although they're not

23   part of the public record, they were submitted by Mr.

24   Manchanda, but they do contain a lot of accusations that I

25   deem to be scandalous and inappropriate for filing in a

1    bankruptcy case because I'm not sure how they impact the

2    case.

3            But -- and Mr. Bronson just went through a number

4    of other comments, and it's pretty clear that if you can't

5    even get past the 341 meeting without significant acrimony,

6    that there is going to be nothing but acrimony that goes

7    forward.  So several of the things that Mr. Manchanda

8    identified I do take some issue with or would like to

9    provide some context as I think Mr. Manchanda may not

10   understand some of the things that he's complaining about,

11   that there were other people at the 341 meeting.  That

12   happens.  Parties have an interest in the case.  They are

13   free to attend if they are creditors.

14           And so Mr. Manchanda made another comment about

15   creditors and Mr. Senderoff being there, and he's not even a

16   creditor.  That's not what the bankruptcy code says.  He has

17   a claim.  It's not liquidated, but he's made a claim, so

18   he's in fact a creditor.  So Mr. Manchanda is flatly

19   incorrect on that score.

20           And I wasn't there, but the way Mr. Manchanda

21   described the information requested dealing with the law

22   firm and financial and business records going back a certain

23   number of years, that's all financial information of the

24   kind that is requested in bankruptcy court when trying to

25   figure out the economic situation of a debtor for purposes

1    of running the case, not just for the Debtor, but for

2    purposes of all Creditors and stakeholders in the case.

3            Again, as I started and I say often, in a

4    bankruptcy you get certain benefits, such as the automatic

5    stay, which was indicated here today.  But there are also

6    certain obligations that come along with that, and financial

7    transparency is one of them.  So to the extent that the

8    Trustee is making requests for financial information, that

9    is pretty much how this works.

10           And I saved for last the comment about Mr. Bronson

11   and his drinking, and I put that in air quotes.  I'm not

12   saying that is -- I'm just repeating what Mr. Manchanda

13   said, but that's sort of pretty much a capper as to the need

14   for this attorney-client relationship to end when we've sunk

15   to that level.  And so in a Chapter 7 case, there are

16   numerous attorneys that are out there.  There are also

17   numerous debtors who go through the process pro se.  It is

18   the simplest of the bankruptcy processes out there in terms

19   of other consumer cases compared to Chapter 13 where a plan

20   needs to be filed compared to Chapter 11 where a whole bunch

21   -- a plan is also required and a whole bunch of other things

22   need to happen.

23           And it's usually supposed to be the most

24   straightforward and efficient procedure where courts are

25   often not even involved in a large number of Chapter 7

1    cases.  This case is unlikely to fall into that category

2    however, but it is still the simplest of the bankruptcy

3    chapters.  And so I will leave it to Mr. Manchanda to find

4    counsel or to proceed on his own as he has noted on several

5    occasions he is a lawyer.  And -- but again, what I have to

6    look at is whether there's been an irreparable break in the

7    attorney-client relationship, and there has been.

8              And in light of that, I think it's appropriate for

9    the Court to grant the motion for Mr. Bronson to withdraw.

10   And I'll ask Mr. Bronson to submit a proposed order on that

11   subject.

12             And so the other thing that we had on for today is

13   there's a -- well, it's not on for today, but it was filed

14   and listed as being on for today, the Motion to Dismiss

15   filed by Mr. Manchanda.  That was filed a few days ago.

16   There's not enough time for that matter to be appropriately

17   on the calendar for today.  Due process requires that folks

18   give -- be given an opportunity to respond.  So the Motion

19   to Dismiss will be addressed at a future hearing, and so

20   that is Docket Number 4 in the Adversary Proceeding 23-7008,

21   Senderoff v. Manchanda.

22             And so my thought would be to schedule a hearing

23   date on that and also schedule a date for any opposition and

24   any reply, and then we'll have that matter teed up for a

25   hearing.  It is now the beginning of April, April 6th.  My

1    thought would be to set a date in the middle of May, May

2    17th, for a hearing on that as well as a status conference

3    on the Chapter 7 and for the Creditor -- well, the Plaintiff

4    in that case, Mr. Senderoff, to have three weeks from today

5    to respond to that motion and then for Mr. Manchanda to have

6    a week to file any reply.

7              So what I'd ask is that Mr. Senderoff's counsel

8    submit a proposed order to set forth that schedule.  It's

9    all procedural.  It's not a substantive order.  It's a

10   procedural order.  Again, hearing date of the 17th three

11   weeks from today to be Mr. Senderoff's response, and then

12   one week after that to be Mr. Manchanda's reply.  I would

13   schedule that on the 17th in the morning, but I want to see

14   what other matters we have on so I could try to put this on

15   in a way that it's efficient.  So give me one moment.

16             All right.  So what I'm going to do is I'm going

17   to schedule it for 11:00 on the 17th.  And if for some

18   reason that time changes, we'll reach out in chambers to let

19   people know.  So that I think addresses the three items that

20   were on for today.

21             I also would ask to the extent that there's any

22   other parties -- I'm treating this as a status conference --

23   any other party who has any other thing that they want to

24   raise for purposes of the smooth administration of the

25   Chapter 7 case.

1          MR. RUDEWICZ:  Thank you, Your Honor.  Again, Dan

2   Rudewicz with the Office of the United States Trustee.  The

3   date of the hearing should be fine.  Just one thing.  My

4   colleague, who is the senior attorney on this, Greg Zipes,

5   has asked that if anybody has to contact our office or reach

6   out to him, his email address is Greg.Zipes@USdoj.gov, or

7   his telephone number is 212-510-0527.  And then for purposes

8   of service now that Mr. Manchanda is no longer represented,

9   to make the, I guess, the case, as you mentioned, go more

10  smoothly, for service should we be doing it on his home

11  address in New Rochelle?  Or he also has an address, I

12  guess, in Wall Street or --

13          THE COURT:  All right.

14          MR. RUDEWICZ:  -- his law office.

15          MR. MANCHANDA:  Well, look, if I could respond to

16  that?

17          THE COURT:  Sure.

18          MR. MANCHANDA:  My of counsel is here Miriam

19  Gladden.

20          THE COURT:  Well, she needs to enter an appearance

21  so that I can actually -- we can treat her -- what an

22  appearance does is it announces to the world this is my

23  counsel and this is who you should contact.

24          MR. MANCHANDA:  Well, she's shaking her head, so

25  she might not want to --

1          THE COURT:  All right.

2          MR. MANCHANDA:  -- take this case.

3          THE COURT:  So if I -- so all I will say is if

4    there is an appearance that's entered that does that and

5    announces her presence with authority, then great, then

6    that's what people will use.  Absent that, they will use the

7    address provided by Mr. Manchanda in his petition, his home

8    address since he's the Debtor, and that that's what we'll

9    use.

10          MR. MANCHANDA:  All right.

11          THE COURT:  All right.  I need to make a

12   correction to the time.  I understand we have a hearing in

13   the Sears Chapter 11 case on for May 17th at 11:00.  So what

14   I'd like to do is move it up one day to the 16th at 11:00.

15   I never quite know how long those omnibus hearings in larger

16   Chapter 11 cases take, and I don't want folks to run into a

17   problem.  So again, hearing on the 16th at 11:00 of May.

18   Sorry, hearing the 16th of May at 11:00, and the same dates

19   for the opposition and for the reply.

20          And Mr. Senderoff's counsel will submit an

21   electronic version of that proposed scheduling order.  That

22   can be sent to chambers.  We have an email address

23   specifically for proposed orders, and you can get that email

24   address from Ms. Ebanks.  And that is an email address

25   that's only used for proposed orders.  It's not used for

1   correspondence with the Court.  It's used for proposed

2   orders.  So all right.  With that, any other party that

3   wishes to be heard on -- in connection with this case?

4           MR. BRONSON:  Your Honor, I want to -- just for

5   the record, I was not drinking.

6           THE COURT:  I --

7           MR. BRONSON:  I -- you know, I think if it just

8   went without me saying something, it could be

9   misinterpreted.

10          THE COURT:  No, no.  That's fine.  My comment was

11  a repeat --

12          MR. BRONSON:  I know.

13          THE COURT:  -- of Mr. Manchanda's statement, and

14  like all hearsay, is not to be taken for the truth of the

15  matter asserted.  All right.  With that, any other party

16  that wishes to be heard?  All right.  We'll see you at the

17  next hearing on May 16th.  And my intent is to hold all

18  hearings in this case in person.  And if that changes, it

19  will be reflected in an order of the Court.  Thank you.

20          MS. O'TOOLE:  Thank you.

21          MR. BRONSON:  Thank you, Your Honor.

22          (Whereupon these proceedings were concluded at

23  12:07 PM)

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                    I N D E X

2

3                    RULINGS

4                                        Page      Line

5    Automatic Stay, DENIED                18        8

6    Motion to Withdraw as Counsel, GRANTED   34       17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 14, 2023