UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
                              .
   IN RE:                     .        Chapter 7
                              .
   Rahul Dev Manchanda,       .
                              .
          Debtor.            .        Bankruptcy #23-22095 (SHL)
...........................................................
                              .
   Senderoff,                 .
                              .
          Plaintiff,         .
                              .
          v.                  .
                              .
   Manchanda,                 .
                              .
          Defendant.         .        Adversary #23-07008 (SHL)
...........................................................
```

White Plains, NY
May 16, 2023
11:55 a.m.


TRANSCRIPT OF:

STATUS CONFERENCE

DOC. #30 UNITED STATES TRUSTEE'S MOTION TO EXTEND TIME TO
OBJECT TO DISCHARGE, APPLICATION FOR FRBP 2004 EXAMINATION

DOC. #33 UNITED STATES OF AMERICA'S MOTION TO EXTEND TIME TO
OBJECT TO DISCHARGE, AND, APPLICATION FOR FRBP 2004
EXAMINATION

DOC. #36 ORDER TO SHORTEN TIME RE: UNITED STATES OF AMERICA'S
MOTION TO EXTEND TIME TO OBJECT TO DISCHARGE, AND, APPLICATION
FOR FRBP 2004 EXAMINATION

DOC. #37 OPPOSITION TO MOTION TO EXTEND TIME TO OBJECT TO
DISCHARGE, APPLICATION FOR FRBP 2004 EXAMINATION AND MOTION
FOR RELIEF FROM STAY

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA PRE-
TRIAL CONFERENCE

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA
DOC. #4 MOTION TO DISMISS ADVERSARY PROCEEDING FILED BY
DEFENDANT RAHUL MANCHANDA

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA
DOC. #7 SCHEDULING ORDER RE: MOTION TO DISMISS

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA
DOC. #9 OPPOSITION TO MOTION TO DISMISS FILED ON BEHALF OF
DOUGLAS M. SENDEROFF

BEFORE THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For The Debtor:                     Rahul Dev Manchanda
                                    Pro Se Debtor


For the IRS and the SBA:            Dana Walsh Kumar, Esq.
                                    Assistant U.S. Attorney
                                    Southern District of New York
                                    86 Chambers Street-3rd Fl.
                                    New York, NY 10007

Chapter 7 Standing Trustee:         Marianne T. O'Toole, Esq.
                                    Marianne T. O'Toole, LLC
                                    22 Valley Rd.
                                    Katonah, NY 10536

For Douglas M. Senderoff:           Michael Druckman, Esq.
                                    Lewis & Lin, LLC
                                    77 Sands St.-6th Fl.
                                    Brooklyn, NY 11201

For The U.S. Trustee:               Greg M. Zipes, Esq.
                                    U.S. Trustee's Office
                                    Alexander Hamilton
                                    Custom House
                                    One Bowling Green-Ste. 534
                                    New York, NY 10004

Transcribing Firm:            Writer's Cramp, Inc.
1027 Betty Lane
Ewing, NJ 08628
(609) 588-8043

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1          THE COURT:  Moving on to the 11 o'clock calendar,

2     Rahul Dev Machanda, a Chapter 7 case.  It' on for a variety of

3     Motions, as well as a Status Conference.  And folks can come

4     on up and make themselves comfortable at the counsel table.

5     And all I would ask is just make sure -- I think people can

6     use the microphones at counsel table.  Just do me a favor and

7     make sure that those microphones are reasonably close to you

8     without swallowing them.  That's always the, you know -- the

9     trick is to not -- is to (inaudible) sweet spot for that.  So,

10    all right.  So, we'll start this hearing as we do all hearings

11    by getting appearances.  And so let me get the appearance from

12    the Debtor.

13         MR. MANCHANDA:  Rahul Manchanda, the Debtor.

14         THE COURT:  All right, good morning.  Good to have

15    you here.  Let me get the appearance from the United States

16    Trustee's Office.

17         MR. ZIPES:  Good morning, Your Honor.  Greg Zipes

18    with the U.S. Trustee's Office.

19         THE COURT:  All right.  And on behalf of the United

20    States?

21         MS. KUMAR:  Good morning, Your Honor.  Dana Kumar on

22    behalf of the IRS and SBA.

23         THE COURT:  All right.  And on behalf of the Chapter

24    7 Trustee?

25         MS. O'TOOLE:  Good morning again, Your Honor.

1    Marianne O'Toole, the Chapter 7 Trustee.

2         THE COURT:  All right.  And I do believe we also

3    have someone here on behalf of Douglas Senderoff.

4         MR. DRUCKMAN:  Good morning, Your Honor.  Michael

5    Druckman on behalf of Douglas Senderoff.

6         THE COURT:  All right, good morning.  Or good

7    morning still.  Anyone else who is here for this case who

8    might be on Zoom?

9         ALL:  (No verbal response).

10        THE COURT:  All right.  So we have a number of

11   matters that are on for today.  But to group them generally,

12   there are motions dealing with a Request To Extend The Time To

13   Object To Discharge and related 2004 Applications.  And then

14   there's a motion relating to the Adversary Proceeding,

15   Senderoff vs. Manchanda.  I think we'll deal with the motions

16   dealing with the discharge and Rule 2004 Examination.  And I

17   thought -- Mr. Manchanda, obviously, you're an attorney.  I

18   don't know how much time you've spent in Bankruptcy Court.

19   You may have spent some or no time.  And so I thought it would

20   be helpful to give you a little bit of background on what some

21   of these rules are, which are unique to bankruptcy.

22        So Rule 2004 in particular, it's -- it is a rule that

23   permits folks to get information from the Debtor and/or

24   anything else that -- information for other parties that are

25   helpful to understand the Debtor's liabilities and assets and

1    so as to properly administer a bankruptcy case.  There's
2    actually case law out there.  So it's -- while it's similar to
3    discovery in a civil case, the case law is actually much, much
4    broader, and there's even a quote somewhere, which is often
5    stuck in motions, that it's akin to a fishing expedition.  I
6    don't think I would go so far.  But it is a fairly broad rule,
7    and it's used often.

8        If you look at my Chambers' rules, there's a procedure in
9    cases where people can file those things, essentially on
10   presentments, because they're often requested to get
11   additional information.  So, I just wanted to give that
12   context for Rule 2004.  It's not unusual.  It's not uncommon
13   and what the purpose of it is.  And similarly, it is often --
14   cross my desks where folks will ask to extend the time to
15   object to discharge.  I probably sign five stipulations a week
16   in various cases where people have agreed to extend the time,
17   and it often goes hand in hand with getting additional
18   information, either through Rule 2004 or through informal
19   discussions to try to sort out what the facts and
20   circumstances are as to assets and liabilities.

21       And one of the reasons people do that also is to not rush
22   into litigation because, oftentimes, an exchange of
23   information will shed light on things, and then people have a
24   better sense of what action is appropriate and what action is
25   not and what's necessary and what's not.  So, that's a little

1  bit of context there.

2      Another thing that may strike you or not is that the
3  United States filed two motions, and that sort of gets into a
4  very specific bankruptcy issue here, which is that there's a
5  United States Trustee's Office.  And the United States
6  Trustee's Office doesn't appear as a Creditor in cases, but
7  rather appears as an interested party. They are -- I think
8  they're self described as a watchdog in bankruptcy.  They have
9  a statutory place in the Code.  They're a preacher of the
10 Code.  And as you see, they often will step in when no one
11 else steps in.  So we just -- you were sitting here for the
12 calendar this morning, and they will often step in for things
13 that they think are of interest and importance in a case.  And
14 so they have their own, essentially, statutory role.

15     That's separate and apart from the motion filed by the
16 United States.  The United States is here in its capacity as
17 counsel for a Creditor, the IRS.  And so they have their own
18 particular interest as a Creditor, which is different from the
19 United States Trustee's motion.  But I thought I would at
20 least mention that because, again, it doesn't really have an
21 analog in District Court practice.  It's a creature of
22 bankruptcy.  And so that's just a little bit of background as
23 to what we have in front of us.

24     And I guess the last thing I would say is, as you saw in
25 the Order where there was a Motion filed to Shorten Time, we

1      often get those in bankruptcy as well.  There's -- that

2      happens.  There is a rule, a local rule here in the Bankruptcy

3      Court that's reference in that Order that says if there's a

4      deadline that's going to occur on a particular date, that if

5      you file a Motion For An Extension Of Time by that date, that

6      the time is extended until the Court rules on the Motion.  And

7      I won't bore you with the genesis of that rule, but that's

8      just designed to prevent folks from having to file a lot of

9      additional papers that weren't necessarily very helpful for

10     anybody.

11            But that was referenced in the Order, and it allows us to

12     then have this hearing on some notice and give everybody a

13     chance to be heard and sort through things.  So, with that,

14     what I'd like to do is hear from the United States Trustee and

15     the United States of America on behalf of the IRS on their

16     motions that are laid out in their papers.  They may have

17     something additional to add.  They might not.  And then I'll

18     hear from you, Mr. Manchanda, and then I'll let you know where

19     I am, and then we'll move on to the Adversary Proceeding

20     involving Mr. Senderoff.  So with that, I'll turn it over to

21     the United States Trustee's motion is at Docket #30, and the

22     United States of America's motion is at Docket #33.

23            MR. ZIPES:  Your Honor, I'm not sure if the sound is

24     good here.  I can (inaudible).

25            THE COURT:  I will defer to people who are wiser on

1   that than I am.

2           THE CLERK:  It's fine.

3           THE COURT:  It's fine?  All right.  So just do me a

4   favor and make sure to get it as close to you as you can.

5   Just -- and also, there's nobody on the line in terms of Zoom.

6   So to bore you with more technical details than any of you

7   need to know, there are different microphones and sound things

8   for different things.  We have it -- that is for the Courtroom

9   internal recording setup.  That is different than the

10  microphones we use for Zoom.  Don't ask.  You probably don't

11  want to know more than that.  So, since we're all here for

12  Court, there's nobody on Zoom.  We can probably even turn Zoom

13  off.  You're good to go.

14          MR. ZIPES:  Okay.  Your Honor, thank you.  Greg

15  Zipes with the U.S. Trustee's Office, and I will speak up just

16  to be on the safe side.  The U.S. Trustee has filed a motion

17  in this case seeking two distinct forms of relief.  The first

18  is a 2004 Order that allows us to obtain further information

19  from the Debtor here, and the second is to extend the U.S.

20  Trustee's time to object a discharge or to a file a Motion To

21  Dismiss this case.  We filed that document under -- at Docket

22  #30.

23      As this Court has already noted, the U.S. Trustee filed

24  this Motion and as well as a (inaudible) of the system and --

25  or our office has standing to file 2004 applications and

1   seeking extensions of time and to for that matter to file
2   adversary proceedings objecting to discharge or to dismiss the
3   case.  And Your Honor, we -- as the Court has noted, there is
4   that language in a 2004 applications dealing with it being a
5   fishing expedition.  But, Your Honor, I think that that -- the
6   best way of describing it is that the Debtor, in filing for
7   Chapter 7 relief, is accorded a lot of benefits, one of which
8   being the Automatic Stay, which is in place.  It's automatic.
9   It's in place.  Creditors can no longer pursue this Debtor.
10  They have to stop that.

11      And in addition, the Debtor, if it's {quote}{unquote}
12  "honest" will receive a discharge, and debts that have been
13  otherwise been excused will be discharged in bankruptcy, and
14  this Debtor will walk away.  In exchange for that, the Debtor
15  has the obligation of full disclosure of its assets and
16  liabilities and to be honest with the parties involved.  And
17  the word "honesty" can have different meanings.  But at its
18  core, the Petition needs to make sense.  The Debtor needs to
19  explain why its in bankruptcy by listing all the debts, the
20  income, and having that make sense.  The Debtor has to appear
21  at a Creditors Meeting and answer questions both by the
22  Chapter 7 Trustee or Creditors who may be present.  And it has
23  to make sure that, generally, its operating in an honest
24  manner, and the Debtor will get a discharge if that's the
25  case.

1   So, Your Honor, my Office did file a Motion To Seek

2   Further Information in this case.  I'll also point out this is

3   a civil proceeding.  This is not a criminal proceeding, and

4   the standard here is the denial of a discharge ultimately.

5   It's not this Debtor is in any kind of criminal peril from a

6   bankruptcy proceeding, at least before the Bankruptcy Court.

7   So --

8           THE COURT:  All right.  Let me just -- for one

9   second.  And again, Mr. Manchanda, I know you're representing

10  yourself, but again, I want to give you information that might

11  be helpful.  There are various discharge statutes that you

12  probably saw referenced in the papers.  Some of them deal with

13  the discharge of a particular debt.  Other ones deal with the

14  discharge of all debts.  So just to give you that bit of

15  background again.  We (inaudible) a different statutes that

16  are referenced.  And so there are also different grounds in

17  the different statutes as to why something might be non-

18  dischargeble.  And so if you'll look at those statutes, you'll

19  see the U.S. Code lists those reasons.  And so they are kind

20  of the anchor or the prism for which people look at through

21  information once they get information.

22          So, you can really think of the information requested in

23  a bankruptcy as, 1) about transparency as to assets and

24  liabilities, and 2) to the extent there's something more

25  specific as to facts and circumstances that might be relevant

1   under any of those non-dischargeability statutes, the

2   complaints that might be filed and the like.  So Mr. Zipes?

3        MR. ZIPES:  So this Debtor is the full, 100% owner

4   of a law firm, which he values in the Petition at $100.  And,

5   Your Honor, again, we're asking for how he came up with that

6   number.  So I'm focusing on some of the highlights that we

7   believe are important.  We obviously want -- we'll go over the

8   full request for information.  But at a basic level, we're

9   seeking information.  The Debtor might have good explanations

10  for this evaluation.  We just don't have it at the moment.

11  So, we'd want to see the reason for that.

12       Obviously, if there are no assets for Debtors -- for

13  Creditors, that's one thing.  But if the Debtor is hiding

14  assets during this (inaudible) by misclassifying a dollar

15  amount for the law firm, that would be a different matter, and

16  it would impact possibly on the Debtor's discharge.  So $100

17  evaluation for the law firm, we think that that requires

18  further explanation.  Your Honor, in addition, the Debtor has

19  listed a house that's valued -- that he then values at almost

20  a million dollars.  And the dollar amount is in the 800,000s,

21  I think.  And the Debtor has no -- lists very little income.

22  So how was he able to purchase this house?  That's a question,

23  again, he might be able to answer very easily, but we need --

24  don't have (inaudible) for that.

25       In addition, he lists his salary, or his income from this

1    law firm, at a certain dollar amount.  He's the full owner,

2    and we want to find out how he's valuing that.  We would like

3    to see tax returns.  Those sometimes are important in that

4    regard.  So, Your Honor, the petition just provides a lot of

5    questions for my office that we think are appropriate to be

6    answered.  And Your Honor, I'll point out that one Motion that

7    we didn't file here -- we're seeking information, but a Motion

8    to Dismiss The Case Under 707(b) for abuse, which might be

9    warranted if the Debtor is -- has an ability to repay

10   Creditors.

11        And one warning sign that we look for when possibly

12   filing a Motion is when the Debtor reaffirms a significant

13   debt on a luxury item.  And Your Honor, I'll note that, in

14   this case, the Debtor recently reaffirmed payment, a $771

15   payment on a BMW lease, a monthly payment.  At the same time,

16   he's seeking a discharge of all his debts.  He is maintaining

17   luxury items that most Debtors would not have.  And in fact,

18   people who had never filed for bankruptcy, they might not have

19   that BMW either.  So there -- the case law provides for

20   dismissal of the bankruptcy case if the Debtor isn't belt

21   tightening and isn't -- and is -- has some ability to repay

22   Creditors under a Chapter 13 case.

23        Your Honor, we made the choice to seek more information.

24   That's the purpose of a 2004.  We didn't file a Motion

25   immediately.  We didn't file a claim objecting to discharge.

1    We are seeking information.  A lot of Debtors voluntarily give

2    us this information, and this Court rarely sees us in court on

3    2004s because we do work with Debtors and Debtor's Counsel to

4    get the information we need.  There oftentimes are good

5    explanations, which aren't clear from an initial review of the

6    Petition.  So, Your Honor, we are asking for this information.

7    And if I can just go over maybe our specific requests, if the

8    Court finds that useful, we can go over our requests.

9         THE COURT:  Well, I think if maybe you could go over

10   the question in terms of general topics or categories, and if

11   we need to then delve into specific requests, we can do that

12   as needed.  But generally, it would be helpful.

13        MR. ZIPES:  So, Your Honor, generally, we're seeking

14   routine requests.  These are letters that often go out to

15   Debtors.  But the federal tax and state tax returns of this

16   Debtor and also the law firm.  Your Honor, we are aware that

17   law firms -- when law firms are involved, there may be issues

18   of attorney-client privilege, and we would normally work with

19   Debtors in that regard.  I don't know if there's anything in

20   the tax returns that would implicate attorney-client

21   privilege.  But certainly the Debtor's individual tax returns

22   are (inaudible) of that.  And we're asking for both, Your

23   Honor, unless there's some reason not to get certain

24   information.  In that scenario, Your Honor, as this Court is

25   aware, there can be arrangements made.  We don't need to see

 1    individual names to the extent that those are on --

 2            THE COURT:  Right.

 3            MR. ZIPES:  -- tax returns.  And, Your Honor, I'm

 4    speculating right now because I don't -- we don't have any of

 5    that on tax returns for the --

 6            THE COURT:  Yes.  And the other thing is to the

 7    extent there's a concern about protecting information and not

 8    having to spend an inordinate amount of time parsing through

 9    certain things line by line, there's also protective orders

10    that can solve those problems potentially.  So --

11            MR. ZIPES:  Yes.  And Your Honor, we considered

12    that.  But on the other hand, we want to know a little bit

13    more before we --

14            THE COURT:  No, no.  That's fine.  I'm just throwing

15    out issues, potential ways to solve issues that might come up.

16            MR. ZIPES:  Your Honor, we're also looking for

17    evaluation of the law firm because this is, again, possibly an

18    asset of the Estate and might have receivables, for example.

19    Ms. O'Toole obviously can speak for herself.  She is a Chapter

20    7 Trustee.  But we -- for the purposes of the discharge

21    action, we want to make sure that everything is valued

22    properly and that there is thought put into schedules that

23    were filed under the penalties of perjury that the Debtor's

24    relationship to the Manchanda Law Firm, to the extent that

25    he's stating that he is (inaudible) owner.

1    Your Honor, we would like to know exactly what his

2    relationship is given statements in the past that he is 100%

3    owner of this law firm, how he came up with a payment of

4    $4,250 a month.  And as Mr. Manchanda may be aware of, if an

5    owner of a business can oftentimes choose his or her own

6    salary, that may or may not reflect the actual value of the

7    services rendered.  And so we just want to know where that

8    specific number is coming from.  In addition, Your Honor,

9    there's a non-filing spouse here.  That also could be a red

10   flag and require further investigation by my office when one

11   spouse files and the other doesn't.

12   Again, there could be good reasons for that, Your Honor.

13   But here, this spouse didn't file and has a bigger income

14   coming from the law firm even though he is the owner of the

15   lawyer and the lawyer of that law firm.  These are questions

16   that we want answered, Your Honor.  And now is not the time to

17   get into a debate on what those answers actually are.  The

18   first obligation with our request is to simply have that

19   information turned over to us so we can assess it.

20   Your Honor, this Debtor and/or his law firm received

21   $500,000 recently from the government.  Again, to the extent

22   that he's the full owner of his law firm, we'd like to see

23   where that money went and how it was used, whether that could

24   be recovered for the benefit of Creditors.  And he has another

25   BMW, Your Honor.  I believe there are two BMWs here.  He has

1   valued the second BMW at a certain dollar amount.  We'd like

2   to know how he valued that second BMW.  And he apparently is

3   keeping both of those for himself.  He, at least in the

4   Schedules as filed, and he intends to keep both those cars,

5   which, as this Court is aware, is an unusual request for

6   Debtors in bankruptcy, not just any Debtors.  And he lists a

7   watch, a Rolex, and other pieces of jewelry.  We'd like to

8   know how he valued those.

9       And we also, Your Honor, frankly need to know over the

10  last -- in the last week there's transfers from him to other

11  family members, other parties, in an amount of over $100 for

12  the last two years.  This is a proxy, Your Honor, for what may

13  have occurred before.  It's not necessarily a complete

14  request, and we might be back before this Court to request for

15  additional information.  But at least it will give us an idea

16  of what's happened in the last few years with this Debtor.

17  And we'd like any statements, bank checks, or certified checks

18  used to pay bills because this Debtor testified that he pays

19  personal items out of his law firm, which is, again, unusual.

20      Your Honor, again, I just want to state that the 2004 is

21  a lesser step than something that we can possibly do.  I

22  personally, Your Honor, in the past have filed Motions To

23  Dismiss under "abuse" when I see the reaffirmation for a BMW

24  or a Mercedes or something like that, without knowing anything

25  more, Your Honor, because I -- this Debtor -- if the Debtor

1  can reaffirm the debt of that kind, that Debtor typically can

2  repay Creditors in some form.  And I'd leave it to the Debtor

3  to explain to the Court how it's possible to reaffirm such an

4  expensive debt.  But Your Honor, we're not there right now.

5  We're just in information mode.

6      In addition, in an abundance of caution, Your Honor,

7  we're asking for an extension of time to object to discharge

8  and/or to file a Motion to Dismiss the case.  Your Honor, I'll

9  note that a -- an objection was filed.  And I did search that

10  objection.  It's deemed an objection -- or declaration.  I did

11  search that declaration for something of substance that would

12  -- that was actually addressing the motions in some form.  And

13  I didn't see -- there were a lot of attacks, Your Honor,

14  against the Court, against me, and I understand that's the way

15  this Debtor operates, but it's not -- it's certainly not

16  acceptable.  And statements like that should not be made

17  without some sort of proof.  My office is reviewing that

18  matter right now.  I don't know if referrals were made to the

19  Bar.

20      It appears this Debtor has done that in response to this,

21  Your Honor.  That will be addressed as appropriate, Your

22  Honor.  But for the purposes of these motions I actually

23  didn't see anything in there that addressed any substance of

24  the motion.  And we believe the motion is very -- is

25  appropriate and should be granted.  I don't have any doubt

1    that we may be before this Court again.  But I'll just note,

2    Your Honor, that for the benefit of the Debtor, that

3    bankruptcy is not like other types of litigation.  Again, the

4    Debtor needs to be transparent, and it's not a cat and mouse

5    game.

6        My office will simply file a Motion To Deny A Discharge

7    if the Debtor isn't being forthcoming in response to an Order

8    that's entered requiring information.  And in fact, that's --

9    that is a basis for denying discharges if it's a failure to

10   abide by a Court Order.  So, Your Honor, I'm just laying that

11   on the table.  I don't know that you're going to see a lot of

12   back and forth if this Debtor doesn't comply with this Order.

13   I'm hoping that he will and he explains everything.  But to

14   the extent that he doesn't, I think you'll see an Order -- a

15   Complaint filed by my office to deny a discharge or a Motion

16   To Dismiss The Case.  So, Your Honor, with that, I would ask

17   that our -- that the Motion be granted.  And it does extend as

18   well to object to discharge as well.

19        THE COURT:  All right.  Anything from Ms. O'Toole in

20   the context of being the Chapter 7 Trustee?

21        MS. O'TOOLE:  Your Honor, I have nothing to add to

22   the Motion.  Thank you.

23        THE COURT:  All right.  And I will hear from the

24   United States, who filed its own motion.  And let me just

25   explain why I granted the Motion To Shorten Time on that

1    United States Motion.  It's because it's substantially the
2    same issues that are raised in it, which is extending the time
3    to object to discharge and requesting additional information.
4    And so the Motions, in fact, are -- read quite similarly, and
5    it made sense, in my mind, to have one discussion of those
6    issues rather than to have two, which it seems equally
7    efficient.  And I also thought there was sufficient time to
8    address the Motion when it was filed vis-a-vis today's
9    hearing.  So, let me hear from -- I'm going to refer to the
10   U.S.T. as the U.S.T., and I'll refer to the United States as
11   the Government.  So let me hear from the Government.

12          MS. KUMAR:  Thank you, Your Honor.  Dana Kumar from
13   the U.S. Attorney's Office on behalf of the IRS and SBA.  And
14   thank you for granting the Motions For Time.  I -- we agree
15   that it was just most efficient to hear the motions together
16   because they are, in substance, very similar.  But I will note
17   that we are here on behalf of the IRS and SBA, who are very
18   large Creditors of this Debtor.  He owes about almost
19   $900,000, $500,000 to the SBA and almost $400,000 to the IRS.
20   So, that is why we're here and why we have sought an extension
21   of time to file a Complaint under Section 727 or an Adversary
22   Proceeding under Section 523 because we believe that we need
23   more information in order to know whether a Complaint under
24   either of those provisions would be appropriate.

25          As the Court said, we don't want to jump into litigation.

1   We don't know if there is sufficient ground to pursue that

2   route.  So, we have filed also the pending 2004 Motion For

3   Further Information.  And we're not trying to overburden the

4   Debtor or to pile on here.  We essentially are asking for the

5   same information that Mr. Zipes just talked about regarding

6   the financial affairs the Debtor.  We've added four

7   specific requests too in our requests for documents.  That

8   relates specifically to the SBA loan, which I believe was

9   dispersed originally in July, 2020.  And then an additional

10  amount was just November 2021.  That's why we've requested

11  that the statements for back three years.

12      And because of the Petition, which discusses the fact that

13  the Debtor's mortgage payment goes through his business

14  account and other instances from the 341 Meeting and then the

15  Petition where it seems that there has been a commingling of

16  funds, we think it's appropriate to get information and

17  financial statements from the Debtor's law firm.  And so

18  that's why we've also requested the Statement of Financial

19  Accounts from the law firm itself.  We've also requested that

20  the Court allow us to issue a subpoena to the law firm, to the

21  extent that that would be a more direct route to get those

22  Statements of Account.  So, I don't have too much more to add.

23  I think that the U.S. Trustee's Office covered the other

24  substances of the motion, unless Your Honor has questions.

25          THE COURT:  All right.  I do not at this time.

1   Thank you very much.  And with that, I'll turn to Mr.

2   Manchanda.  I do have a copy of the filing that you made,

3   which is entitled "Notice of Motion in Opposition," and it's

4   an extensive document.  It's at -- it was filed at Docket #37.

5   So, Mr. Manchanda?

6          MR. MANCHANDA:  Yes, Your Honor.  Thank you.  I hope

7   I'll be given as much time as Mr. Zipes and the others that

8   (inaudible).  They said a lot of things.  I didn't write

9   anything down, from memory.  A lot of misstatements were made.

10  A lot of false statements were made, and I'd like to correct

11  you on each one by one.

12         Number one, again, yes.  As the Court knows, I am not a

13  bankruptcy lawyer at all.  And so I think for me to get a

14  tutorial on 2004s for the first time in my life is all

15  wonderful and good.  It's still not -- it doesn't sink in a

16  hundred percent.  I'm finding my way in the dark here when my

17  last -- when my attorney, H. Bruce Bronson was allowed to

18  depart my case last hearing simply because I objected to the

19  fact that he wouldn't deal with the default that had been

20  falling down on me like gang busters because people were

21  violating me about the Stay.  And Mr. Zipes said that was one

22  of the benefits of bankruptcy protection.  But I didn't get

23  any of that.

24         I currently have about 5 or 10 people trying to convince

25  -- hitting me on all sides, (inaudible) Committee, civil

1    courts, Supreme Court, federal court, because nobody abided --
2    really, nobody abided by the Stay.  They would just
3    interchangeably use Rahul Manchanda or Manchanda Law Office
4    PLLC to hit me.  And so I wasn't protected.  I didn't have an
5    attorney.  I had no staff to defend myself because of the
6    bankruptcy proceeding.  And so I was literally, you know,
7    depending on Mr. Bronson.  He was allowed to walk in this case
8    after preparing every single statement which these opposing
9    attorneys are bringing up, you know, the 400 -- $4,000 or the
10   $100 evaluation of the law firm or the value of the watch or
11   other data that they're now trying to impugn to me.
12        Mr. Bruce Bronson, who I remind this Court has just been
13   mentioned in the newspaper for a partner of a law firm in
14   Roesser, who is now under investigation for false statements
15   on a bankruptcy action.  This man is apparently -- the way I
16   read it, does this a lot to his clients.  So I'm kind of in a
17   difficult situation.  But I've sought out counsel.  And again,
18   I've advised this Court that I've reached out to probably
19   about 20 to 30 different lawyers.  Half of them no response,
20   and the other half, as you read in --
21             THE COURT:  All right.
22             MR. MANCHANDA:  -- my papers --
23             THE COURT:  So let me just --
24             MR. MANCHANDA:  I'd like to finish.
25             THE COURT:  Let me just -- I know you'd like to

1   finish, but --

2               MR. MANCHANDA:  (Inaudible).

3               THE COURT:  -- but I need to remind you what --

4               MR. MANCHANDA:  Yes.

5               THE COURT:  -- we're here for.

6               MR. MANCHANDA:  Yes, Your Honor.

7               THE COURT:  I know you gave me a very long speech

8   last time dealing with Mr. Bronson when that Motion To

9   Withdraw was in front of me.

10              MR. MANCHANDA:  Yes, Your Honor.

11              THE COURT:  And I heard from Mr. Bronson, and I

12  heard from you, and I made a decision to allow him to

13  withdraw.  I, obviously, am trying to give you information

14  that might be helpful to you as a Pro Se Debtor.  We do have

15  lots of Pro Se Debtors here.  I'm not saying bankruptcy is

16  easy, but I'm not going to revisit today the Motion To

17  Withdraw as to Mr. Bronson.  And Mr. Bronson isn't here to

18  respond to any statements you may make against him.  So, it

19  doesn't seem appropriate to go down that particular road.  And

20  also, I get your point.

21      Your point is you don't have counsel, and I understand

22  that, and nobody is disputing that.  So that's the thing that,

23  I think, you want me to take for purposes of today.  And I

24  understand that.  And so that's not a problem, but I don't

25  want to spend anymore time about your views as to Mr.

1    Bronson's competence.  And I sense we're sliding into that

2    particular topic.  And so I'd like to focus on the motions

3    that are here, which again, I've tried to set the stage here,

4    are motions requesting information, not uncommon in

5    bankruptcy.  So with that, Mr. Manchanda, go ahead.

6         MR. MANCHANDA:  Yes, Your Honor.  Thank you for

7    that.  So, you know, in closing, in terms of the actual dollar

8    amounts that opposing counsel has thrown here in this Court

9    and using words like "commingling," which I find incredibly

10   offensive as an attorney.  There is no commingling of

11   anything.  There is a checking account, an operating account

12   with a law firm.  I don't do personal injury.  I don't do any

13   type of contingency-based cases.  We do not use escrow

14   accounts in my law firm.  It's straight up immigration,

15   criminal defense, criminal law.  So there is no commingling.

16   In Schedule C on my tax returns (inaudible) 21 years with no

17   hitch and no problem.  And everybody in New York State knows

18   that an operating account is all you need as a simple

19   attorney.  A Schedule C at the end of the year, your

20   bookkeepers and your accountants take your bank statements,

21   and they deduct what they can deduct as a business deduction

22   or as an expense or a disbursement, and they keep as income

23   what you are not allowed to deduct.  So that -- I think

24   everyone in this Courtroom knows that for opposing counsel to

25   characterize this is somehow commingling or evasion is, again,

1    prejudicial and is insulting and defamatory if it wasn't for

2    this (inaudible) Court.

3         The other issue is, again, and I go back to what I said

4    before, I will be looking at their motions in more detail if I

5    have to file an interlocutory appeal if there's a negative

6    decision here because, again, I didn't prepare this Petition.

7    It was prepared by Mr. Bronson, and I will respond to that

8    later.  The other issue, Your Honor, is the -- and again, with

9    the reaffirmation that Mr. Zipes talks about, again, I

10   prepared that myself in my own handwriting because I don't

11   know what I'm doing.  I don't have a lawyer.  I -- we were --

12   it's my wife's car.  She drops my three-year-old baby off at

13   school and goes grocery shopping, and she's also my law office

14   manager.

15        And so she needs to have a car when I'm driving around to

16   courthouses all around the country as an immigration lawyer.

17   She can't take Uber to the grocery store.  She can't Uber to

18   drop off my three-year-old baby to daycare.  She has to -- you

19   know, so she has a car, you know?  So it's a car that we

20   leased way before this bankruptcy proceeding, way before any

21   of this happened, and it's a continuation of a lease.  So the

22   reaffirmation again, and this is a very short answer, Your

23   Honor, I have no idea what I'm doing.  It wasn't signed by the

24   Creditors.  It wasn't signed by BMW.  It wasn't me affirming

25   it.  So I filed with the Court.  And apparently, the

1  Bankruptcy Court is the one who told me I filed incorrectly
2  because it wasn't signed.  So it's not even valid at this
3  point because BMW hasn't affirmed it.  But I know Mr. Zipes
4  wants to use that as some sort of swipe at me, and that'll be
5  addressed in the papers.

6      With regards to the, again, the Schedule C with my law
7  firm valued at $100, again, that was Mr. Bronson, my previous
8  lawyer, who had done all these calculations.  Again, we are
9  owed $600,000 in unpaid legal fees after 15 years.  We've
10  turned that over to the Trustee and turned it -- we turned it
11  all over to the collection agency, IC Collections, which the
12  Trustee has.  And they can't collect any of it.  So that
13  probably -- and in terms of assets, we have a bunch of beat-up
14  laptops, and we rent a virtual office.  So you can tell me
15  what that's worth.  You know, it's not a medical office where
16  there's MRI machines or CAT scan machines or x-ray machines.
17  We have a desk, a laptop, and a couple of cords.  And I don't
18  even have any (inaudible) examples.  You tell me if it's worth
19  more than 100 bucks.  Again, that's Bruce Bronson's number,
20  not mine.

21      Finally, I'd like to talk about the fishing expedition
22  which was mentioned three times -- actually twice in this
23  hearing not even by me.  Your Honor respectfully said it once.
24  Mr. Zipes had said it.  Again, I didn't even use it, so I
25  guess I'll use it now a third time.  It is a fishing

1    expedition.  Three years of my bank statements for my law

2    firm, you know, there's two issues there.  Again, one is the

3    attorney-client privilege.  Some of these clients don't want

4    the world to know that they hired a lawyer.  That is an

5    attorney-client privilege.  The other issue is, you know, we

6    haven't done our tax return yet for 2022.  We have an

7    extension.  We've already provided tax returns, although

8    opposing counsel has indicated that we didn't.  We've provided

9    tax returns for 2021, 2020, 2019, the last couple years, with

10   no problem and no issues because we have it available.

11       2022 has not been prepared yet because we haven't done

12   it.  We have an extension until October.  So if they're going

13   to look at my three years of bank statements and start picking

14   and choosing what is -- and again, they use sloppy words like

15   "commingling."  This is what concerns me, Your Honor.  They're

16   trying to perform surgery, not with a scalpel, but with a

17   hammer.  And they can't just throw these words around because

18   these have meaning, legal meaning.  Commingling of any account

19   as an attorney is grounds for disbarment, suspension, and

20   possibly jail time.  So, I would ask them to choose their

21   words carefully when they address a law firm account, an

22   operating account in the State of New York, because this kind

23   of behavior is dangerous, especially when it comes to

24   transcripts and the public record.

25       So, having said that, we strenuously object to three

1   years of bank statements because we do agree with this Court,
2   and opposing counsel, that it is a fishing expedition, and it
3   needs to be paired down.  If it's going to be allowed, then it
4   should be paired down.  We're not about to whiteout or redact
5   every single client name on these PayPal transactions, on
6   these credit card transactions, checks.  There's thousands of
7   names.  It's virtually impossible to do that to get it in done
8   in time, but I see that they want to expedite the process and
9   have us turn it in by May 30th, I believe, which is
10  impossible.  We can't even get our bank statements for three
11  years because we've had four different bank accounts in the
12  last three or four years because we keep getting closed by the
13  IRS.

14       So, we'd have to go back and get our savings, our
15  checking, the (inaudible).  We can't do -- we couldn't get it.
16  My wife and I have tried to get those bank statements just in
17  case we had to prepare it.  We're -- it takes a couple weeks
18  for them to order them, the back office, and we may not even
19  get them.  So there's a lot of problems with their requests.
20  This fishing expedition, again, needs to be paired down.  We
21  have given our tax returns.  We've brought in those tax
22  returns.  That should be sufficient.  It is a personal Chapter
23  7.  It is not a corporate Manchanda Law Office PLLC Chapter 7,
24  although that may be coming down the pike.  And if that does
25  happen, we will certainly provide any information.  But again,

1    it's a Schedule C tax return.  Our law firm income is
2    distinguished from my personal income on a Schedule C,
3    (inaudible) by bookkeepers and accountants of the highest
4    order.
5         We have no problem and we have turned it over.  But the
6    bank statements, certainly for 2022, have not even been
7    treated yet.  And they may be prejudicial because they're
8    going to see things like "Starbucks coffee."  They're going to
9    see something like "gasoline" or whatever, and they're going
10   to say, "Oh, that's commingling, and that's a personal
11   expense."  No.  At the end of the year my bookkeepers will
12   produce the receipts, and my accountant will have a meeting,
13   and we'll all talk as to what exactly is a business expense,
14   what is a Schedule C -- what is a personal expense, and that
15   will be picked up in terms of the income.
16        And I feel that I deserve that.  I deserve the right that
17   the Government, the IRS has given me, to file a tax return
18   without opposing counsel just (inaudible) today, sloppy, usage
19   of language that is extremely frightening and dangerous.
20   Clearly, they, you know, they -- there's an outcome here, a
21   determinative outcome.  They -- all the threatening me by --
22   with Complaints and oppositions (inaudible) possible criminal
23   (inaudible).  And they've seen nothing.  So the 2022 bank
24   statements are not treated.  They have not -- there's no tax
25   return.  There's a morass of information, and it's extremely

1    prejudicial and has not been treated by my bookkeepers or my

2    accountants yet, and it's unfair, unethical, immoral to put

3    that in their -- at the very least.  Tax returns, we don't

4    mind putting them in.  The bank statements that correspond to

5    those submitted tax returns, we have no problem putting them

6    in.  Assuming that we can get the bank statements, we will do

7    the best that we can.  But I guarantee you that we will not be

8    able to do it by May 30th because it's only a few weeks away.

9         So, and the final thing I'm going to say is with regards

10   to the Druckman and Senderoff individual that's --

11            THE COURT:  No, no.  I'm not -- we're not doing

12   that.

13            MR. MANCHANDA:  I will have a chance to respond to

14   him?

15            THE COURT:  Yes.

16            MR. MANCHANDA:  Okay.

17            THE COURT:  I will get to that, but we're --

18            MR. MANCHANDA:  So --

19            THE COURT:  -- we're not there yet.

20            MR. MANCHANDA:  So again, I am shooting in the dark

21   here.  I'm not a bankruptcy lawyer.  The reaffirmation was

22   something that I did in my own handwriting.  (Inaudible) this

23   case.  I have apologized if it offended Mr. Zipes, but it's my

24   wife's car.  She needs to be able to drop off my child at

25   daycare (inaudible).

1           THE COURT:  I understood that.  I heard you.  So
2    again, I'm --
3           MR. MANCHANDA:  Okay.
4           THE COURT:  -- I'm taking copious notes.  So --
5           MR. MANCHANDA:  Yes.  Yes, Your Honor.  And so,
6    again, finally, I would just like to, you know, caution
7    opposing counsel to use caution with their language and their
8    characterization of things that have happened here.  There is
9    no commingling.  That is an offense.  And talking about --
10   referring me to the Bar Association.  You know, you are
11   currently being investigated by the Bar Association.
12          THE COURT:  All right.  We're not going there.
13          MR. MANCHANDA:  Okay.
14          THE COURT:  We're not going there.
15          MR. MANCHANDA:  I think I've had enough to say about
16   this, and I'd like to respond to the Senderoff matter as soon
17   as he (inaudible) --
18          THE COURT:  All right.
19          MR. MANCHANDA:  -- (inaudible).  Thank you for your
20   time.
21          THE COURT:  Thank you.  All right.  So, I have in
22   front of me the requests of two parties to seek extensions of
23   time to file dischargeability complaints or challenge
24   discharge under the relevant statutes and to seek 2004
25   requests for -- information under Rule 2004.  So, I'm going to

1    start with the United States.

2         So the United States, on behalf of the IRS and the SBA,
3    seeks additional time to investigate and gather information
4    about the financial affairs of the Debtor.  And the idea is to
5    determine whether the Government has grounds to object to
6    discharge under the various statutes which are cited, 11
7    U.S.C. 727 or 523, file an Adversary Proceeding if
8    appropriate.  And the Government also requests documents and
9    permission to issue a subpoena to the Debtor's law firm under
10   Rule 2004.  And the idea is to get information to try to
11   answer those questions and to figure out whether there are
12   appropriate grounds for pursuing a Complaint or non-
13   dischargeability or whether there's information that's
14   provided that clarifies various questions that may exist in
15   the case, and thus mean that no such proceeding should be
16   filed.

17        So, a couple of the background rules.  Under Rule 4004(a)
18   in a Chapter 7 case, a Complaint objecting to the Debtor's
19   discharge should be filed not later than 60 days after the
20   first date set for the Meeting of Creditors under Section
21   341(a).  And after a notice in hearing, a Court may extend the
22   deadline to file a complaint objecting discharge for cause so
23   long as the Motion seeking an extension is filed prior to the
24   deadline, which was the case here.  The same timing applies
25   with regard to an objection on dischargeability under Section

1    523.  So, the other standard is Rule 2004, which provides that

2    on a motion to a party-in-interest, the Court may order the

3    examination of any entity, and it permits a very broad scope

4    of examination, including testimony and document production.

5    See In re Madison Williams & Co. 2014 WestLaw 56070 at *3,

6    Bankruptcy Southern District of New York, January 7th, 2014.

7    And I'm going to try to weave in Mr. Manchanda's comments and

8    concerns as I address these things.

9         So, Mr. Manchanda, I think you may have taken my comment

10   about a fishing expedition in the wrong light.  What I said is

11   there are cases that say that you can rule -- use Rule 2004 as

12   a fishing expedition, meaning that's how broad it is

13   considered under applicable law.  It is broader than discovery

14   in a Plaintiff versus Defendant.  It's anything that relates

15   to figuring out the assets and liabilities of a Debtor and how

16   that would impact Creditors and parties-in-interest.  And so

17   it's been viewed as akin to a permitted fishing expedition.

18   It's very broad.  And there's a reason for that to sort of put

19   it in a bankruptcy policy perspective, which is when you file

20   for bankruptcy, you get certain benefits.  You get the

21   Automatic Stay.  You get protection from Creditors.  And at

22   the same time, you have certain obligations that you take on.

23   And primary among those is transparency.

24        So, as I sort of started today's hearing with, it is not

25   uncommon for a Rule 2004 request to be made.  It's not

1   uncommon for people to see extensions of time as to

2   discharges.  They try to get a handle on the Debtor's assets

3   and liabilities.  And the use of the word "commingling" here,

4   I understand to be a reference to -- sometimes, we can't

5   figure out the flow of money for purposes of trying to figure

6   out assets, what is and isn't an asset of a Debtor versus a

7   law firm having had a law firm bankruptcy.  Those questions

8   can be very complicated.  They can often be a result of a lot

9   of litigation.  This Court has had a lot of bankruptcies.

10  (Indiscern.).  There's a legion of them, and they are

11  challenging cases.

12       So, I think it's -- the comment about commingling, I took

13  as not to be disparaging, but rather as a comment to say that

14  we're trying to figure out what is an asset of the Debtor,

15  what's a liability of the Debtor.  And that when it's a

16  solely-owned enterprise, it's a business, that can be a

17  challenging prospect.  And I can say that's true from personal

18  experience.  I've had plenty of cases where somebody comes in

19  with an entity that they have run, and it can be challenging

20  to sort of separate out the individual and the entity.  One of

21  my first cases on the bench more than 12 years ago involved

22  the bagel king on Seinfeld.  He had a bunch of buildings.  He

23  had a bunch of operations here in Manhattan and in New Jersey,

24  and it was very challenging to figure out how all of that

25  should be considered for purposes of a Debtor's assets and

1   liabilities.

2       So, applying the standards here, though, I do believe
3   cause exists to extend the deadline to object to discharge for
4   any complaints or actions that might be filed as to
5   dischargeability under 727, 523, or any other applicable
6   statutes.  I believe the United States is seeking documents to
7   determine whether it is appropriate to seek relief under these
8   statutes.  That's what it should be doing.  It should be
9   trying to get information to assess whether it's appropriate
10  to pursue relief non-dischargeability.  The alternative is to
11  simply file, essentially, a Complaint that doesn't have the
12  kind of information and clarity that it should have.

13      And so to make that determination, the United States is
14  seeking financial records of the kind that are very commonly
15  requested.  So, bank statements are a very common request,
16  going back numbers of years to try to understand the Debtor's
17  operations, the Debtor's flow of money, assets, liabilities.
18  That's also appropriate to go back a certain number of years
19  because the Bankruptcy Code itself goes back a certain number
20  of years when considering transfers that are made in the years
21  leading up to a bankruptcy.  And so in a similar vein, seeking
22  tax returns, very traditional.  Obviously, if the tax returns
23  haven't been filed yet, then they can't be provided until
24  they're filed.  But it is common to seek tax returns.  And in
25  fact, it's in the Code.

1    So, those are very garden-variety kinds of requests, and
2    I didn't take them to be disparaging.  I know there were a few
3    comments about where things will lead or not lead, and I took
4    them to be Mr. Zipes identifying things that his office might
5    be concerned about so that Mr. Manchanda was on notice that
6    those are topics to discuss or topics that the U.S. Trustee's
7    Office might be looking at.  No one is here today to decide
8    anything about non-dischargeability or about what is or isn't
9    an asset or a liability of the Debtor.  But I do think that
10   people generally appreciate a heads up as to what the thinking
11   is of an office like the United States Trustee on that
12   question, and so that's how I take the comment.

13   The issue is not in front of me today.  There's no
14   decisions on any of that today, dischargeability, what's an
15   asset, what's a liability, what should be disclosed, what
16   shouldn't be disclosed in terms of the bankruptcy case.  What
17   I have in front of me is a more limited thing, which is a
18   request for an extension of time and a request to issue a
19   specific 2004 discovery.  So, the factual basis for the
20   requested relief rests on information provided thus far in the
21   bankruptcy case and the related questions that might flow from
22   that information.

23   So, as recounted in the Government's brief with
24   citations, they talk about the Debtor claiming no salary,
25   asserting that there are no bank accounts in his name, and his

1    wife pays his bills, but then at the same time saying he pays

2    his home mortgage through his firm and that the source of the

3    down payment may have come through a business savings account.

4    And so the citations for all that are Schedule I at ECF 5,

5    Schedules A and B, ECF 1, and the 341 Exam found at Exhibit-B

6    in the Government's motion.  And so I think that's where the

7    word "commingling" comes from, not in any pejorative criminal

8    sense, but in a sense of the interaction between the Debtor

9    and the Debtor's wholly-owned business and following the flow

10   of money to figure out what is and isn't an asset or liability

11   of the Estate.

12        And so I think the questions that are -- still have to be

13   answered deal with the source of income, money used to buy the

14   house, details of the SBA loan.  And so certainly, there's a

15   statement in the Government's papers about the 341 Meeting and

16   the Debtor's inability to answer certain questions about

17   income compensation from him firm or details about his

18   mortgage and with the Debtor saying he wasn't really involved

19   in the sale, despite the mortgage is solely in his name.

20   That's all fine.  There are lots of times Debtors know or

21   don't know things when asked about them on the fly.  That's

22   why people ask for documents and try to essentially fill out

23   the picture.  And the same is true for the SBA loan, what

24   account where that may have been deposited and what happened

25   to it.  Again, if it's -- and how it should be considered for

1   purposes of the bankruptcy.

2       So, there was also some other references in the
3   Government's papers about net income and what that -- the
4   number of 4,250, what that constitutes, where it comes from,
5   and what the backup is for that, and that's -- Schedule I
6   often is invoked there when talking about statements for each
7   property showing gross receipts, ordinary and necessary
8   business expenses, and total monthly income.  And so I think
9   what's being asked for here is information to sort of round
10  out the picture.

11      And so the U.S. Trustee's motion is really exceedingly --
12  filed first in time, and it really is asking for information
13  under 2004 and an extension of time to get and analyze that
14  information, again, talking about whether it, one, it is going
15  to file a motion under Rule 7 -- 11 USC Section 707(b) dealing
16  with a discharge and/or seeking to file a Complaint
17  challenging dischargeability and again, the need for an
18  extension of time to analyze the information that's requested.
19  And so again, that's why the 2004 is requested here.  The
20  reasons for the information are essentially the same as quoted
21  by the Government.  And so we went through them in Mr. Zipes'
22  presentation, the specific categories that he was talking
23  about.  These include the tax returns.  Again, the Code
24  requires the filing -- providing of tax returns, and tax
25  returns are very useful financial information.  They are

1   standard things to disclose in bankruptcy.

2       The evaluation of a law firm, obviously, that's the
3   question of how that relates to Mr. Manchanda as the Debtor,
4   but that obviously is an asset that he owns.  The other one
5   was a relationship between the law firm and the Debtor in
6   terms of how money is handled and what sort of compensation
7   arrangements there are or there aren't, again, common things
8   for something that is a Debtor-owned business where you have
9   the individual and you have a corporate entity that the Debtor
10  wholly owns.

11      The SBA amount is also not a surprising request to make
12  here, given that it's a significant liability and that the
13  Government is here in its capacity as essentially the attorney
14  for the IRS and the SBA.  There were also some questions about
15  assets, particular assets, BMWs and jewelry and things of that
16  sort.  Again, I took Mr. Zipes' comment about the BMW to be a
17  sort of a heads up that his office will look into things,
18  whether there are items that might arguably be considered
19  luxury items.  And having presided over reaffirmations during
20  my time on the bench, that's -- and many, many, many reaffs
21  that come in front of me, there's always a question -- a
22  discussion that's had about anything that's agreeably a luxury
23  item and the need for it.  Sometimes, things are reaffirmed.
24  Sometimes, they're not.  I've seen it a lot on a case-by-case
25  basis.

1     But here, we're not there, right?  This isn't a

2  reaffirmation hearing.  This is just a request by two parties

3  to get additional information on how to consider the financial

4  picture of the Debtor.  The request dealing with transfers,

5  again, given the way the Bankruptcy Code works and the

6  statutes in the Bankruptcy Code dealing with transfers leading

7  up to the bankruptcy, again, a very common request.

8     And so turning to Mr. Manchanda's objections, I note

9  first that Docket #37 is titled Notice Of Motion Opposition.

10  But it does not address the requests.  It doesn't address Rule

11  2004.  It doesn't address the request for an extension.  It

12  doesn't address non-dischargeability.  What it does is make

13  many, many allegations of grievances about improper conduct by

14  any other attorney or party who has touched this case.  That

15  includes Mr. Zipes' office.  That includes the Chapter 7

16  Trustee.  That includes myself.  And those will be addressed

17  by the folks who those complaints are made in front of, but

18  that's actually not -- it also includes the United States

19  Attorney's Office in the papers that I'm looking at.

20     That's not what I have in front of me.  I have a very

21  traditional garden variety request for information under Rule

22  2004 and an equally traditional garden variety request to

23  extend the time to allow a request for information to be made,

24  for that information to be analyzed, and for the parties

25  involved to decide whether they want to pursue anything in

1 connection with dischargeability.  So, again, so I'm going to

2 overrule the opposition as essentially a series of Complaints

3 filed about attorneys involved in the case and the judge

4 involved in the case, me.  And people can file whatever they

5 want with the appropriate disciplinary committees, who will

6 address those things in the fullness of time.  That's their

7 job.  I'll let them do their job, and I'll do my job.

8      But again, the opposition itself doesn't address the

9 actual substance of the motions.  Mr. Manchanda today has.

10 And so let me briefly address his comments today.  So, I'm

11 going to take them in sort of in the order in which they were

12 made.  I certainly sympathize that Mr. Manchanda is not a

13 bankruptcy lawyer.  Bankruptcy can be a challenge, and I have

14 had other people come in who actually also owned a law firm

15 and represented themselves in a bankruptcy, and it's a very

16 challenging situation.  So, I don't minimize the difficulty

17 involved.  There are lots of rules and lots of requirements.

18 And the requirements of transparency are very considerable.

19      And it is important to note that you have to take the

20 whole package, meaning that I sometimes encounter Debtors who

21 say, "Well, I want this benefit, but I'm not really interested

22 in worrying about these other bankruptcy-related obligations

23 that might come along with it."  It's the full package.

24 That's how it goes.  We -- so while -- and while it's

25 difficult, there are lots of people who do represent

1    themselves in bankruptcy.  I can't give anybody legal advice,

2    but I try to do the best I can to provide people with

3    information and context for things that happen so that they

4    have a better sense of the path we're traveling and how to

5    consider certain things that come in front of me.

6        So, the next thing that Mr. Manchanda mentioned is

7    default judgments and violations of the Stay.  If there are

8    violations of the Stay, those can be addressed by motions.  A

9    couple of notes about it, though.  One is to the extent that

10   those were things that mentioned in e-mails sent to Chambers,

11   I did not accept those e-mails as filings.  And so those are

12   not in front of me because I did not go through the thousands

13   and thousands of pages of e-mails sent to my Chambers.  If

14   something was improperly filed in violation of the Automatic

15   Stay, the general rule is it is void ab initio.  There are, of

16   course, certain exceptions to the Automatic Stay, so

17   (indiscern.) and regulatory powers are one of those.

18       I do not know the circumstances which Mr. Manchanda is

19   referencing.  And he obviously should file a Motion to address

20   those if he thinks that is appropriate, and we'll deal with

21   those as they arise.  He next mentioned commingling and dollar

22   amounts and how things worked in Schedule C and fees and the

23   value.  Again, I didn't take, as in my context, as anything

24   defamatory in the use of the word commingling.  I rather took

25   it as a shorthand to address the fact that when somebody owns

1    -- a person owns a wholly-owned business, how you consider

2    compensation and the value to be assigned to the business

3    versus the person and compensation and all those kinds of

4    questions, which again are fairly common problems that we have

5    to deal with in bankruptcy.

6        So, I do understand Mr. Manchanda's comment that he

7    didn't prepare the Petition and that the $100 is Mr. Bronson's

8    number.  I can understand that.  And so what I think I would

9    suggest of Mr. Manchanda is to take a look at the bankruptcy

10   filing, the Petition and the schedules.  Get yourself familiar

11   with them.  And if they need to be amended to reflect what you

12   think is proper, then you should do that.  And the idea is to

13   get information and transparency.  So if the number you think

14   Mr. Bronson chose is incorrect, you should change that number

15   and amend the schedules and information.

16       And, but I understand that if something was not chosen by

17   you and that was after consultation with an attorney, then

18   that may be something that you need to look at so that you can

19   arrive at a number and a valuation that you feel comfortable

20   with and that the information contained in the schedules and

21   other things filed on the docket that were provided in Rule

22   2004 or otherwise, that they're accurate and transparent and

23   understandable.  So, I think the next thing mentioned was the

24   reaffirmation agreement and the BMW and Mr. Manchanda taking

25   that as a swipe at him.  I took it, again, as the U.S.

 1    Trustee's Office trying to preview some of the things that
 2    they traditionally look at.

 3         And I will tell you from past experience that luxury
 4    items, loosely defined, are things that the U.S. Trustee's
 5    Office looks at.  How it'll play out in this case, I don't
 6    know.  I don't have any of those facts and circumstances in
 7    front of me in the context of the overall case.  That's
 8    usually what a non-dischargeability complaint looks at, but it
 9    also looks at it in the context of the overall financial
10    circumstances, which is what the Rule 2004 requests are trying
11    to get at.  So I think we already talked about the comment
12    about the fishing expedition.  And again, I don't think
13    requesting three years of bank statements or tax returns is
14    inappropriate.  It's the financial picture of things.  If the
15    tax returns haven't been filed yet for 2022, that's fine.
16    When they're filed, then you can provide them then.

17         So, with that, I think that I've tried to respond to Mr.
18    Manchanda's comments so that he has a context for how I'm
19    considering these things and what I'm doing, so -- and why I'm
20    doing it.  So, I do think that the requests here are designed
21    to get at transparency for financial information.  That's the
22    word we use in all cases.  I give the benefits and burdens of
23    bankruptcy speech many times in lots of cases.  And so when I
24    talk about transparency, I'm essentially reciting what the
25    Code and the applicable case law requires.  And so that's how

1    it should be understood because it is an unusual circumstance

2    when somebody owns a business and comes into bankruptcy and

3    files for bankruptcy the amount of information that is

4    required.  And it is a burden, and it is unusual.  It's very

5    different than how a discovery works in a Plaintiff versus

6    Defendant matter in terms of justifying the need for it.

7    Really, it's about transparency into assets and liabilities

8    under a fairly liberal standard.

9        So, for all those reasons, I find the requests here to be

10   appropriate, so, and in particular, the requests for an

11   extension of time filing a premature motion, or a complaint on

12   non-dischargeability is not helpful for anyone.  And I think

13   both the Government and the United States Trustee's Office has

14   explained, I think, in a sufficient basis why they need the

15   additional time, and so I'll grant that request.  I will also

16   grant the request for -- to seek additional information under

17   Rule 2004 because I think the information that is sought is

18   the kind of information that is traditionally sought in a

19   bankruptcy case, again, financial information to allow us to

20   understand the assets and liabilities of a Debtor and to get a

21   handle on that so that folks can figure out whether to file

22   dischargeability complaints.

23       But frankly, that kind of information is just usually

24   part and parcel of the transparency that's required just for

25   all Creditors and stakeholders to understand what's going on

1   in a bankruptcy.  So that's why there are also all these

2   schedules and Statement of Financial Affairs and other

3   obligations that require information to be provided even

4   before it's ever asked for and -- or ever asked for in a Rule

5   2004.  So, I find the request here to be appropriate and

6   fairly routine actually in the context of cases that I've

7   seen.  And I take all comments about -- from the United States

8   Trustee's Office or the Government in the context of the

9   motions and their presentation today to be identifying the

10  kinds of things that they think about in cases, not a comment

11  on necessarily the merits on this case and any

12  dischargeability complaint, which we'll get to in the fullness

13  of time.

14      But I do think that those comments usually are welcomed

15  by a Debtor to understand what it is that the parties are

16  thinking about.  In bankruptcy, there are lots of discussions

17  between Debtors and Creditors.  Oftentimes, people reach

18  agreements.  And the idea is that a Debtor usually is

19  benefitted by having an idea of what a Creditor's concerns are

20  so that they can address it in the context of the case and the

21  hopes of reaching the best outcome in the case for the Debtor.

22  That's sort of the general way cases proceed.  So it's usually

23  better to have more information rather than less.

24      It doesn't mean, Mr. Manchanda, that you have to agree

25  with any of those statements.  I'm not expecting you to, but

1   that's okay.  We're not deciding the merits of any of that
2   today.  But a little preview of what people are thinking about
3   is usually helpful.  It allows you to say, "Well, I hear what
4   you're saying, but I disagree with you.  And here are some
5   facts and information and documents that'll help sort that all
6   out."  And that's perfectly fine.  So I took the comments
7   today in that vein.  It was not on the litigation of any of
8   the merits of any issues, which will be for another day.
9       And so to the extent it isn't otherwise clear, I'm going
10  to grant the motions in all respects for the reasons set forth
11  on the record.  I do appreciate the conversation on the
12  record, and I'm happy to have the opportunity to try to give
13  some context to Mr. Manchanda about this because I can
14  understand, without the context, it can be hard to understand
15  these comments that are made at the hearing and why people are
16  seeking certain information.  And so my hope is that by
17  explaining how these requests fit pretty squarely into
18  traditional requests in bankruptcy cases, particularly
19  bankruptcy cases like this where an individual owns a --
20  wholly owns a business to put a little context so that that
21  may help things along.
22      So, but those motions are granted, and I'll await
23  electronic versions of the Proposed Orders that, I think, can
24  simply say for all the reasons stated on the record here
25  today, the motions are granted.  And with that, I think we can

1  move on to the Adversary Proceeding today that is also on the

2  docket, <u>Senderoff vs. Manchanda</u>.  And so there is a Motion to

3  Dismiss that was filed by the Debtor, Mr. Manchanda, and there

4  was an opposition to that motion.  And there was also a

5  Scheduling Order which teed things up for today.  Mr. Zipes?

6       MR. ZIPES:  Your Honor, I just have a request.  I

7  have a hearing before Judge Beckerman at 1:00 o'clock.  It's

8  virtual, but I do have that hearing, and I would asked to be

9  excused.

10      THE COURT:  I think your business is concluded here.

11  I think the next thing we're going to discuss is the Adversary

12  Proceeding involving Mr. Manchanda and Mr. Senderoff.  Mr.

13  Manchanda, is there anything else that -- to talk to the U.S.

14  Trustee's Office about before Mr. Zipes might depart?

15      MR. MANCHANDA:  Yeah.  I'd just like to reiterate

16  that I don't accept the bank statements for 2022.  They

17  haven't been treated yet (inaudible).  So I will be filing an

18  appeal on that, definitely, for all the opposing counsel

19  purposes.  I do accept and agree to voluntarily, whatever has

20  been treated by our accountants and our bookkeepers.  The bank

21  statements willy nilly of 2022, a big morass.  And that hasn't

22  been treated for the attorney-client privilege or the other

23  issues I had mentioned.

24      THE COURT:  Well, so let me --

25      MR. MANCHANDA:  (Inaudible).

1          THE COURT:  I'm happy to comment on that.  One is
2     that the bank statements are pretty common in terms of
3     requests of, say, your bank statements, individual bank
4     statements.  As to anything involving the law firm, I think
5     what I heard Mr. Zipes say that I would -- if I understood
6     correctly and would agree with is that we should work through
7     attorney-client privilege issues.  If there are issues about
8     attorney-client privilege that need to be addressed, fine.
9     We'll do that.  That sometimes comes up in the context of
10     these things.  No one is asking you to go -- to turn over
11     billing records, right?  That raises a whole host of attorney-
12     client issues.  I see that sometimes in fee disputes that come
13     in front of me, but that's not what this is.

14          This is the -- essentially, the big picture of money.
15     But I understand that there are clients' names that might need
16     to be redacted.  And so I'm not -- you shouldn't take today as
17     a ruling on that.  The issue has been identified, and I'm
18     going to direct the parties to talk about it.  And if they
19     can't resolve it, then to come back to me, and we'll address
20     it.  So I'm not -- nobody is -- and I took Mr. Zipes' comments
21     to mean two things, one is he's not trying to run roughshod
22     over anybody's attorney-client privilege, and two that this is
23     an issue that occasionally comes up from time to time.  Again,
24     we've had plenty of law firm bankruptcies here.  I've had a
25     few myself.  And so, when it comes up, we deal with it, and

1    there's case law that sort of applies directly to this
2    situation in the bankruptcy context.

3         And so there's several ways to address that, whether it's
4    redaction of information, whether it's protective orders.  And
5    so what one -- and so what I'll do is I'll let the parties
6    talk about it in the first instance, but I'm more than happy
7    to make myself available to have a discussion about it on the
8    record to try to sort through it.  People can file papers, but
9    I'm trying to do this in the most efficient way possible.  So
10   sometimes when people say, "Judge, rather than file papers
11   could we just have a discussion about it," I'm happy to do
12   that and we can try to figure it out.  And obviously I'm not
13   saying the parties will necessarily agree.  If they don't
14   agree, then people file motions and I'll have to rule.  But it
15   is not -- this kind of problem is not something that will come
16   up for the first time ever in this case.  It's come up in
17   other cases.  There are some rules of the road in terms of
18   trying to address these things, but nobody is asking anybody
19   to waive attorney/client privilege.

20        MR. MANCHANDA:  Thank you, Your Honor.  Also, there
21   was two other issues that were not mentioned.  The employment
22   -- the employees that I have, their paychecks, for example, I
23   am currently in the very, very tightest situation.  Several
24   employees, past employees, who really don't want their
25   salaries or how much money they made be released to the

1    public.  And the second thing, Your Honor, my concern about
2    the remarks, May 30th deadline for all these bank statements.
3    Again, that's -- I can't pretend to get that in time --
4              THE COURT:  All right, so --
5              MR. MANCHANDA:  -- and that hasn't been addressed.
6              THE COURT:  Yes.  So two things I can say.  One is
7    the best way to handle a request for information is to start
8    producing information.  So usually the idea is that people are
9    happy to treat things as a rolling deadline.  So just start
10   going through stuff, and if those go to the end, they go to
11   the end.  And if things are being produced in the meantime,
12   parties usually work those things out both here in Bankruptcy
13   Court just as they would in, you know, a Plaintiff versus
14   Defendant case in State Court or District Court here, in
15   Federal District Court.
16        So I would say just start producing things that you can
17   produce that don't have issues, and work your way through
18   things and just let Mr. Zipes know and the Government's
19   attorney know where you are on things.  I have found it rarely
20   becomes an issue when someone needs an additional week or two
21   or whatever it is to figure out things if people are
22   cooperating back and forth in discovery.
23        And the other issue you raised was?
24             MR. MANCHANDA:  Yes, Your Honor.  So they had
25   mentioned that May 30 is when they wanted (indiscern.) --

1          THE COURT:  Oh, okay, so I think we addressed May
2     30th.  The other issue was the employees.  And so we have
3     rules here in the Bankruptcy Court about privacy, so we
4     actually will do on our own sua sponte, scrub various things
5     that people submit with information they shouldn't submit, so
6     we'll take out people's Social Security Numbers and things of
7     that sort.  So, obviously we have no interest in exposing
8     anybody's personal information, and there are sort of rules
9     for the road on that as well.  And so I'll let you talk with
10    folks about what's an appropriate way to handle that problem.
11    Again with the same offer that if after talking people don't
12    get to a conclusion that works, I'm happy to sit down and try
13    to hash it out, just like I do with any 2004 issue or
14    discovery issue.  Most of those things can be worked out in a
15    telephone call, because frankly a lot of these problems are
16    problems I see on a regular basis, having been on the Bench
17    for more than a decade.

18         So Mr. Zipes probably has -- and the Government probably
19    has some suggestions about how to handle attorneys -- your
20    employees and their personal information, and I think what
21    they're trying to do is get a sense of the big picture in
22    terms of money going out and money going in.  And so I have
23    learned, however, to stay out of the weeds until you all have
24    a discussion because you all are much closer to the case and
25    the facts and circumstances.  So my suggestions sometimes are

1    not that helpful until you all have that initial discussion.

2    So have a discussion, see where that ends up, and again, if we

3    -- we can set a -- I'm happy to set a conference before Mr.

4    Zipes leaves to just serve as a holding date if that would be

5    helpful.

6         MR. ZIPES:  Your Honor, I think that would be

7    helpful, and I think we are trying to actually help Mr.

8    Manchanda, but he's free to file whenever he wants to.  But I

9    would note that in the ordinary course, my office does work

10   with Debtors and that there might be some slightly different

11   questions between the parties here, and we would work that out

12   so he doesn't need to produce different documents for

13   everybody.  That's one thing, Your Honor.  And the other is

14   that the local rules with discovery do actually require us to

15   meet and confer and they do require meeting before the Court

16   before motions are filed, and I think that that's generally a

17   very helpful thing.

18        THE COURT:  Yeah, it is.  And it's no different than

19   even in a Plaintiff versus Defendant case in District Court.

20   You can't run into District Court on discovery in the first

21   instance without talking to each other or the District Court

22   will send you away, as we all know, and that's true here as

23   well.  So, but I will say that I've had -- I've seen great

24   success by parties here in Bankruptcy Court trying to work

25   these sort of issues out.  There are lots of ways to work out

1    issues and address concerns about disclosure of information,

2    whether it be an individual who was an employee, or how to

3    handle specific things.

4        So, what I can do is maybe give you a date early in June

5    -- early to mid June.  The 5th is early, the 12th is later.  I

6    don't know what else people have going on.  Mr. Manchanda, do

7    you have a preference for early June or mid-June?

8            MR. MANCHANDA:  Mid-June would be fine, Your Honor.

9            THE COURT:  All right.  Does that work for you, Mr.

10   Zipes?

11           MR. ZIPES:  It does, Your Honor, and we appreciate

12   your attention because --

13           THE COURT:  Yeah.  No, that's fine, that's -- June

14   14th we'll make it in the morning, 10 o'clock, and the idea is

15   that way people don't -- Mr. Manchanda, I often -- Mr. Zipes

16   and Ms. O'Toole have been here in other cases, because that's

17   what they -- they do bankruptcy for a living.  But just so you

18   know, I often set these conferences with the hope that and

19   with the expectation that people don't have to file the

20   motion, they don't have to file the letter.  They can

21   essentially have a forum to discuss the issues without

22   spending the extra time and effort to start filing things,

23   because it gives you an avenue to talk through things.  So

24   that's part of what the hope is, to make it more efficient for

25   everybody.  So I just mention that because I haven't had you

1    in my courtroom before as an attorney, so you wouldn't know

2    that unless I passed that along.  So all right.  So June 14th.

3    Yeah.

4         MR. MANCHANDA:  Your Honor -- sorry, I didn't mean

5    to interrupt.  So does that vitiate the May 30th deadline that

6    they've given me?  If we're going to have a hearing in June,

7    clearly, you know, I can't comply by May 30th.

8         THE COURT:  So, I'll repeat what I said before, is

9    start producing what you can produce and talk to Mr. Zipes and

10   Government's counsel, and I'm sure -- it sounds like they're

11   happy to sort of coordinate so that you don't have to deal

12   with lots of disparate kind of requests.  And so my -- it is

13   universally true that discovery disputes, whether they're in

14   Plaintiff versus Defendant cases, traditional discovery, or in

15   Rule 2004, always go better if I'm having conversations once

16   production is started.  They always go poorly if after a month

17   people say, well, we didn't produce anything because we're

18   still talking about this one issue or that one issue.  So I

19   encourage you to produce what you can that doesn't present a

20   problem and then we can talk about the other issues in June.

21   It just allows us to shrink the number of things we need to

22   talk about and the amount of time you need to spend here,

23   which is for everybody's benefit.

24        All right, thank you.  So with that, Mr. Zipes, you have

25   about a minute and a half.  So I hope you've got a Zoom

1  location close by.

2          MR. ZIPES:  That's all I will need, Your Honor.

3          THE COURT:  All right.

4          MR. ZIPES:  Your Honor, I appreciate the

5  (indiscern.) on that.

6          THE COURT:  No, no, that's fine, and I'm sure Judge

7  Beckerman will understand.  Please send my regards.  All

8  right.

9          MR. ZIPES:  Thank you.

10          THE COURT:  So with that we'll turn to the adversary

11  proceeding, <u>Senderoff vs. Manchanda</u>, 23-7008.  There's a

12  Motion to Dismiss that was filed.  I have that motion in front

13  of me.  Well, actually, give me a second, make sure I do have

14  that motion in front of me.  So I have the motion to dismiss

15  in front of me as well as the opposition.  One's at Docket 4,

16  one's at Docket 9.  And as the movant, Mr. Manchanda, I'll let

17  you go first.

18          MR. MANCHANDA:  Thank you, Your Honor.  First let me

19  just say again that my other counsel, or previous of counsel,

20  Miriam Gladdin, prepared that motion as the Court is aware.

21  She no longer works for the office, mainly because of

22  financial reasons.  We are unable to continue to afford to pay

23  employees to do work.  But she wrote that motion.  I know that

24  you previously had stated that I should be responsible, you

25  know, chapter and verse, for everything that my office does,

1    and I agree to that to some extent.  But I would like to say

2    before we proceed that -- and this is very -- really, really

3    short, it's not as good.  On or about February of 2018, I was

4    the victim of domestic violence.  I had somebody arrested,

5    like a woman named Nicole Madiz, who was escorted from my

6    apartment.  She was charged with stalking, harassment, and a

7    whole battery of criminal charges and prosecuted by the

8    Manhattan District Attorney's office.  I subsequently took

9    pity and I told the District Attorney in Manhattan that I

10   didn't want to prosecute, I didn't want to sign the supporting

11   deposition, as long as this person left me alone and I got an

12   order of protection.  Now why is that important?  (indiscern.)

13   --

14            THE COURT:  You just asked the question that I was

15   going to ask you --

16            MR. MANCHANDA:  Yes, Your Honor.

17            THE COURT:  -- because it's not mentioned in the

18   motion at all.

19            MR. MANCHANDA:  Yes, Your Honor, so I'm giving a

20   little background.  So what happened?  So it turns out that

21   Nicole Madiz, who was the name of the woman that I had

22   arrested, had had a restraining order against (indiscern.) in

23   Family Court and in Criminal Court where -- it was actually

24   against her for a series of domestic violence.  She had

25   another boyfriend by the name of Douglas Senderoff who was a

1   pilot serving in Manhattan.

2           THE COURT:  But Mr. Manchanda, you're --

3           MR. MANCHANDA:  (indiscern.)

4           THE COURT:  -- this is not in --

5           MR. MANCHANDA:  Right.

6           THE COURT:  -- any of your motion.  Your motion is

7   about standing.

8           MR. MANCHANDA:  This is just the history, Your

9   Honor.  Yes, Your Honor.

10          THE COURT:  I know, but -- so --

11          MR. MANCHANDA:  Okay.

12          THE COURT:  -- as you probably can appreciate as a

13  lawyer, for purposes of notice, I can really only address the

14  things that are presented to me --

15          MR. MANCHANDA:  Right.

16          THE COURT:  -- because that's what the other side

17  has been given notice of.  So what your argument is, as I

18  understand it in the motion, which is fairly straightforward -

19  - it's only four pages and a signature block -- is that there

20  is no standing here.  And so it's sort of a legal argument

21  saying there is no judgment and no award and therefore there

22  is no standing by the Creditors.  So I don't know that I need

23  the background, and again, I'm a little uncomfortable getting

24  into the background if it has been nowhere presented in the

25  context of this motion.

1          MR. MANCHANDA:  Yes, Your Honor.  So these --
2    Druckman is the latest legal incarnation of Douglas Senderoff
3    who has been blessed with lots of money from being a plastic
4    surgeon.  He's been litigating vexatiously since 2018 in about
5    seven different -- in front of ten different judges, five
6    different courthouses, and has gotten nowhere.  Has never
7    provided any evidence, has never received a judgment.
8    Everybody -- it's pretty much laughed at in Court, continues
9    to harass me, bankrupt me.  It's one of the reasons I'm in
10   Bankruptcy Court, Your Honor, because I've spent hundreds of
11   thousands of dollars on lawyers defending against this
12   vexatious lawsuit, and now he's following me here to the
13   Bankruptcy Court and continued to hang on like a -- you know,
14   whatever you want to call it.

15        I've never seen anything like this before in my life.  I
16   tried to make it clear to the Court that there is no judgment,
17   there is no -- and in fact, in the last courthouse, the New
18   York Supreme Court, the last motion that was pending was that
19   he had run the statute of limitations.  Unfortunately the
20   judge didn't rule on that until I was forced to file a
21   bankruptcy.  The bottom line is this is a vexatious litigant
22   with no case.  It could be a slap suit.  There's no judgment,
23   there's no dollar amount due, just speculate.  There's no
24   evidence, there's no proof after ten different judges in five
25   different courts.  I don't understand why this man is

1   continuing to be able to follow me in Bankruptcy Court.  It's
2   literally squeezing blood out of a rock.  I think that the
3   motions that Mr. Bronson prepared, as well as Ms. Gladdin --
4   there are actually two motions that address this man and his
5   client, Dr. Senderoff.  I don't have anything to add.  I think
6   at the last hearing Bruce Bronson did mention -- and again,
7   I'm not a bankruptcy attorney, but I think he addressed it as
8   sort of an unsecured Debtor or secured -- I don't know how he
9   characterized it.  I apologize for my ignorance in bankruptcy
10  law, Your Honor.  But Miriam Gladdin, of counsel, whose motion
11  was an additional motion, so they should be taken together.
12          I don't have anything further to add to that legally,
13  other than my -- the background that I provided here.  So if
14  you want to make a judgment on that based on what former
15  attorney Bronson wrote, as well as Miriam Gladdin, that would
16  be fine.  I would like to advise the Court that, of course, I
17  will not deal with these people in this Court.  I will have to
18  appeal it and proceed again in another courthouse.  But again,
19  this is just an extension of the domestic violence that I
20  experienced, and somebody was arrested for it.  And these
21  aren't their lawyers.
22          THE COURT:  All right --
23          MR. MANCHANDA:  And I want to make that very clear
24  to this Court.  They're using --
25          THE COURT:  Well --

1           MR. MANCHANDA:  -- these lawyers for that.

2           THE COURT:  -- Mr. Manchanda, I don't have any of

3   these arguments in the motion.  I have an argument about

4   standing.

5           MR. MANCHANDA:  It's all in the Federal Court, Your

6   Honor.  All the State Court (indiscern.) newspapers --

7           THE COURT:  I know, but --

8           MR. MANCHANDA:  -- it's everywhere.

9           THE COURT:  All right.

10          MR. MANCHANDA:  And it's kind of hard to, but I

11  actually can close the exhibits, and the exhibits in my motion

12  to oppose.  I put these -- wanted to get some of these

13  materials in there.  These people are just -- they're using

14  the lawyers as props and sort of continuing the abuse --

15          THE COURT:  All right.

16          MR. MANCHANDA:  -- and the same cycle.  Especially

17  now if (indiscern.) standing on the bankruptcy court, and it's

18  got to stop.

19          THE COURT:  All right.

20          MR. MANCHANDA:  That's it.

21          THE COURT:  All right, thank you, Mr. Manchanda.

22  And let me hear from Mr. Senderoff's counsel.

23          MR. DRUCKMAN:  Good afternoon, Your Honor.  So there

24  are a couple things I just want to address right away.  He

25  mentioned Miriam Gladdin several times.  You know, this motion

1    is signed in his name.  I think it actually has

2    (indiscern.) --

3         THE COURT:  What I'd like to do, I'll give you the

4    same advice as I gave him, let's focus on the motion.  I don't

5    need to get into extraneous things.  I have the motion in

6    front of me, he filed it, and that's what I'm considering, and

7    so I have his motion and your opposition.  So as to his

8    argument -- the argument in the motion on standing, which is

9    really the argument that's being made.

10        MR. DRUCKMAN:  So I think the main question on

11   standing and prior (indiscern.) standing and Bankruptcy

12   Court's statutory authority, this (indiscern.) this other

13   (indiscern.) would apply to Dr. Senderoff's claim, would it

14   enjoin us from prohibiting litigation to judgment and deciding

15   liability, and if liability is found, deciding damages.  And

16   if the answer is yes, then not only do we -- can we come to

17   this Court, we really have to because the deadline to object

18   (indiscern.).  And if not, we don't have to be here, we don't

19   have to be spending the money here.  But as we looked at the

20   Bankruptcy Code and the case law, it seems pretty clear that

21   the debt and claim of the primary (indiscern.) includes claims

22   that are disputed and not -- that haven't reached a judgment.

23   We presented that case law in our opposition and asked Mr.

24   Manchanda to reply to state whether he agreed with that

25   assessment.  Does he think discharge would apply, and if so,

1    what is the appropriate procedure for challenging it, because

2    it's in §523.  We didn't get an answer.  I won't go into what

3    transpired as to what we did receive, so I would just pose

4    that question again.

5         And so I don't really have anything more to say on

6    standing or statutory authority unless the Court has

7    questions.  This was a separate issue we raised in our brief

8    about whether the Bankruptcy Court could have issued a

9    judgment on Mr. -- non-discharged (indiscern.) --

10             THE COURT:  Well, that issue comes up occasionally

11   where there's a non-dischargeability complaint and the

12   ultimate lawsuit somewhere else has not been resolved, whether

13   people decide it's beneficial for purposes of efficiency to

14   merge them and deal with all of them here, it implicates

15   questions about whether something has to be here, whether

16   people want it here, and I agree with you, I think that that's

17   premature.  What I understand you have is a non-

18   dischargeability complaint.

19             MR. MANCHANDA:  Yes.

20             THE COURT:  All right.

21             MR. MANCHANDA:  So if there aren't any other

22   questions on that, the only other issue I want to address was

23   the (indiscern.) sanctions.  And we feel, obviously, that that

24   it is appropriate for class (indiscern.) approximately the

25   same as they are in Federal Court on the merits.  There is

1    certainly no meritive claim that (indiscern.) outstanding

2    (indiscern.) request for sanctions (indiscern.) involved

3    (indiscern.).

4         THE COURT:  Well, I hope not to get there, so -- in

5    the sense of the request for sanctions being sanctionable.

6    All right, anything else, counsel?

7         MR. MANCHANDA:  No, thank you, Your Honor.

8         THE COURT:  All right.  So a non-dischargeability

9    complaint addresses a very narrow issue, which is whether a

10   liability that either exists in a judgment or is contingent,

11   unliquidated, yet to be fully ruled on is dischargeable.  And

12   the idea is that bankruptcy discharge is broad so that it

13   covers any and all claims that can be subject to discharge,

14   and that's why you hear discussions about extending time to

15   file a non-dischargeability complaint or seek such relief,

16   because if you don't, then your claim can be discharged.  And

17   so there is a question about what a complaint here on non-

18   dischargeability means vis-a-vis proceedings elsewhere, or if

19   there haven't been proceedings elsewhere, a claim can be in

20   any sort of state for it to be the subject of a non-

21   dischargeability complaint.  The liability on a claim is

22   discussed in the definition section of the code and a claim is

23   defined as a right to payment, whether or not such right is

24   reduced to judgment, liquidated, unliquidated, fixed,

25   contingent, matured, unmatured, disputed, undisputed, legal,

1  equitable, secured or unsecured.  And so it is often the case
2  that folks come here in Bankruptcy Court and their claim is
3  based on a judgment.  But it is almost as often the case that
4  people come here and their claim is something that hasn't yet
5  been resolved on the merits in another forum.  And so then
6  people will act in connection with nondischargeability in a
7  way to protect their rights to go forward with a claim.

8      So I don't -- the fact that there is no judgment here
9  doesn't bar a party from filing a non-dischargeability
10  complaint, because again, a claim covers something that's
11  unliquidated or is contingent, and so it is often the case
12  that those things have not yet been resolved.  So that fact,
13  which is really the argument that's made in the motion to
14  dismiss, does not and should not result in a lack of standing
15  by the Creditor here.

16      And so given that, I really don't have -- again, the fact
17  that there's no judgment that's been entered, no award of
18  damages is not a basis to conclude that there is no standing,
19  and so with that being the argument, I have no choice but to
20  deny the motion to dismiss.  And there may come a day when
21  there's a conversation about what happens in the claim -- I'm
22  sorry, in the non-dischargeability action on the merits,
23  whether that is a -- something that's dealt with all here,
24  something that's -- the dischargeability is dealt with here,
25  whether there is a stay lifted for it to go ahead somewhere

1  else.  There's a lot of -- there's as many ways to think about
2  it as there are courts in a sense.  And so I certainly urge
3  the parties to think about what is an efficient way to resolve
4  the claim.  And so if there is a lawsuit that is -- there's
5  one pending lawsuit, I know there's a lot of litigation, so I
6  don't profess to have mastery of it, a long history back and
7  forth here, but sometimes people will say, well, Judge, we'll
8  agree to let that case play itself out because we think we
9  should be there and not here, that's something that some
10  people do sometimes.  There's lots of different ways to handle
11  it.  I've also had trials on nondischargeability where people
12  said, well, Judge, since you're going to hear evidence on non-
13  dischargeability, could you actually decide the underlying
14  merits of the dispute between the parties, which has never
15  actually gotten to fruition in any other forum, and people
16  will sometimes agree to do that because they think it's the
17  most efficient way to handle it.  So there's no one right way
18  to do that.  I'll leave it to you all to figure it out.  It's
19  not a today problem.

20      Today what I have in front of me is a request to dismiss
21  the case saying that since there's no judgment, there's no
22  standing, and so I will deny that motion to dismiss because
23  the lack of judgment does not mean there is no standing.  And
24  that's the only argument I'm ruling on, so there's no other --
25  that's the argument I've been presented with.  There may be

1    other things that we talk about in the fullness of time about

2    the merits.  Today it's really not about the merits, it's just

3    a specific argument, I understand, about the lack of a

4    judgment and whether that implicates the standing to file a

5    non-dischargeability case.

6         So that's the Court's ruling, and I'd ask that Mr.

7    Senderoff's counsel submit a very short order that says for

8    the reasons stated on the record, the motion to dismiss is

9    denied.  And with that, the adversary proceeding -- I don't

10   know if we need a conference to sort of figure out -- what I

11   normally do in adversary proceedings is talk to the parties

12   about setting a schedule for moving the case forward.  I don't

13   think we've done that yet, and so I think we need to do that.

14   We could use the same date in June if that's helpful for

15   folks, because Mr. Manchanda, that might be most efficient

16   rather than splitting things up.  And so if there's any

17   objection to that, let me know, otherwise we can use that date

18   to carry everything, which is what I often do in bankruptcy

19   cases where there's an adversary, is I carry everything at

20   once, because it's usually most efficient for the parties.  So

21   we'll use that as a status conference.

22        And so with the motion to dismiss addressed, then that

23   means an answer would be filed, and then parties would be

24   obligated under the rules to sit down and talk about

25   scheduling, and so I'm happy to talk about scheduling when we

1   get together in June, if that's the most efficient way to do
2   it.  And that conversation is the kind of conversation you
3   would expect, which is how long will it take to address the
4   issues of non-dischargeability in terms of whether there's any
5   discovery or anything that's left unsaid, or whether there is
6   some order of proceedings that makes sense, given the
7   litigation outside the forum.  Again, I'll be interested in
8   all parties' views on that when we get together in June.
9           MR. MANCHANDA: Your Honor --
10          THE COURT:  Yes.
11          MR. MANCHANDA:  -- sorry, I'm a little confused.  So
12  does that mean that the stay is being lifted in New York
13  Supreme Court?  Should I continue --
14          THE COURT:  No.
15          MR. MANCHANDA:  Okay.
16          THE COURT:  No, no, no.  No, what I'm doing is I'm
17  saying that sometimes people will decide that what they want
18  to do in the dispute -- the big picture dispute between
19  parties, which might include non-dischargeability but also
20  includes actual liability, right.  You don't worry about a
21  debt whether it's dischargeable unless there's actually a
22  liability.  So sometimes people say, well, we should figure
23  that out.  Let's go to State Court and resolve -- and deal
24  with the underlying lawsuit first, or sometimes people say
25  we've already done that, or Judge, why don't we do it all

1    here.  All I'm trying to do is give you an idea there's lots
2    of different ways on how to handle that, where you have a --
3    the underlying liability that Mr. Senderoff is seeking to have
4    non-dischargeable hasn't yet been litigated to a judgment,
5    which you point out, right.  It hasn't.  So in light of that,
6    what's an efficient way, because litigating in multiple forums
7    without any sort of plan is inefficient and confusing, and
8    State Courts will often say there's a bankruptcy, I don't know
9    what I can do and what I can't do.

10   And so what I will say is I'll just ask you and Mr.
11   Senderoff's counsel to think about what an efficient way to go
12   forward is.  Maybe there's something we can agree upon, maybe
13   there isn't.  If there is nothing to agree upon, what we would
14   just do is the traditional approach which is to say we have
15   just a non-dischargeability case.  That has its own standards
16   in the Bankruptcy Code, the applicable non-dischargeability
17   statutes.  That's what we would litigate to a conclusion and
18   that's what we do and that's all we would do.  But again, I
19   never want to close the possibility on a more efficient way to
20   handle things, because litigation in multiple forums can get
21   expensive and inefficient, so sometimes parties will have a
22   better idea than that, and I'll leave it to you all to think
23   about that.  And if you have suggestions, I'm happy to hear
24   them.

25           MR. MANCHANDA:  Yes, Your Honor.  The reason I bring

1    that up is because this has been going on now since 2018, and
2    a lot of the evidence is stale.  There's probably witnesses
3    that have left the country.  I mean, it's just beaten like a
4    dead horse, and I just --
5              THE COURT:  Well --
6              MR. MANCHANDA:  -- there's nothing there, Your
7    Honor.  That's their job.
8              THE COURT:  Well --
9              MR. MANCHANDA:  That's the problem with these
10   people.
11             THE COURT:  -- one of the things that bankruptcy can
12   do is help to prod things to a conclusion that are long-
13   standing and, you know, so what that looks like is, you know,
14   is yet to be decided.  But it is -- bankruptcy is supposed to
15   deal with all the claims and if it serves to push some things
16   forward, to close the book on some things, that can be
17   beneficial.  So as to the merits of it, I obviously -- just
18   like anything else, we're not here on the merits of it.  We
19   had the motion to dismiss, it was a very specific legal issue
20   which I ruled on, but the merits of the non-dischargeability
21   action are for another day.
22        The other thing that I will always talk to folks about,
23   though, at some point, we can talk about it next time, is
24   there's always a question about the economics of any
25   individual case and what makes economic sense, and that's why,

1    as you know, any lawyer knows, a lot of things settle in cases

2    because it makes more economic sense than litigating to

3    conclusion.  I know there's a history here with the parties

4    that make that unlikely to be an option, but I feel certainly

5    duty-bound to mention that.  But bankruptcy also can mean

6    there's a question about being paid in bankruptcy dollars

7    versus if something is not dischargeable then it isn't paid in

8    bankruptcy dollars, it exists outside of the bankruptcy.

9    There's a lot of things to think about in terms of what makes

10   economic sense and sense generally in terms of trying to wrap

11   things up.  So I'll let you all think about it and we can talk

12   about it the next time we get together.

13       All right, with that, anything from any other party?

14           ALL:  (No verbal response).

15           THE COURT:  All right.  Thank you all for being here

16   today, and I will see you all in June.  In the meantime, be

17   well.

18           ALL:  Thank you.

19       (Court adjourned)

20                         CERTIFICATION
21   I, Lewis Parham, certify that the foregoing is a correct
22   transcript from the electronic sound recording of the
23   proceedings in the above-entitled matter.
24
25
26   *Lewis Parham*                          5/18/23
27
28   _____     _____
29   Signature of Transcriber              Date