UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
                          .
IN RE:                    .        Chapter 7
                          .
Rahul Dev Manchanda,      .
                          .
         Debtor.          .        Bankruptcy #23-22095 (SHL)
..............................................................
                          .
  Senderoff,              .
                          .
         Plaintiff,       .
                          .
         v.               .
                          .
  Manchanda,              .
                          .
         Defendant.       .        Adversary #23-07008 (SHL)
..............................................................
```

White Plains, NY
August 17, 2023
11:25 a.m.

***APPROVED FOR ZOOM HEARING***

TRANSCRIPT OF:

STATUS CONFERENCE

DOC. #47 MOTION TO QUASH A SUBPOENA

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA PRE-
TRIAL CONFERENCE

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA DOC.
#19 MOTION TO DISMISS ADVERSARY PROCEEDING

ADVERSARY PROCEEDING: 23-07008-SHL SENDEROFF V. MANCHANDA DOC.
#22 MOTION TO AMEND COMPLAINT

BEFORE THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For The Debtor: | Rahul Dev Manchanda<br>Pro Se Debtor |
| For the IRS and the SBA: | Dana Walsh Kumar, Esq.<br>Assistant U.S. Attorney<br>Southern District of New York<br>86 Chambers Street-3rd Fl.<br>New York, NY 10007 |
| For Douglas M. Senderoff: | Michael Druckman, Esq.<br>Lewis & Lin, LLC<br>77 Sands St.-6th Fl.<br>Brooklyn, NY 11201 |
| For The U.S. Trustee: | Greg M. Zipes, Esq.<br>U.S. Trustee's Office<br>Alexander Hamilton<br>Custom House<br>One Bowling Green-Ste. 534<br>New York, NY 10004 |
| Transcribing Firm: | Writer's Cramp, Inc.<br>1027 Betty Lane<br>Ewing, NJ 08628<br>(609) 588-8043 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1          THE COURT:  I think the next case that's on is <u>Rahul</u>

2   <u>Dev Manchanda</u>, and it's a Chapter 7 case.  So, I did receive

3   Mr. Manchanda's letter request to handle this matter by Zoom.

4   And given the reasons explained in the letter, I was happy to

5   agree to that.  So, let me get appearances.  So let me find

6   out who is here.  Is Mr. Manchanda here?

7          MR. MANCHANDA:  Yes, Your Honor.  I'm here.

8          THE COURT:  All right, good morning.

9          MR. MANCHANDA:  Yes, Judge.

10          THE COURT:  The United States Trustee's Office is

11   here?

12          MR. ZIPES:  Yes.  Good morning, Your Honor.  Greg

13   Zipes with the U.S. Trustee's Office.

14          THE COURT:  All right.  And counsel for Mr.

15   Senderoff and the Adversary Proceeding?  You're on mute,

16   counsel.

17          MR. DRUCKMAN:  Michael Druckman for Douglas

18   Senderoff.  Michael Druckman --

19          THE COURT:  (Inaudible).

20          MR. DRUCKMAN:  -- for Douglas Senderoff.

21          THE COURT:  All right, I heard you just fine then.

22   Thank you very much.  Anyone else who's here for this case?

23          MS. KUMAR:  Yes, Your Honor.  Dana Kumar from the

24   U.S. Attorney's Office on behalf of the IRS and the SBA.

25          THE COURT:  All right, good morning to you.  All

1   right.  I think that's everyone.  So, I know we have some

2   things to deal with in the Adversary Proceeding.  But I

3   thought, at first, we'd talk about the case, the bankruptcy

4   case itself on status.  I know there were requests for

5   information.  We had a couple of hearings and a couple of

6   follow-up conversations, and the parties were talking the last

7   time we were here.  And so, I know the parties that had

8   requested information were the U.S. Trustee's Office and the

9   United States Attorney's Office.

10          And so I thought since it was their requests, I'd start

11  with them first to see the status of any of those things and

12  things that we might -- or we need to talk about on those --

13  on that just as a matter of status.  And then I'll hear from

14  Mr. Manchanda on that, and then we can eventually turn to the

15  Adversary Proceeding.  So, Mr. Zipes, perhaps you could start

16  us off.

17          MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

18  Trustee's Office.  Your Honor, we have been engaged with the

19  Debtor in obtaining information in response to the 2004

20  applications.  And among other things, we received information

21  from the Debtor on -- in July.  And we, in keeping with our

22  protocol, we've Bates stamped those documents and sent them

23  back to Mr. Manchanda with a chart that, hopefully, describes

24  where each document response fits into our document requests

25  by number.

1      And, Your Honor, I believe Mr. Manchanda would --

2   Manchanda -- I don't want to speak for him, but I think that

3   he would say that he's given us everything he thinks he has.

4   I might be wrong about that.  But assuming that's the case,

5   Your Honor, I think the next step here is to have an

6   examination, at least an initial examination, to -- so that we

7   can ask questions about what was provided, get our

8   understanding of what hasn't been provided and why it hasn't

9   been provided.

10      Your Honor, this is a possible 727 Action.  727 has

11   enumerated provisions in it that include failure to provide

12   information.  And, Your Honor, I'm not sure that we're there

13   yet.  We're in the discovery stage, so it would be helpful to

14   have an examination at this point, which we would arrange at a

15   mutually agreeable time.  I do understand Mr. Manchanda has

16   possible health issues relating to family members, and we can

17   obviously work around that as appropriate.  But I think the

18   next step is an examination, assuming we have received that

19   Mr. Manchanda believes that he is required to give us.

20          THE COURT:  All right, thank you very much.  And Ms.

21   Kumar, anything from you?

22          MS. KUMAR:  I would just echo what Mr. Zipes said,

23   Your Honor.  You know, we have received the same documents,

24   and I appreciate all of the work of the U.S. Trustee's Office.

25   And to the extent then -- and chart it out so that we can see

1    if there are any gaps in there.  And so assuming that Mr.

2    Manchanda does not have anything further to turn over in

3    response to the Government's request, then we agree that an

4    examination would be the next logical step.  And we would, you

5    know, work with both Mr. Manchanda and Mr. Zipes to do just,

6    you know, one meeting and one examination so that we're not

7    duplicating efforts of making extra work for anyone.

8            THE COURT:  All right, thank you very much.  So, Mr.

9    Manchanda, a couple of things.  One is sorry to hear about the

10   health issues in your family.  I wish those folks all the best

11   and a speedy recovery.  I know how stressful that is.  To just

12   -- I may be telling you things you already know because you

13   are in the practice of law is it's generally understood, I

14   think, whether you're a bankruptcy attorney, general

15   litigation, or whatever it is, that the idea always is to get

16   all the relevant documents together before you have any kind

17   of examination of a witness, a deposition, an examination,

18   whatever you'd like to call it, when you talk to a witness.

19          And so I think the idea here is if you've given over

20   everything that you have, then folks will work with you to

21   schedule a time to have one examination in the bankruptcy

22   case.  And I think the only reason Mr. -- the reason, I think,

23   Mr. Zipes is bringing that up is just to make sure to confirm

24   that just so that you didn't schedule an examination and then

25   somebody shows up.  That sometimes is the case.  There's

1    instances, "Oh, I have some other things I haven't given you"

2    or shows up with some additional documents, and then that

3    makes it hard to actually have one exam that's done

4    efficiently.

5        So that's just a little bit of an explanation.  Again, I

6    suspect you'd know that from your own practice of law.  So I

7    guess my question then for you, Mr. Manchanda, is, is it your

8    understanding that, at this point, you've given over all the

9    documents that you have?

10        MR. MANCHANDA:  Yes, Your Honor.  I -- you know,

11    we've scoured the barrel.  And we actually just recently

12    supplemented some other financials.  We've now fully complied

13    with all financial bank statements, records we were initially,

14    you know, obviously, averse to because of the attorney-client

15    privilege in my law firm and various client secrets that we,

16    you know, relented and gave it all up to date, 2022, 2023,

17    2021, 2020, 2019, as well as all tax returns, including credit

18    cards, as well as, you know, credit cards.  You know, we

19    recently supplemented the credit cards a few weeks ago because

20    some of these credit card companies were not releasing data

21    because they -- we had Bruce Bronson as our former attorney.

22        They wouldn't even talk to me even though I'm the credit

23    card holder.  They said, "No, unless you send us proof that,

24    you know, you're no longer represented."  And I tried to send

25    in all the proofs.  They still didn't relent.  And actually,

1    Capital One has still to this day refused to turn over credit

2    card statements.  But we did receive First Visa, I think it

3    was, and we've sent it over via e-mail to the Assistant U.S.

4    Attorney as well as Assistant Trustee Zipes by e-mail, as well

5    as to our accountant, CPA Michael Arons to possibly amend our

6    2022 tax return if it was necessary.  He's currently mulling

7    that over.  I don't think it's going to affect the tax return,

8    which has a negative balance, by the way, which actually

9    prompted the bankruptcy.  We had a negative net gross making

10   18 or $20,000 a year.

11          In terms of everything else, we also waived all

12   privileges, confidentiality privileges with anyone else who

13   may or may not have data that we just simply don't have.  For

14   example, Bruce Bronson, our former bankruptcy attorney, has

15   already furnished the appraisers to determine the value of

16   certain things that we are putting into the case, for example,

17   the value of my watch, the value of my home.  He had his own

18   contractors.  We, you know, we hired Mr. Bronson (inaudible)

19   contacts and his knowledge.  I don't have any data about where

20   he got that information.  I wish I did.

21          But I asked Mr. Bronson, and he's one of 10 individuals

22   to provide any and all information free and clear with no

23   impediments to Mr. Zipes and Ms. Kumar.  And I did that about

24   three or four months ago.

25               THE COURT:  All right.

1          MR. MANCHANDA:  Some of those people have complied

2     and cooperating, including Jayanthi Ganapathy, who -- of

3     FinAccurate, who actually was responsible for securing our SBA

4     loan as well as Jacob Rothman who -- of SBG Funding, who was

5     the first person to get our SBA loan, and Ms. Jayanthi just

6     did the increase.  So they've provided documents, except for

7     Mr. Rothman, who hasn't even responded.  The vast majority

8     have been individuals who I've been communicating to,

9     including, unfortunately, I think Mr. Bronson, who really

10    should know better because he's an active member of this

11    Court.

12         I believe he hasn't even responded to my request or the

13    U.S. Attorney and Trustee.  I don't know what else to do other

14    than a Motion To Compel this Court to reach out to Mr. Bronson

15    to cooperate because we're doing everything that we can do to

16    end this case, to finish it up, to get it over with.  It's

17    coming up to eight -- six, seven, eight months on this.  And

18    it's really -- the stress level, as you can see, my wife is

19    now -- we're dealing with a colloidal cyst, which is a nice

20    way of saying "brain tumor."  And I'm a little -- pretty

21    stressed out.  I have a three-year-old son, and this is not

22    helping.

23         As you know, I've had a heart attack in August as well.

24    So this dragging on is certainly not helping.  I will

25    certainly look to do, you know, I guess, an interview with

1    these two individuals.  I don't know what the point of that

2    will be.  We've submitted everything we can.  But --

3            THE COURT:  Well, just to put it in context --

4            MR. MANCHANDA:  -- (inaudible).

5            THE COURT:  Yes.  Just to put it in context, it's a

6    common part of the bankruptcy process, so -- that's done in

7    cases.  So, because the idea then is people get to ask

8    questions and sort of put -- that put the documents in context

9    and give an overall picture of things.  And it's, at that

10   point, the idea is in an efficient way to kind of try to wrap

11   things up.  And so -- and some Chapter 7 cases, depending on

12   the complexity of people's finances, some take longer than

13   others, and it's just a reflection of the complexity of

14   finances.  So it sounds like you've given over everything you

15   have.  I do appreciate very much everybody's continued

16   communication and cooperation.  That's obviously reflected in

17   the conversation we're having here this morning, so I

18   appreciate that.

19           And so what I will leave you all to do is to arrange, at

20   a mutually convenient time, a time for an examination and

21   which Ms. Kumar and Mr. Zipes will coordinate so that it's one

22   examination as opposed to an examination that is requested by

23   two different parties that you would do at two different

24   times.  And so it sounds like the intent is to do one, and

25   then we'll see where we are at that point.  I've learned in

1    this job not to sort of try to predict the future.  I don't

2    have any better success rate than anyone else.  So we -- what

3    we do in bankruptcy is very focused on the process, I think,

4    as you've seen, Mr. Manchanda.

5        We sort of have a process that's set forth in the

6    Bankruptcy Code.  It's not a process that's pre-formed.  It's

7    all these things.  Whenever you hear a reference to the Rules,

8    that really reflects what the process is.  And so we're going

9    through the process.  And again, I appreciate everybody's hard

10   work to get there.  And obviously, the examination will be

11   arranged at a mutually convenient time.  And Mr. Zipes already

12   mentioned, everybody is aware of the health issues that are

13   being faced by your family, Mr. Manchanda.  You have all of

14   our best wishes, and you will figure out an appropriate time

15   to do this in light of all those other things.  And so, with

16   that --

17         MR. MANCHANDA:  If I may, Your Honor.  I'm sorry to

18   interrupt.  With all due respect, I don't remember an

19   examination under oath in the last bankruptcy that I had about

20   15 years ago.  So I kind of was wondering what prompted this

21   one, especially if we've cooperated and complied --

22         THE COURT:  Well --

23         MR. MANCHANDA:  -- if there was anything

24   (inaudible).

25         THE COURT:  There is 2004 Motions.  I see those

1  pretty much every week in different cases.  And there were
2  such requests here, and they inevitably request documents in
3  an examination.  So it is a fairly common part of the process.
4  It's in cases that are much -- involve much less complicated
5  pictures.  So there are people who don't run their own
6  business, for example.

7  That's something that adds a level of complexity to an
8  individual case.  And so every case is different.  And so
9  that's probably the only thing I can tell you.  It's not
10  unusual at all, and I think it's probably the ordinary course
11  in cases where folks are running their own business just
12  because there's more complexity to the financial picture.  All
13  right.

14  MR. MANCHANDA:  Okay.

15  THE COURT:  All right.  So anything else on the main
16  case for anybody to discuss before we turn to the Adversary
17  Proceeding?

18  MR. ZIPES:  Your Honor, it's Greg Zipes from the
19  U.S. Trustee's Office.  Just two minor points.  I am aware of
20  Mr. {sic} Ganapathy's documents that were sent to us.  Another
21  gentleman was mentioned, and I don't know that we got those
22  documents from him.  I didn't catch the name exactly, but I
23  did here Mr. Ganapathy and another one that was recently
24  obtained.  So I'm just wondering if there are more documents
25  in that request or if it's reflected in Mr. Ganapathy's

1  turnover (inaudible).

2      MR. MANCHANDA:  (Inaudible).  If I -- may I respond?

3      THE COURT:  Sure, please.

4      MR. MANCHANDA:  Can I respond?  Yeah.  I think I

5  mentioned two other individuals.  One was CPA Michael Arons of

6  Harrison, Westchester County.  We did submit our 2022 tax

7  return to the opposing counsel, AUST and USA.  There's another

8  individual named Jacob Rothman of SBG Funding, who was the

9  actual SBA loan originator.  He actually was the one who got

10  the SBA loan back in, I think, 2020, 2021.  And I guess, you

11  know, he has not even responded to anybody.  And Jayanthi

12  Ganapathy of FinAccurate actually took over after, you know,

13  Mr. Rothman.  There was a relationship break in that level.

14  But Jayanthi was forthcoming and provided data and

15  documentation to the fullest extent to the Trustee and the

16  U.S. Attorney.

17      But Jacob Rothman hasn't responded to either me or -- I

18  don't know if he responded to them.  They can provide and

19  update.  But I think they can reach out.  I've listed all

20  those (inaudible) in writing in the letter to everybody

21  involved, and I've CCd the U.S. Attorney and the Trustee.  So

22  they know exactly who these people are, so they can also feel

23  free to reach out.  I've reached out to them.  There's nothing

24  further that I can do other than go to their office and shake

25  them down for documents, and I don't think that's going to be

**1**   a possibility, Your Honor.  I've done whatever I could at this
**2**   point.

**3**        THE COURT:  All right.  Thank you for that.  It's
**4**   good to have sort of (indiscern.).  One of the points of a
**5**   Status Conference is to have these conversations, and --
**6**   because letters going back and forth and e-mails going back
**7**   and forth at a certain point, everyone's cup runneth over.  So
**8**   it's good to have a chance to have a conversation.  And so
**9**   thank you for that.

**10**       All right.  So with that, we do have the Adversary
**11**   Proceeding here with a Motion To Dismiss and the Motion To
**12**   Amend.  And so let me just, in the interest of efficiency and
**13**   the interest of fairness, sort of share with you my thoughts.
**14**   I'm happy to hear from anybody on all this.  But sometimes, I
**15**   don't want to make it more mysterious than it need to be.  So
**16**   there's lots of discussion about incorporation of allegations
**17**   from one thing to another.  What I think the best course of
**18**   action in this circumstance here is to grant the Motion To
**19**   Amend so that when an Answer is filed, it allows the -- Mr.
**20**   Manchanda, as the Defendant, to respond to each allegation of
**21**   the Complaint as opposed to worrying about incorporation.

**22**       So, my inclination would be that that's a good way to go
**23**   in response to Mr. Manchanda's concerns he has about
**24**   incorporation of some other documents and how to appropriately
**25**   respond.  And I think that was the subject of -- one of the

1  two subjects of the motions back and forth.  And I didn't see

2  any opposition to the Motion To Amend.  And the second is --

3           MR. MANCHANDA:  Oh, yes, Your Honor.  There was an

4  opposition filed.  They've missed the Statute of Limitations

5  (inaudible).  There was an opposition that was filed, so I

6  would ask --

7           THE COURT:  Well, that --

8           MR. MANCHANDA:  -- the Court to review that.

9           THE COURT:  Well, there's no Statute of Limitations

10 in a Motion To Amend.  The standard, I think, is cited in the

11 papers, which is it's freely granted.  And particularly, if

12 you're complaining that incorporation is inappropriate, in

13 fact, is the kind of thing I would ask a party to do.  If

14 that's the concern, then I would ask them to amend the

15 Complaint and lay it all out in one document.  And so given

16 that the standard under the rule is that that motion, a Motion

17 To Amend early on, the standard is it should be -- it's a

18 liberal standard, and it's granted unless there's prejudice,

19 and there wouldn't be prejudice here given that, in fact, it's

20 a request that you're making saying that incorporation is

21 making it more difficult for you to respond.

22      So the other -- or the other main point, I think, is

23 about the notion of multiple Motions To Dismiss.  As I've said

24 before, the Motion To -- a Motion to -- what we don't do here

25 is rehash things that have already been argued.  Once I make a

 1   ruling, I make a ruling on the issue.  So I thought the

 2   incorporation was the one issue that in the Motion To Dismiss,

 3   I thought that that had -- was an appropriate point and needed

 4   to be addressed.  And I think amending the Complaint is the

 5   way to address it.

 6        And as for the other issues, I frankly didn't see

 7   anything else in the Motion To Dismiss that I thought was a

 8   Motion To Dismiss issue, that is, that the status of the

 9   allegations were such to not give the notice that's required

10   under notice pleadings under the applicable rules.  The idea

11   is to say, well, the allegations lead people -- understanding

12   what is that's complained of.  And I think I can easily

13   understand that using the Supreme Court's rulings and

14   standards, including <u>Twombly vs. Iqbal</u> that talks about what's

15   -- what a plausible allegation is.  I think I understand it.

16   It doesn't mean it's correct or it's not correct.  It's a

17   question about whether I understand the allegation, and I

18   think I -- it's sufficient that it states a claim.  And I'm

19   inclined to think that they do here, particularly.  And I have

20   the Motion To Amend, which will lay it all out in one

21   document.

22        So those are my initial thoughts.  I just thought, in the

23   interest of efficiency and to not -- you know, Court

24   appearances are not a mystery novel.  Nobody should be left

25   guessing.  And I always think for certain circumstances, I

1  think it's helpful for a Court to at least share what it's

2  thinking from the get-go so that people are -- know that and

3  then can proceed.  And so, with that, Mr. Manchanda, anything

4  else that you wanted to particular address in connection with

5  the Adversary Proceeding and these two motions?

6          MR. MANCHANDA:  Well, as I said before you stated

7  that there was no opposition, and that's inaccurate.  I would

8  ask the Court to look at that again.

9          THE COURT:  I'm sorry.  You are correct.

10          MR. MANCHANDA:  The second thing --

11          THE COURT:  I -- you are correct.

12          MR. MANCHANDA:  You asked me to respond, and I'd

13  like to respond.

14          THE COURT:  Yes.

15          MR. MANCHANDA:  So there are other issues involved

16  here in terms of, you know, the grace period is over.  You

17  know, sixty days (inaudible) --

18          THE COURT:  But, again --

19          MR. MANCHANDA:  -- (inaudible) --

20          THE COURT:  -- I think what I said is there is no

21  grace period.  There's a standard for a Motion For A Leave To

22  Amend, and --

23          MR. MANCHANDA:  Right.

24          THE COURT:  -- it's properly cited in the Motion To

25  Amend and it provides that leave is freely granted.  And so

1    there is no -- it's not a Statute of Limitations.  It relates

2    back if you want to -- this sort of is a technical matter.  So

3    it's -- the period is not expired.  It's subject to the

4    applicable rule, which is cited in the motion itself, which is

5    Rule 15(a), and it's cited on Argument Page 1, "Rule 15(a)

6    provides the Court should freely give leave to amend when

7    justice so requires."  That's what the rule says.  And it goes

8    on in the motion to correctly state the standard, which is a

9    liberal and permissive standard.  And that -- so that's the

10    standard I apply in deciding whether to amend the Complaint.

11          MR. MANCHANDA:  This has been going on since 2018

12    and, essentially, is one of the main reasons that we're

13    actually -- or one of the reasons that we're pursuing

14    bankruptcy because of the vexatious onslaught of litigation

15    from these people with no evidence.  I don't understand why

16    they're afforded every single opportunity to keep continuing

17    to torture and harass me and my family and make us spend money

18    after six, seven years and five federal state courts but that

19    haven't shown one shred of evidence when we've provided

20    documents and data that showed that we aren't the one

21    responsible for anything.  So I don't understand why this is

22    continuing to give (inaudible) extra rope --

23          THE COURT:  Well, on that --

24          MR. MANCHANDA:  -- (inaudible).  It's vexation on

25    its face --

1          THE COURT:  On that, Mr. Manchanda --

2          MR. MANCHANDA:  -- and (inaudible).

3          THE COURT:  On that, Mr. Manchanda, I would disagree

4    with you because I have -- all I have is what's in front of

5    me.  It's a 2023 Adversary proceeding that was filed here in

6    light of the bankruptcy that you filed.  And there's a clear

7    lengthy history of litigation in other courts.  Based on

8    looking at the Complaint here, I don't think it's frivolous.

9    I think it states a claim.  I think it states some serious

10   allegations and the merits of which we'll get to.  But looking

11   at the allegations, I think they're significant and serious.

12   And so I would disagree that there's nothing here.  And what's

13   been explained in the Complaint, I think, provides a basis for

14   going forward with a lawsuit.  So that's all I can tell you.

15         MR. MANCHANDA:  But there's also no show of

16   willfulness or maliciousness which is a requisite --

17         THE COURT:  Today is not --

18         MR. MANCHANDA:  -- requirement in the Bankruptcy

19   Court.

20         THE COURT:  -- the trial.  The Motion To Dismiss is

21   not a trial.  A Motion To Dismiss is about the allegations of

22   the Complaint and whether it is sufficient to state a claim.

23   And I'm finding that --

24         MR. MANCHANDA:  And that --

25         THE COURT:  -- they are.  And also --

1        MR. MANCHANDA:  -- there's no willfulness and
2    there's no maliciousness.

3        THE COURT:  -- Mr. Manchanda, this is your second
4    Motion To Dismiss, and you don't get a second bite at the
5    apple on the same issue.  I've already ruled --

6        MR. MANCHANDA:  (Inaudible).

7        THE COURT:  -- that they're sufficient to move
8    forward.  So, in that sense, the -- what is said by Mr.
9    Senderoff in the opposition is correct.  We're not doing
10   seriatim Motions To Dismiss where you keep -- it -- there's a
11   Motion To Dismiss.  If it's denied, it's denied.  The one
12   thing I am granting is that you said you thought it was
13   problematic to incorporate the state court pleading.  I'm
14   agreeing with you.  They filed a Motion -- an -- a Motion To
15   Amend The Complaint to do that.  That is, essentially,
16   something you have asked for to say that you didn't want to
17   have things done by incorporation.

18       So I agree that this -- it's appropriate to have it all
19   in one document.  And so I will grant the Motion To Amend so
20   that it is all one document.  But I find that your other
21   arguments in the Motion To Dismiss are without merit.  And
22   some of them, in fact, are duplicative of arguments you made
23   before about the merits of the allegations.  And so I am
24   denying them for two reasons.  One is I think the allegations
25   here are sufficient to state a claim, which I've already said

1  before in your prior Motion To Dismiss.  So I'm not going to

2  entertain another Motion To Dismiss on the same grounds, and

3  second is that some of the arguments you're raising are

4  arguments that go to -- when we get to the merits, which is --

5  whether that's Summary Judgment or whether that's a trial.

6  That's for another day.  It's not for today.  But today is

7  just about the sufficiency of the allegations.

8          MR. MANCHANDA:  So I'd just like to ask -- close

9  with one final question.  Where is the maliciousness or

10  wilfulness here?  It's never been shown or proved.

11          THE COURT:  I think for purposes of alleging a

12  claim, it is clearly stated by virtue of the things that are

13  alleged to have been posted about Mr. Senderoff by you online.

14          MR. MANCHANDA:  That's a false statement.  We never

15  posted anything, and they've never shown that or proved that

16  in six years.

17          THE COURT:  Okay.  For the last time, I am looking

18  at the allegations that are in the Complaint that are alleged

19  by Mr. Senderoff.  The allegations are that there were various

20  things that you posted on the internet about Mr. Senderoff

21  that are --

22          MR. MANCHANDA:  It could've been Mickey Mouse.  We

23  didn't do that, and we've shown it over and over again.

24  There's no --

25          THE COURT:  Okay.  Mr. Senderoff --

1          MR. MANCHANDA:  He has never shown that

2     (inaudible) --

3          THE COURT:  Mr. Manchanda, for the last time, I am

4     going by the allegations that are contained in the Complaint

5     and whether they are sufficient to state a claim.  You are

6     saying you disagree on the merits of those allegations.  That

7     is not what we're here on a Motion To Dismiss to decide.  That

8     is what a trial does or a Summary Judgment Motion does.  That

9     is not a Motion To Dismiss.  So you're asking me to look at

10    the allegations of the Complaint and say, "These allegations

11    are untrue.  That is not something that a Court does on a

12    Motion To Dismiss.

13         So I am looking at the motions -- the motion -- I'm

14    sorry, the Complaint and the allegations.  I find the

15    allegations to be sufficient for stating a claim.  The merits,

16    the truth, or untruth, the merits of any claims here are ones

17    that will be decided when we get to that part of the trial --

18    to that part of the case, which is a trial or Summary

19    Judgment.  And again, what I will have in front of me, we will

20    discuss at a future date exactly what it is that would be

21    decided here because, after all, what I think is understood

22    here is that the Complaint was filed alleging that these

23    allegations, based on the allegations in the Complaint, that

24    any claim that Mr. Senderoff has is non-dischargeable.

25         Sometimes, it can be a little difficult to figure out

1    what we're deciding in the Bankruptcy Court versus deciding

2    the underlying claims that are in state court.  That's not a

3    today problem.  The Complaint for purposes of non-

4    dischargeability states a claim.  And so I'm going to deny any

5    request to dismiss the Complaint on that basis.  And again,

6    I'm agreeing with you, Mr. Manchanda, about incorporation.  So

7    I have the Motion To Amend that addresses that issue and

8    presents all the allegations in one place.  And so that's what

9    we're going to do.  And so that's my ruling.

10         All right.  So what we need to do is set a schedule and

11   also, at a certain point, I will ask the parties to decide and

12   to inform me as to what it is that we are going to decide in

13   this case.  There are different ways that this -- non-

14   dischargability cases play out in bankruptcy.  There are times

15   when folks say, "Judge, we have the question of non-

16   dischargeability."  We look at the applicable non-

17   dischargeability statute, and we decide whether the conduct

18   here satisfies it or doesn't, and then if we need a trial to

19   determine what the actual conduct was or wasn't.  And then we

20   do that, and we discharge -- figure out non-dischargeability

21   or not under the applicable section of the Bankruptcy Code.

22         There are times when folks say, "Well, Judge, there's

23   also an underlying Complaint that's somewhere else, and we

24   think the issues and non-dischargeability and the merits of

25   that underlying Complaint are -- have sufficient overlap that

1    we think it should be decided in one forum.  And we want the

2    Bankruptcy Court to be that forum."  There's no right or wrong

3    answer.  What I do is I ask the parties what their views are,

4    and then we talk about it and see what's appropriate.  And if

5    there's a disagreement, then we can figure out how to resolve

6    that disagreement by virtue of people submitting papers at

7    issue.

8          But I've asked parties -- I don't want to ask parties and

9    put them on the spot today because we haven't previously had a

10   conversation about that.  So I just wanted to let you know

11   that's, I think, the next step because that will affect sort

12   of how the case proceeds going forward.  So my thought would

13   be to have the parties think about that and the next time we

14   get together to have a conversation about that and then also

15   to set a schedule for discovery about the allegations in the

16   Complaint and to figure out what needs to happen.

17         And so my thought will be to set a date sometime probably

18   in probably the end of September to get together and to talk

19   about those two issues, what is it that we're going to decide,

20   and what is it we're not going to decide in the Adversary

21   Proceeding here in Bankruptcy Court, and two, what is a

22   discovery schedule in this adversary case that makes sense.

23   And we'll take it from there.  And so, with that, let me ask

24   counsel for the Plaintiff if there's anything else that you

25   wanted to address in the context of the Adversary Proceeding

 1   today.

 2          MR. DRUCKMAN:  Yes, Your Honor.  I just have two

 3   practical questions about the Motion To Dismiss and the Motion

 4   To Amend.  Given what you've ruled today, do you think it

 5   would make sense to require a Motion For A Leave to file any

 6   further Motion To Dismiss or Motion For Judgment On The

 7   Pleadings --

 8          THE COURT:  Well, I am --

 9          MR. DRUCKMAN:  -- or to require --

10          THE COURT:  I am making a ruling that I have now

11   opined about the sufficiency in the allegations twice.  I'm

12   not going to consider -- you don't get multiple bites in the

13   apple.  And so it's law of the case, and so I don't need a

14   motion to -- for me to apply that principle which exists

15   without a motion.  So I wouldn't worry about that.

16          MR. DRUCKMAN:  Okay.  And then the second question

17   is just practically how we file the Amended Complaint.  Should

18   we submit it to chambers or --

19          THE COURT:  I would just --

20          MR. DRUCKMAN:  -- just --

21          THE COURT:  So this gets into someone's familiarity

22   and competency in terms of electronic docketing.  Happily -- I

23   am not the expert.  You would think maybe in my job that I

24   should be, but I'm not.  Happily, there are people in my

25   chambers who are much more conversive than I am.  So the idea

1   is the Amended Complaint should go on the Docket.  So what I
2   would do -- and maybe one way to do that is to submit an Order
3   granting the Motion To Amend and to attach the Amended
4   Complaint.

5       And the Order would say that the Amended Complaint is
6   hereby deemed -- the attached Amended Complaint is hereby
7   deemed filed.  And that's probably the cleanest way to do it.
8   There may be other ways to do it.  And if you find yourself
9   stuck, you can reach out to chambers, and Ms. Ebanks or one of
10  my law clerks are likely to be a little more conversive on the
11  details in terms of I know there are events you have to link
12  to various things to file documents.  But I think an Order on
13  the motion itself is one way that I think would work.

14          MR. DRUCKMAN:  Okay.  We'll submit that, Your Honor.
15          THE COURT:  All right.  Mr. Manchanda, any other
16  questions for you as to the Adversary Proceeding?

17          MR. MANCHANDA:  So I'm assuming the automatic stay
18  is still in effect?  It's been extended?

19          THE COURT:  Well, the automatic stay is not sort of
20  the -- it is -- the Adversary Proceeding is a request to make
21  the claims -- any claims of Mr. Senderoff that are addressed
22  in it non-dischargeable.  That hasn't been resolved on the
23  merits.  It's -- the only thing I have resolved is whether the
24  allegations in the Complaint are sufficient to go forward, and
25  I found that they are.  So right now, the automatic stay is

1    still --

2        MR. MANCHANDA:  Oh.  Your Honor, I'm sorry.  I

3    apologize.  I meant to go back to the main case in terms of --

4        THE COURT:  Oh.

5        MR. MANCHANDA:  -- any final questions I have.

6        THE COURT:  Yes.  The automatic stay still exists in

7    the case.  Yes.

8        MR. MANCHANDA:  Because we're having difficulty with

9    the lower courts, New York Civil.  And again, I'm not a

10   bankruptcy attorney, so I wanted to put that out there.  We

11   are having great difficulty making the lower court judges of

12   New York County understand that the automatic stay has been

13   extended.  And it's --

14       THE COURT:  Well, I don't think --

15       MR. MANCHANDA:  -- causing a lot of problems.

16       THE COURT:  -- it's been extended.  It exists.  So I

17   haven't extended it.  There's an automatic stay by virtue of

18   the filing of the case under the Bankruptcy Code.  Again,

19   that's -- I always talk about the Bankruptcy Code.  I'm not --

20   I don't make things up here.  I follow the rule book.  And the

21   rule book says that when you file, you get the protection of

22   the automatic stay as the Debtor.  And you have that

23   protection.

24       MR. MANCHANDA:  Is there any way we could point to

25   these judges?  It's happening -- I don't know if it's these

1   new judges coming in, a new crop, but it's happening probably

2   every couple of weeks.  And it's to the point where even

3   though we complained and file Complaints, they're sticking to

4   it.  They're saying, "Well, you know, you got a 30-day stay,

5   and it's over now."  And I keep -- you know, we keep telling

6   these judges that these cases cannot continue.  This is

7   actually, at the very minimum, it's harassment.  But it's

8   caused us a lot of problems, and I don't really -- you know,

9   in terms of default judgment --

10          THE COURT:  It's --

11          MR. MANCHANDA:  -- is there anything --

12          THE COURT:  Well, so it's hard for me in the sense

13   that I can't provide legal advice.  So I can just sort of

14   affirmatively state what the law is.  I don't know if Mr.

15   Zipes or Ms. Kumar have anything that they wanted to offer on

16   this front.  I also don't know what the context is for any of

17   this.  But perhaps Mr. Zipes has some sense of the context or

18   he doesn't.  You may comment.  You might not, Mr. Zipes.  I'll

19   leave that to you.

20          MR. MANCHANDA:  But (inaudible) disputes or

21   (inaudible) not really defending ourselves because we just

22   (inaudible) Court the Notice to File Bankruptcy.  And then

23   they run roughshod over us.  And these judges are making us

24   continue to come to Court.  They're not accepting the

25   bankruptcy filing and the automatic stay notifications --

1          THE COURT:  So --

2          MR. MANCHANDA:  -- and they're making (inaudible)

3    over and over.

4          THE COURT:  My understanding is people file with the

5    Court that sort of something that informs folks that they have

6    a bankruptcy pending.  But it does depend on the lawsuit, if

7    there are other folks who are parties who are not in

8    bankruptcy.  And so it's hard for me to answer that question

9    in a way other than to state affirmatively what the rule is.

10   Certainly, there's an automatic stay as to a bankruptcy

11   Debtor.

12         MR. MANCHANDA:  So anything that we could point to

13   that says that the stay is in effect because that's really

14   what they're challenging, that there is no stay in effect.

15   And we're saying that it is, and you're saying that it is.  Is

16   there anything without compounding the Court's work?  And I

17   don't want to burden the Court.  But is there anything we

18   could point to, a printout from the Court Docket or the

19   history, that it's already there?  I looked at it this morning

20   and tried to highlight, you know, certain things (inaudible)

21   creditor meetings.  But I don't know if that's going to be

22   sufficient to convince some of these New York County judges.

23   They're not the most sophisticated judges in the world.  So --

24         THE COURT:  All right.  Well, they're pretty

25   sophisticated folks, so just to be clear.  But hold on one

1   minute.

2        (Pause in proceedings)

3        THE COURT:  So, I mean, certainly, you can get a

4   certified copy of the Docket sheet from the clerk's office

5   here that lists all the Docket entries and the continuation of

6   the case.  And there are occasions when people file motions

7   for folks who are violating the automatic stay.  But again, I

8   don't know the context of everything.  The automatic stay, on

9   the one hand, sounds very simple.  On the other hand,

10  sometimes, it can be a little more complicated in its

11  application in a case, particularly, if there's more than a

12  number of different parties as to what can go forward and what

13  can't.

14       And so you are the Debtor in this individual Chapter 7.

15  So if there are other parties that are involved in the case

16  that aren't in bankruptcy, then it is a question of how that

17  case will proceed or won't as to those other parties.  So if

18  there's, say, for example, your law firm is a party or

19  something else, then things can get a little more complicated.

20  So I don't know if anybody has any other thoughts.

21       MR. ZIPES:  Your Honor, it's Greg Zipes with the

22  U.S. Trustee's Office.  And I'm not familiar with this

23  specific issue, but I will state generally that if a

24  counterparty or a plaintiff or someone is pursuing something

25  in state court, a remedy is possibly to bring it before this

1  Court rather than to file complaints with the bar or whatever

2  it might be.  And that might be a solution, although I don't

3  know exactly what the reference is here.

4       THE COURT:  Yes.  I would agree with that, Mr.

5  Zipes.  Thank you for that observation.  There are times if

6  there's a party who is proceeding in a state court case

7  against you as a bankruptcy Debtor that you can file a motion

8  here and serve it on them.  And the idea is that you get an

9  Order from the Court and, if appropriate, to say that that's

10  covered by the automatic stay.

11       MR. MANCHANDA:  We've done that so many times, Your

12  Honor.  That's kind of why we're --

13       THE COURT:  Well, I don't have any pending motions

14  in front of me, so -- of that type.  So I throw it out there

15  to the extent that that's something that, if appropriate, is

16  an option available to you.  And so I appreciate Mr. Zipes

17  mentioning that.  And if that's -- that is something you can

18  do as a bankruptcy Debtor if you encounter that kind of

19  problem.

20       MR. MANCHANDA:  Okay.

21       THE COURT:  All right.  All right.  With that, I

22  thought I would set another date in the case.  And so my

23  thought would be to make it the end of September, September

24  27th or 26th, whatever works better for folks.

25       MR. MANCHANDA:  Your --

1          THE COURT:  So we'll start with the 26th.  Does the

2     26th at 10:00 o'clock work?

3          MS. ZIPES:  Your Honor, can you give me one moment,

4     please?

5          THE COURT:  Sure.

6          MS. KUMAR:  Your Honor, the 27th would actually be

7     better for me.

8          THE COURT:  I'm sorry.  Say that again, Ms. Kumar.

9          MS. KUMAR:  The 27th would be better for me --

10          THE COURT:  All right.

11          MS. KUMAR:  -- if it works for everyone else.

12          THE COURT:  All right.  So the bidding is at the

13     27th at 10:00 o'clock if that works for folks?

14          MR. DRUCKMAN:  That works for us, Your Honor.

15          THE COURT:  Mr. Manchanda, does that --

16          MR. MANCHANDA:  That's fine --

17          THE COURT:  -- work --

18          MR. MANCHANDA:  -- with me.

19          THE COURT:  -- for you?

20          MR. MANCHANDA:  Yes, Your Honor.

21          MR. ZIPES:  And for me as well, Your Honor.

22          THE COURT:  All right.  So we'll make it the 27th at

23     10:00 o'clock.  And in the meantime, I'll wait for Mr.

24     Druckman to submit a Proposed Order on the Motion To Amend

25     that contains a copy of the Amended Complaint, which will be

1  the operative Complaint in the case.  And with that, I will

2  leave you all --

3        MR. MANCHANDA:  Your Honor, one more thing.

4  (Inaudible) submit another letter asking for retro because my

5  wife, like I said, is going through a lot of battery of MRI,

6  CAT scans.  It's surgery.  So I will not be able to appear

7  physically.  I will have to be with her every minute.  She

8  can't drive.  She can't do anything really at this point.

9        THE COURT:  So --

10        MR. MANCHANDA:  So can we extend --

11        THE COURT:  -- I --

12        MR. MANCHANDA:  -- that (inaudible)?

13        THE COURT:  So I think today, we were able to

14  accomplish what we needed to accomplish virtually.  And so I'm

15  okay with having the 27th virtually.  So let's do this.

16        MR. MANCHANDA:  Thank you.

17        THE COURT:  At the end of every hearing, we'll sort

18  of revisit that issue.  I mention it because there are times

19  when it is helpful to be in Court, but we were able to get

20  things done today effectively.  And so I'm fine with the 27th

21  being virtual, and Ms. Ebanks will continue to send you all

22  the links.  It sounds like it worked without any issues today,

23  and that's fine.  Obviously, I appreciate and sympathize with

24  the health issues that you mentioned, Mr. Manchanda, and wish

25  your family all the best.  And we'll just take it like we do

1    in cases generally.  We'll take it as it comes.  And so please

2    don't hesitate to bring it up at hearings, and we'll continue

3    to sort of assess as we go.

4         MR. MANCHANDA:  Can we also apply that to any

5    examination under oath as well?  I know that they wanted me to

6    come down there, but --

7         THE COURT:  Well, I --

8         MR. MANCHANDA:  -- again (inaudible).

9         THE COURT:  That's a little different.  And so that

10   doesn't happen in front of me.  And so I'd encourage the

11   parties to talk about that.  And so there are times when it

12   does make sense to do things in person because what happens is

13   you will be handing somebody a document to look at.  And doing

14   things virtually will greatly extend the amount of time and

15   difficulty of doing that.  So there are times when there's

16   good reasons to do that in person.  And the idea is to pick a

17   time when that can be accomplished.  And so my -- so it's the

18   same reason I don't hold trials remotely except when there's -

19   - it's just everything takes much longer.  The record is much

20   less clear, so it's really not to anybody's benefit.  So my

21   thought would be that the examination should probably take

22   place in person, but I'll let you all chat about it.

23        MR. MANCHANDA:  Will they consent on the record?

24        THE COURT:  What's that?

25        MR. MANCHANDA:  Mr. Zipes -- would Mr. Zipes or Ms.

1    Kumar consent to doing that on the record today?

2            THE COURT:  Well, I'm going to let you all have that

3    conversation.  But I'm just saying I can understand that there

4    are reasons to do examinations in person, depositions,

5    examinations, call them what you will.  And so I'll leave

6    parties to have that conversation.  Again, it doesn't happen

7    in front of me.  So --

8            MR. ZIPES:  Your Honor, we heard Mr. Manchanda.  And

9    so we'll consider that.  We heard what he said.  Your Honor, I

10   had one other point, and I know this has been a long hearing.

11   We do have an extension of time to object to discharge into

12   early September, I believe.  And the Court had wanted us to

13   follow a certain procedure, get the documents first, and then

14   have the examination.  And so I'm just throwing it out there

15   that we will need an extension.  We would ask Mr. Manchanda to

16   consent.  He can think about it if he wants, and I suppose we

17   would file a Motion To Extend Time to the extent that he

18   doesn't consent.  But --

19           THE COURT:  Well --

20           MR. ZIPES:  -- this is --

21           THE COURT:  Yes, I understand.  The position is that

22   you can't make a determination on your position about

23   dischargeability until you get all the information, and that

24   includes the examination.  And again, this is consistent.  I

25   think this morning, I signed three extensions of time on the

1  dischargeability deadline in three other cases for exactly the

2  same kinds of circumstances.  And so, Mr. Manchanda, would you

3  consent to that kind of a request?

4      MR. MANCHANDA:  I see no reason not to agree to

5  that.  So --

6      THE COURT:  All right.  I appreciate your

7  cooperation on that.  It is the standard --

8      MR. ZIPES:  I do as well.

9      THE COURT:  -- way these things work.  And again, I

10  just wanted to give a little context because I know bankruptcy

11  is not your area of practice.  So it's probably the most

12  common stipulation I see in cases is exactly on this issue.

13      MR. MANCHANDA:  Although it would certainly help if

14  we can have the virtual examination under oath.  That would

15  certainly go a long way if they could also consent to that on

16  the record.  I mean, I consented to something.  If they could

17  do that as well, that would be wonderful --

18      THE COURT:  All right.

19      MR. MANCHANDA:  -- because I'm really having --

20      THE COURT:  Well --

21      MR. MANCHANDA:  -- a difficult time.

22      THE COURT:  -- I will tell you that I was -- I would

23  grant the request to extend the time for non-dischargeability

24  even over an objection because I think it's appropriate

25  because they haven't finished the process.  As to an

1   examination, again, I think there are pluses and minuses to

2   that.  So what I heard Mr. Zipes say is that they'll -- they

3   have your request, and they're going to consider it, and

4   they'll get back to you about it.  And Ms. Kumar, obviously,

5   also will weigh in on that.  And I'll leave you all to chat

6   about it.

7       I think everybody is aware and sympathizes with the

8   health concerns in your family, and folks will take a look at

9   it and try to figure that out.  So I'll leave you all to that.

10  So with that said, I will see you all on the 27th.  That will

11  be virtual by Zoom.  That's because there will be no

12  examination involved.  That's just a Status Conference, and

13  we'll see where we are.  And in the meantime, my best to you,

14  Mr. Manchanda, for the health of you and your family and to

15  everyone else for a good rest of the summer.

16      (Court adjourned)

17

18                        CERTIFICATION
19  I, Lewis Parham, certify that the foregoing is a correct
20  transcript from the electronic sound recording of the
21  proceedings in the above-entitled matter.
22
23
24  _Lewis Parham_                          8/18/23
25
26  _____        _____
27  Signature of Transcriber                Date