# **EXHIBIT C**

# Supreme Court of the State of New York
## Appellate Division, First Judicial Department

Present – Hon.    Dianne T. Renwick,                  Presiding Justice,
                  Peter H. Moulton
                  Lizbeth González
                  Tanya R. Kennedy
                  Saliann Scarpulla,                  Justices.

———————————————

**Motion Nos.    2024-03792**
                 **2024-03805**
**Case No.        2023-05258**

———————————————

In the Matter of
RAHUL DEV MANCHANDA
an attorney and counselor-at-law:

ATTORNEY GRIEVANCE COMMITTEE FOR THE
FIRST JUDICIAL DEPARTMENT,
                                  Petitioner,

RAHUL DEV MANCHANDA
(OCA Atty. Reg. No. 4025714),
                                  Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Rahul Dev Manchanda, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department March 13, 2002.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Remi E. Shea, of counsel), for petitioner.

Respondent pro se.

Motion Nos. 2024-03792, 2024-03805 - August 26, 2024

### In the Matter of Rahul Dev Manchanda, An Attorney

PER CURIAM

Respondent Rahul Dev Manchanda was admitted to the practice of law in the State of New York by the Second Judicial Department on March 13, 2002. At all times relevant to this proceeding, his registered business address on file with the Office of Court Administration was within the First Judicial Department.

**Nature of Proceedings**

The disciplinary charges stem from the Attorney Grievance Committee's (AGC) sua sponte investigation of respondent after he filed three complaints with the AGC and the Human Rights Council in 2021, each containing racist and anti-Semitic language. In response to the AGC's email asking that he respond to the allegations of misconduct, respondent replied again using racist and anti-Semitic rhetoric. The AGC then undertook a retrospective review of respondent's previous court filings and prior complaints filed with it, which revealed:

> "[R]espondent's long-standing history of verbally attacking and disparaging members of the judiciary, the bar, and the public in the context of litigation, in complaints filed with the [AGC] and other agencies . . . and in reviews/complaints filed anonymously [online] . . . . Respondent has also disclosed confidential information about clients in response to negative Google reviews and repeatedly filed non-meritorious frivolous, vexatious, or clearly meritless appeals, motions, or other papers."

Pursuant to its investigations, the AGC served respondent with a petition that included the following charges. In the first charge, the AGC alleged that respondent violated Rules of Professional Conduct (22 NYCRR 1200.0) (RPC) rule 8.4 (d) (a lawyer shall not "engage in conduct that is prejudicial to the administration of justice") by

repeatedly making unfounded allegations of corruption by members of the judiciary.
This charge arose out of legal documents that respondent prepared and filed in state and
federal courts attacking members of the judiciary, using "foul and vile language" to
challenge their integrity, specifically:

- a federal civil rights action (later dismissed as frivolous) that respondent filed in the District of Connecticut against, among others, New York, and Connecticut judges (stemming from a custody dispute in which respondent was engaged with his ex-wife), in which he accused the defendants of engaging in criminal and sexually abusive behavior;

- a federal civil rights action that respondent filed in the Southern District of New York against federal immigration officials, during which respondent leveled racist and anti-Semitic attacks against the presiding judge and others); an action that respondent filed in Supreme Court, New York County, in which he launched ad hominem attacks against the New York City Human Resources Administration;

- an action filed *against* respondent in Supreme Court, New York County (stemming from a harassment campaign that respondent allegedly waged), in which the plaintiff was awarded costs on a discovery motion against respondent; respondent made anti-Semitic attacks in his motion in this Court for a stay, then tried to remove the action to the Southern District of New York, where (and in the U.S. Court of Appeals for the Second Circuit on appeal) he again leveled anti-Semitic attacks; and,

- a federal action that respondent filed in the Southern District of New York against a federal bankruptcy judge (also in the Southern District of New York), in which respondent again leveled anti-Semitic attacks.

In the second charge, the AGC alleged that respondent violated RPC rule 8.4 (h)
(a lawyer shall not "engage in any other conduct that adversely reflects on the lawyer's
fitness as a lawyer") by repeatedly making racist, anti-Semitic, homophobic, and
misogynistic statements about members of the judiciary and the bar in complaints to the
AGC and other agencies. This charge arose out of "offensive language" that respondent
used not only to publicly criticize members of the judiciary within the context of
litigation but also in complaints filed with the AGC and other agencies, specifically:

- a general complaint that respondent filed with the Commission on Judicial Conduct (CJC) in which he made racist attacks;

- complaints that respondent filed with the AGC against Attorneys A, B, and C, in which he made anti-Semitic attacks;

- a general complaint that respondent filed with the AGC in which he made anti-Semitic attacks;

- a complaint that respondent filed with the CJC against a Justice of this Court, in which he made anti-Semitic and racist attacks;

- a complaint that respondent filed with the Office of the United Nations High Commissioner for Human Rights, in which he made anti-Semitic and racist attacks; and,

- a complaint that respondent filed with the Administrative Office of the U.S. Courts, in which he made anti-Semitic attacks.

The third and fourth charges are related; the AGC alleged that respondent violated RPC rule 1.6(a) ("A lawyer shall not knowingly reveal confidential information . . . or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person . . ."), by knowingly revealing confidential information about his clients in response to negative Google reviews, and RPC rule 8.4 (h) (a lawyer shall not "engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer") by using offensive language in those responses. These charges arose out of:

- homophobic attacks, based on privileged information, launched by respondent against client A.S.;

- racist attacks, based on privileged information, launched by respondent against client E.W.;

- attacks, based on privileged information, launched by respondent against client N.A.; and

- attacks, based on privileged information, launched by respondent against client M.H.A.

In the fifth charge, the AGC alleged that respondent violated RPC rule 8.4 (h) (a lawyer shall not "engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer") by making racist, anti-Semitic, homophobic, and misogynistic statements while holding himself out as a well-trained and extremely experienced lawyer in 20 years in Manhattan, New York City.

The sixth charge is not summarized here because the Referee did not recommend sustaining the charge and the AGC does not seek to disaffirm that recommendation. Accordingly, the allegations and evidence as they pertain to this charge are no longer relevant.

Finally, the seventh and eight charges are related; the AGC alleged that respondent violated RPC rule 3.1 (a) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous"), by repeatedly filing non-meritorious, frivolous, vexatious, or clearly meritless appeals, motions, or other papers, and RPC rule 8.4 (d) (a lawyer shall not "engage in conduct that is prejudicial to the administration of justice") through the same conduct. These charges arose out of respondent being "repeatedly warned against filing non-meritorious, frivolous, duplicative, vexatious, meritless appeals, motions, or other papers." Respondent has been so warned in numerous courts by federal and state judges in the Southern District of New York, Second Circuit, and the First Department.

**Relevant Prior Procedural History**

It is worth reviewing the long and tortured procedural history of these disciplinary proceedings because it reveals a concerted effort by respondent to thwart and delay the proceedings. After the AGC filed its petition of charges in this case, in October 2023, respondent answered and moved to dismiss the petition. Soon thereafter,

respondent commenced a federal action in the Southern District of New York against an

AGC staff attorney and the AGC chief counsel, among others. On November 3, 2023,

respondent amended his complaint to name the NYPD and the FBI NYC Field Office as

defendants.

On November 13, 2023, respondent's law firm filed for chapter 7 bankruptcy.

According to respondent, the bankruptcy proceeding resulted in an automatic stay of

the disciplinary proceedings under 11 USC § 362. By letter dated November 15, 2023,

the AGC disputed respondent's representation and asserted that no bankruptcy stay

was in place. Respondent replied by letter also dated November 15, 2023, contesting

the AGC's representations.

On November 21, 2023, respondent separately moved (1) to hold a AGC staff

attorney in contempt and, in effect, to sanction the attorney for frivolous conduct. In an

order entered December 22, 2023, the U.S. District Court for the Southern District of

New York (John P. Cronan, J.) sua sponte (1) dismissed respondent's claims that sought

to initiate a criminal prosecution of defendants or others; (2) dismissed respondent's

"claims against the United States, including the FBI, on sovereign immunity grounds,

other than any claims brought under the Federal Tort Claims Act" (FTCA); (3) ordered

respondent to show cause that he had complied with the FTCA's administrative

exhaustion requirements, and (4) gave respondent notice of its intent to dismiss various

of his claims, and to deny him leave to replead any dismissed claims for futility reasons

(*see Manchanda v Reardon*, 2023 WL 8879226, 2023 US Dist LEXIS 229806 [SD NY,

Dec. 22, 2023]). In an order entered January 2, 2024, the same court gave respondent

further notice of its intent to dismiss his FTCA claims (*see Manchanda v Reardon*, 2024

WL 259776, 2024 US Dist LEXIS 14687 [SD NY, Jan. 2, 2024]). In an order entered

February 1, 2024, the same court, among other things, dismissed respondent's federal claims, declined to exercise supplemental jurisdiction over his state law claims, and denied respondent leave to amend his complaint on futility grounds (*see Manchanda v Reardon*, 2024 WL 382116, 2024 US Dist LEXIS 18025 [SD NY, Feb. 1, 2024]). Respondent appealed the dismissal of his case to the Second Circuit.

On February 23, 2024, respondent tried to file counterclaims against several AGC attorneys and the AGC, for malicious prosecution, abuse of process, computer trespass, conversion of computer data, violation of the federal wiretapping act, and tortious interference with new contracts/business, seeking $20 million in compensatory and punitive damages on each count.

By email and letter dated February 24, 2024, respondent applied to hold all proceedings before the Referee in this matter at this Court's courthouse. In an unpublished order entered March 1, 2024, this Court referred the application to the Referee. In a ruling dated the same date, the Referee denied the application.

On March 6, 2024, respondent moved to disqualify the Referee, alleging, among other things, bias on the basis of the Referee's religion and sexual orientation, using the same kind of anti-Semitic, homophobic, and misogynistic language that the AGC had accused him of using in its petition of charges.

On March 21, 2024, respondent moved for a stay of this proceeding pending the determination of his appeal to the Second Circuit in his federal case and applied for an interim stay pending the determination of his motion. On March 27, 2024, this Court denied the application. Similarly, in an unpublished order entered April 5, 2024, this Court denied respondent's motion to disqualify the Referee, and restrained and

enjoined him from filing any additional motions or applications in this Court with respect to this disciplinary matter without prior leave of this Court.

Undeterred, on April 18, 2024, respondent attempted to commence a CPLR article 78 proceeding in Supreme Court, New York County, against the Referee and others. On April 30, 2024, the court (Judy H. Kim, J.) declined to sign respondent's proposed order to show cause. On May 8, 2024, respondent moved for a default judgment against the respondents in the proceeding.

In an order entered August 14, 2024, the U.S. Court of Appeals for the Second Circuit dismissed respondent's appeal from the dismissal of his federal case against the AGC, denied his motions for a stay and leave to file a surreply, and ordered him to show cause why a leave-to-file and monetary sanction should not be imposed (*Manchanda v Reardon*, 2024 WL 4196867,  2024 US APP LEXIS 23655 [2d Cir, Aug. 14, 2024]), cert denied ___ US ___ 2024 WL 4743697 [2024].[1] The Court held that respondent's appeal "include[d] numerous anti-Semitic and racist statements, directly against [its prior] warnings" (2024 WL 4196867, *1, ,  2024 US APP LEXIS 23655, *3).

Referee's Liability Findings and Sanctions Recommendations

Meanwhile, in an unpublished order entered February 7, 2024, this Court granted AGC's petition of charges to the extent of appointing a Referee, to hear and report on the charges, making such findings of fact and conclusions of law, and recommending such disciplinary sanction, if any, as may be appropriate.[2] A hearing on

---

[1] Respondent responded by letter dated August 24, 2024. On or about September 11, 2024, respondent petitioned the Supreme Court of the United States for a writ of certiorari to the Second Circuit to review its August 14, 2024, order.

[2] By the same order this Court denied respondent's motion to dismiss, his motion to hold an AGC attorney in contempt and to sanction the attorney for frivolous conduct, and his supplemental motion to dismiss.

liability was conducted on April 11, 2024, and May 10, 2024. During the hearing, the

AGC called one witness, presented documentary evidence, and cross-examined

respondent regarding such documentary evidence. Respondent did not testify on his

own behalf at the hearing, nor presented any witness or documentary evidence. The

Referee issued a report finding that the AGC had proven all the charges outlined above

and that the appropriate sanction should be disbarment. The specific findings are

summarized as follows:

First, the Referee found incredible respondent's claim, espoused during cross

examination by the AGC, that he either did not author or at least did not remember

authoring the questionable language included in the court documents submitted to

court on his behalf and in the books he purportedly authored. At the outset of the

liability phase of the hearing, the AGC presented respondent with several of the

documents annexed to its petition of charges, which the Referee received in evidence, to

ask him questions about them. Throughout these lines of questioning, respondent

claimed either not to have authored the documents, that he did not remember authoring

or filing the documents, that he did not fully read them, or that someone else — his staff,

editors of his books, or his ethics attorneys — wrote or filed them on his behalf, despite

the documents having his email address, signature, or firm information on them. The

Referee found respondent's answers to these questions to be evasive, rambling,

incoherent, combative, implausible, and, ultimately, incredible, and concluded that he

had, in fact, authored and filed the documents referenced by the AGC.

Second, the Referee rejected respondent's claim that he was being targeted for

political reasons. During testimony, which the Referee characterized as rambling and

often incoherent, respondent testified about being an informant for the FBI or the CIA

and made attempts to tie some of his current problems to a ruling that a federal judge made years ago relating to Iran's connection to the September 11 attack. However, as the Referee observed, "respondent contended that he could not discuss the details because it was CIA related, but argued that he was being targeted for political reasons." The Referee found that this testimony made absolutely no sense, and respondent offered not a shred of evidence that anyone in the federal or state judiciary was ruling against him because of his political beliefs or his alleged government connections. Even if respondent, at one point, had some government connection, the Referee wrote, it would not allow him to make unfounded, racist, and offensive remarks about multiple judges, attorneys, and court personnel.

Third, the Referee found credible the testimony of an attorney formerly employed by respondent and whom the AGC presented to corroborate the claim that the offensive and unsupported allegations included in the documents submitted were either created or approved by respondent. The former employee testified that "he did not file anything without respondent's approval, and he did not have access to [r]espondent's computer password. He did not use [r]espondent's electronic signature/stamp to sign things for [r]espondent." The Referee found it incredible "that [r]espondent would let [the former employee,] whom [respondent] contended was a problematic employee, file things without his permission and without reviewing them." Ultimately, the Referee rejected "respondent's claim that [his former employee's] testimony was retaliation against respondent or an attempt to cover up his own misconduct, particularly where the AGC had dismissed respondent's complaint against" the former employee, who had found employment elsewhere.

Fourth, the Referee rejected respondent's denial of the objectionable statements he made while holding himself out as a well-trained and extremely experienced lawyer in 20 years in Manhattan, New York City.  The Referee found respondent's explanations to  be ludicrous and nonsensical.

Fifth, the Referee also rejected respondent's attempt to minimize his objectionable response to the negative internet reviews of respondent. As the Referee noted, when he was asked about client A.S., respondent initially said that he did not recall who this individual was because he talks to a lot of people. After further questioning, however, respondent admitted that he had filed a complaint against A.S. because he thought A.S. was trying to engage in immigration fraud by entering into a "fake" same-sex marriage. The Referee noted that this assertion was impossible to reconcile with respondent's firm sending a retainer to the client. Respondent explained that he thought people were being sent to his office to "entrap" him into filing false asylum claims, which again would be inconsistent with sending A.S. a retainer and asking him to make a legal fee payment.

Finally, the Referee rejected respondent's attempt to shift responsibility to someone else regarding the offensive language and privileged information contained in his written answer to A.S. review. As the Referee noted, respondent claimed that he had search optimization people who he paid to fight online reviews. The Referee found it unbelievable that a hired firm would post such an offensive response to improve respondent's online presence. Furthermore, the Referee found, respondent failed to explain why such a firm would provide details of the representation — something only respondent or his employees would have known. The Referee also noted that respondent gave inconsistent testimony, stating that he consulted ethics attorneys about

what he could write in response, but then backtracked, saying he that would not write such things. In the Referee's view, respondent's "shifting and often incomprehensible testimony" did not convince the Referee that someone else wrote the response; instead, the Referee believed that he wrote the posting as owner of the firm. The Referee also rejected respondent's inconsistent explanations that ethics attorneys had reviewed the response to E.W.'s review but that he did not recall writing the response. Respondent's response to M.H.A.'s review, the Referee wrote, followed the same pattern.

As to the appropriate sanction, the Referee did not find any mitigating circumstance. As to aggravation, the Referee noted that respondent was previously the subject of three separate admonitions: first for using discourteous language in an email to a client; then for threatening to bring charges against a client after the client disputed a fee; and, finally, for pleading guilty to menacing in the third degree (Penal Law § 120.15), a class B misdemeanor. The Referee also considered, in aggravation, the filing injunction that this Court issued against respondent in connection with this disciplinary matter, and "[r]espondent's wasted and frivolous efforts to repeatedly try and get the disciplinary matter moved to federal court . . . ." Finally, in aggravation, the Referee noted respondent's contradictory, confusing, and incredible testimony throughout the hearing, his claims of ignorance and persistent efforts to shift blame to others, his unqualified lack of remorse or compassion. In ultimately agreeing with the AGC that disbarment was the appropriate sanction, the Referee, a retired judge, commented that in her many years as a judge, she had never seen an attorney who made the type of outrageous comments that were proven here, and that the record of frivolous filings was overwhelming.

**Motion To Disaffirm and Cross-Motion To Confirm**

Respondent moves to disaffirm the Referee's report and recommendation. Immediately in his motion, respondent makes the same kind of racist and anti-Semitic claims that he has made throughout this proceeding, argues that he is being unfairly persecuted by the AGC, which is itself being controlled by oppressive minority groups, and insists that such persecution has followed him since his divorce. He makes anti-Semitic, homophobic, misogynistic, and racist attacks against the Referee and the AGC staff attorneys as well. Respondent reiterates that the AGC has done nothing to discipline the other lawyers who worked for him and, he claims, committed misconduct; complains about the way that the AGC has litigated this case; and stresses that there is nothing unethical about pointing out biased, discriminatory, unethical, and illegal conduct. Respondent contends that the AGC did not prove any of the charges against him, and that its proffered evidence proves the decades-long crusade being waged against him. Merely dismissing the charges against him is not enough; respondent demands that this Court fashion a better remedy for the AGC's hysterical campaign against him, including costs, attorney's fees, and sanctions, and a filing injunction against the AGC. In support of his motion, respondent submits, among other things, a redlined copy of the Referee's report, with notes in the margins responding to specific findings.

The AGC cross-moves to confirm the Referee's report and recommendation. In opposition to respondent's motion, the AGC describes it as "nothing more than a continued showcase of respondent's spiteful attacks that should be considered in aggravation. They are inflammatory outbursts, unworthy of any serious consideration."

**Discussion**

On a motion to affirm a Referee's report and recommendation, this Court must review the Referee's report and determine whether the Referee properly found, by a fair preponderance of the evidence, each essential element of the charges (*Matter of Zappin*, 160 AD3d 1, 7 [1st Dept 2018], appeal dismissed 32 NY3d 946 [2018], lv denied 32 NY3d 915 [2019] quoting Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.8 [b] [1]). The Referee's credibility determinations are afforded great weight, since the Referee was in a superior position to observe the witnesses and their demeanor, and to hear their testimony (*see e.g. Matter of Antzoulatos*, 210 AD3d 31, 37 [2d Dept 2022]). Upon a finding that an attorney has committed professional misconduct, "[t]his Court may impose discipline or take other action that is authorized by law and, in the discretion of the Court, is appropriate to protect the public, maintain the honor and integrity of the profession, or deter others from committing similar misconduct" (22 NYCRR 1240.8 [b] [2]).

Initially, we find that the Referee's liability findings sustaining the charges are fully supported by the record. As to charges one and two, the AGC established, by a fair preponderance of the evidence, that respondent has, for years, filed both documents containing unacceptably bigoted language in state and federal courts as well as complaints with a panoply of state, federal, and international agencies, thereby establishing respondent's violation of RPC rules 8.4 (d) and (h), namely, that he engaged in conduct that, respectively, was "prejudicial to the administration of justice" and "adversely reflect[ed] on . . . [his] fitness as a lawyer." Further, the Referee's finding that respondent testified incredibly when he denied having authored the relevant documents is well supported by the record.

As to charges three and four, the AGC also established, by a fair preponderance of the evidence, that respondent both used intolerably vile and foul language and divulged privileged information when responding to clients' complaints about him online, thereby establishing his violation of RPC rule 1.6, forbidding lawyers from "knowingly reveal[ing] confidential information . . . or us[ing] such information to the disadvantage of a client or for the advantage of the lawyer," as well as RPC rule 8.4(h). The Referee's rejection, as unbelievable, of respondent's claims not to have authored those responses or to have obtained approval for the language that he used in those responses is amply supported by the record.

As to charge five, the AGC also established, by a fair preponderance of the evidence, that respondent used racist, anti-Semitic, homophobic, and misogynistic statements while holding himself out as a well-trained and extremely experienced lawyer in 20 years in Manhattan, New York City, thereby violating RPC rule 8.4(h). Again, the Referee properly rejected respondent's disingenuous, nonsensical claims that he did not know the statements to be objectionable until the liability hearing.

Finally, as to charges seven and eight, the AGC also established, by a fair preponderance of the evidence, that respondent repeatedly made meritless, frivolous, and vexatious arguments well beyond the point at which he should have known better, thereby establishing his violation of RPC rule 3.1 (a) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous") and rule 8.4 (d). Respondent's targets for such filings have grown to include this very disciplinary proceeding and collateral attacks that he has launched on it in state and federal courts. He has shown no intention of stopping

or slowing down such filings, even in the face of disbarment by this Court or sanctions in the Second Circuit.

As to the sanction, the Referee's disbarment recommendation is amply supported by the record. Respondent's misconduct is unbecoming of an attorney and counselor-at-law in this State. There does not appear to be any reported case in which the attorney's misconduct similarly rose to the virulence that respondent has demonstrated well before and all throughout this disciplinary proceeding. Words fail to capture the severity and extent of his bigotry. The conduct here is simply shocking and outrageous.

Lawyers are expected, among other things, to "be courteous and civil in all professional dealings with other persons" (NY Rules of Prof Conduct, Standards of Civility [22 NYCRR part 1200, Appendix A] § 1 [Lawyers' Duties To Other Lawyers, Litigants, Witnesses And Certain Others] [I]); to "act in a civil manner regardless of the ill feelings that [they or] their clients may have toward others" (*id*. at [I][A]); to "disagree without being disagreeable" and without "antagonistic or acrimonious behavior," and to "avoid vulgar language, disparaging personal remarks [,] or acrimony toward other counsel, parties or witnesses" (*id*. at [I][B]); not to "engage in conduct intended primarily to harass or humiliate witnesses" (*id*. at [I][C]); not to "use any aspect of the litigation process . . . as a means of harassment (*id*. at [VI]); and, to "conduct themselves with dignity and refrain from engaging in acts of rudeness and disrespect" (*id*. at [VII]). Respondent's misconduct evinces not only flagrant disregard for these standards of civility, but contempt for and rejection of them.

Accordingly, the AGC's cross-motion to confirm the Referee's report and recommendation should be granted, and respondent disbarred from the practice of law and his name stricken from the roll of attorneys and counselors-at-law in the State of

New York until further order of this Court. Respondent's motion to disaffirm the

Referee's report and recommendation should denied.

All concur.

Wherefore, it is Ordered that the motion by respondent Rahul Dev Manchanda to

disaffirm the Referee's report and recommendation is denied, and

It is further Ordered that the cross-motion by the Attorney Grievance Committee

for the First Judicial Department for an order pursuant to 22 NYCRR 1240.8(b) and

603.8-a(t) disbarring respondent, Rahul Dev Manchanda, is granted, and respondent is

disbarred, and his name stricken from the roll of attorney in the State of New York,

effective the date hereof and until further order of this Court, and

It is further Ordered that, pursuant to Judiciary Law § 90, respondent Rahul Dev

Manchanda, is commanded to desist and refrain from (1) the practice of law in any

form, either as principal or agent, clerk or employee of another, (2) appearing as an

attorney or counselor-at-law before any court, Judge, Justice, board, commission or

other public authority, (3) giving to another an opinion as to the law or its application or

any advice in relation thereto, and (4) holding himself out in any way as an attorney and

counselor-at-law; and

It is further Ordered that respondent Rahul Dev Manchanda, shall comply with

the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR

1240.15), which are made part hereof; and

It is further Ordered that if respondent, Rahul Dev Manchanda, has been issued a

secure pass by the Office of Court Administration, it shall be returned forthwith.

Entered:  November 21, 2024

Susanna Molina Rojas
Clerk of the Court