Manchanda Law Office And Associates PLLC
30 Wall Street, 8th Floor, Suite 8207
New York, New York 10005
Tel: (212) 968-8600
Fax: (212) 968-8601
Email: info@manchanda-law.com
Web: www.manchanda-law.com

FILED
U.S. BANKRUPTCY COURT
2024 JAN -8 P 12: 19
S.D. OF N.Y.

January 6, 2024

**VIA HAND DELIVERY**

Judge Sean Lane
Southern District of New York - Bankruptcy Court
300 Quarropas Street
White Plains, New York 10601

**Case Index No 23-22095**
**Debtor Letter In Opposition to AUSA Walsh Kumar Illegal *Sur-Reply***

Dear Hon Judge Lane:

In response to Assistant U.S. Attorney Dana Walsh Kumar's improper, illegal, and unethical *sur-reply* dated January 5, 2023, we note the following:

1. "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor, and liberally construed in favor of a debtor, so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997).

2. Per Rule 4007, "except as otherwise provided, a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)...the court shall give all creditors no less than 30 days' notice of the time, and on motion of a party in interest, after hearing on notice, the court **may, for cause** extend the time fixed."

3. AUSA Dana Walsh Kumar now, for the THIRD TIME, has not shown cause, and it's an abuse of the court's discretion to continue to allow this.

4. After 1 whole year, 3 extensions later, AUSA Dana Walsh Kumar wants "additional time to continue to investigate the financial affairs of the Debtor so it can determine whether it has grounds to object?"

5. Debtor no longer has any money, and is running on fumes here.

6. To allow this THIRD EXTENSION WITHOUT CAUSE is an abuse of the court's discretion as per Rule 4007 and 11 U.S.C. § 523c.

7. As we have indicated to this Court before regarding the last 2004 deposition, AUSA Dana Walsh Kumar makes another false statement because both the deposition and discovery request problems (last being her own defective subpoena) were self-created by AUSA Dana Walsh Kumar and AUST Gregory Zipes in order to waste and buy more time, trying to gaslight and blame it on Debtor, in direct and flagrant violation of Rule 11(b).

8. For the third time, what exactly are they asking Debtor to further "produce?"

9. There has been no answer to this question since July 2023, when Debtor turned over all of his financial documents including but not limited to 2019 through 2022 tax returns, bank statements, credit card statements, loan documents, mortgage documents, lease agreements, current profit and loss statements and bank statements (even for 2023), and any other financial documents in Debtor's possession or control.

10. Regarding AUSA Dana Walsh Kumar's own self-sabotaged and defective subpoena, that she has been holding on to and wasting months more of Debtor and this Court's time, the record shows that AUSA Dana Walsh Kumar wasted 3 months asking Debtor for his "signature" on her own subpoenas, but then only today e-mailed Debtor that his signature *was never required*, said e-mail which she cc'ed to the court.

11. These are *prima facie* examples of delay tactics and scienter, prohibited by Rule 11(b).

12. With regard to AUSA Dana Walsh Kumar's bizarre and non-specific statement that there is "additional information" that she requires, we have already indicated to both her and this Court, that any and all of the "additional information" requested is either impossible to obtain, not in Debtor's possession, redundant, ridiculous, or does not exist.

13. With regard to AUSA Dana Walsh Kumar's vacuous statement that she wants to know "what Debtor did with the proceeds from the $500,000 SBA loan to his law firm," we have already indicated that, as per our 2019 through 2022 tax returns, bank statements,

credit card statements, CPA and Accountant statements, lawyer work product, and other turned over financial documents, fully show that the SBA loan was used for its proper purpose, such as day to day law firm expenses, office rent, office mortgage, employee salaries, employee taxes, law firm taxes, insurance premiums, law office infrastructure, marketing, advertising, office supplies, furniture, security, transportation, office expansion, remote working conditions due to COVID, business expansion, etc, everything that these small business loans are used for, legally, ethically, morally, and equitably, and if after 1 full year of scrutiny, under a magnifying glass no doubt, AUSA Dana Walsh Kumar and her forensic accounting team at the United States Attorney's Office can't figure this out, then they never will, no matter how many more extensions, sabotage, threats, harassment, intimidation, delay tactics, government money and time wasting exercises that they engage in.

14. AUSA Dana Walsh Kumar still can not get it through her head, that the reason that, at one point, a large sum of cash was withdrawn, and then re-deposited at a certain point between 2019 to 2022, was because, as we have repeated more than 10 times, this was in response to one time wherein our Of Counsel at the time, Robert Androsiglio (we have the texts and emails) advised us to withdraw our entire bank account balance (including possibly loan funds) and then re-deposit it, due to a false lien/bank account seizure placed by NYC DSS HRA, immortalized in our lawsuit wherein Debtor sued them, in case index number 160282/2020, if either she, or this Court, wishes to read all about it.

15. It is impossible to distinguish where and how an SBA loan, disbursed in 2 lump sum payments between 2019 to 2022, intermingled with regular law firm small business deposits and payments either begin, or end, especially when it's over a period of many years.

16. This is the basis of AUSA and AUST's frustration, and inability to find anything wrong or untoward in any capacity, but to arbitrarily hold up Debtor's discharge, and to manufacture delay and sabotage, is not the appropriate solution, and in fact, is illegal under Rule 11(b).

17. Regarding quickly opening and closing bank accounts, and as we have previously litigated in our lawsuit against the IRS in SDNY case index 20-CV-10745, wherein Debtor discovered that IRS was possibly tampering with, intimidating bank personnel to close our bank accounts periodically, because upon information and belief we only had the bank account for a short period of time before they closed it.

17a. Based on that lawsuit, it is Debtor's assertion that AUSA Dana Walsh Kumar's client IRS did this (and continues to do this) by

threatening, intimidating, and scaring various bank personnel with their constant inquiries/harassment, such as with this recent "subpoena" that serves no other purpose but to alarm, harass, threaten, and intimidate Debtor and his bank representatives.

18. In contrast to AUSA Dana Walsh Kumar's assertions, Debtor has not opposed her subpoena, but only opposes another 3 month extension (3rd time).

19. Debtor through his CPA and Accountants Marc Albaum and Michael Arons make clear that his home law office expenses are proper as per our tax returns, deductions, exemptions, and allowances per the Internal Revenue Code ("IRC") from the relevant periods of 2019 through 2022.

20. Just because AUSA Dana Walsh Kumar, after 1 year of scrutinizing Debtor's complete financial records from 2019 through 2022, characterizes expenses as not being "apparent," does not mean that they are not, because everything is both "apparent," and transparent, simply its just that the AUSA and AUST after 1 year, can not find anything untoward.

21. Law Office Rent versus Law Office Mortgage payments are no different, other than how much can be deducted, and the latter was actually cheaper as the economy grew more brutal for a family of 3 living in Manhattan New York City, from where we were forced to move.

22. Our CPA/Accountants Marc Albaum and then Michael Arons prepared our tax returns, profit and loss, itemized deductions, exemptions, and bookkeeping for the last 10 years, and we have never been audited nor have our returns been rejected, even once.

23. We always rely on the legal and taxation advice and counsel of our army of lawyers, financial representatives, tax professionals, CPAs, accountants, and other experts who processed everything that AUSA Dana Walsh Kumar brings up, and everything has always been handled for the past 21 years of Debtor's law firm small business, with full transparency.

24. With regard to AUSA Dana Walsh Kumar's false statement (Rule 11) that "Debtor Did Not Complete His Rule 2004 Deposition" AUSA Dana Walsh Kumar again gaslights here, as the only ones who "interrupted," "refused," or engaged in "ad hominem attacks" were her, and AUST Gregory Zipes.

25. We have already reported them to the appropriate authorities.

26. And what exactly is the definition of "long, non responsive answers?"

27. Regarding the deposition transcriber "terminating the examination," no it was actually AUSA Dana Walsh Kumar and AUST Gregory Zipes who did so, and yes this was the court reporter that AUSA and AUST chose, on their own, and paid directly - what a surprise at her bias and manufactured incompetence in properly and duly "transcribing a clear record."

28. Then AUSA Dana Walsh Kumar castigates Debtor for having a serious severe gastro illness, sorry for having serious and severe medical problems proximately caused by the intentional torts and criminal conduct of the aforementioned AUSA and AUST, with their continued bad behavior currently being litigated in SDNY case 23 CV 7637.

29. Again, in contrast to AUSA Dana Walsh Kumar's false assertions, there is no "good cause" demonstrated here, for a third extension request.

30. Towards the end of AUSA Dana Walsh Kumar's diatribe, she squeals that Debtor has raised the prospect of Rule 11 sanctions, but Rule 11 Sanctions are totally appropriate here, when Debtor has documented with concrete examples of the AUSA and AUST constantly raising their own manufactured obstacles to Debtor's timely discharge "being presented for improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

31. To that end, Debtor obviously and vociferously objects to this Court granting yet another THIRD extension without demonstration of good cause, just manufactured obstruction, sabotage, gaslighting, delay tactics, scienter, deception, fraud, false statements, and other nonsense in violation of Rule 11(b).

Respectfully submitted,

*[signature]*

Rahul D. Manchanda, Esq.
270 Victory Boulevard
New Rochelle, NY 10804


cc: AUSA Dana Walsh Kumar (via email)
    86 Chambers Street, 3rd Floor
    New York, New York 10007

| | |
|---|---|
| DAMIAN WILLIAMS<br>United States Attorney for the<br>Southern District of New York<br>By: DANA WALSH KUMAR<br>Assistant United States Attorney<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007<br>Tel.: (212) 637-2741<br>E-mail: dana.walsh.kumar@usdoj.gov | **Hearing Date: January 10, 2024**<br>**Hearing Time: 10:00 a.m.** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RAHUL DEV MANCHANDA,<br><br>Debtor. | Chapter 7<br><br>Case No. 23-22095 (SHL) |

**REPLY IN FURTHER SUPPORT OF THE APPLICATION OF THE UNITED STATES FOR AN ORDER EXTENDING THE DEADLINES TO OBJECT TO DISCHARGE AND FILE AN ADVERSARY PROCEEDING PURSUANT TO 11 U.S.C. § 727 AND/OR 11 U.S.C. § 523(c)**

TO: THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

The United States of America (the "United States" or the "Government"), on behalf of the Internal Revenue Service ("IRS") and the Small Business Administration ("SBA"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, has moved this Court (a) pursuant to Federal Rule of Bankruptcy Procedure 4004(b), to extend the time to March 25, 2024, for it to file a complaint objecting to the discharge of Rahul Dev Manchanda ("Debtor") pursuant to 11 U.S.C. § 727; and (b) pursuant to Bankruptcy Rule 4007, to extend the time to March 25, 2024, for it to file an adversary proceeding opposing the dischargeability of Debtor's debts to the Government, to the extent required by 11 U.S.C. § 523(c) and/or Rule 4007. *See* ECF No. 97 (the "Motion"). On December 26, 2023, Debtor filed an opposition to the Government's

---

"Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997).

Per Rule 4007 Except as otherwise provided a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a). The court shall give all creditors no less than 30 days' notice of the time, and on motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed. AUSA Dana Walsh Kumar now for the THIRD TIME has not shown cause, and its an abuse of the court's discretion to continue to allow this.

motion. *See* ECF No. 100 ("Opp."). In further support its motion, the United States respectfully argues as follows:

## ARGUMENT

1. The Government respectfully seeks additional time to continue to investigate the financial affairs of the Debtor so it can determine whether it has grounds to object to Debtor's discharge under 11 U.S.C. § 727, and whether it should file an adversary proceeding objecting to the discharge of any of Debtor's debts to the Government pursuant to 11 U.S.C. § 523(a)(2), (4) or (6).

    *After 1 whole year, 3 extensions later? Debtor no longer has any money and is running on fumes here. To allow this THIRD EXTENSION WITHOUT CAUSE is an abuse of the court's discretion per Rule 4007 and 11 USC 523c.*

2. As explained in the Government's moving papers, "[i]n a chapter 7 case, a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4004(a). The Court, after notice and a hearing, may extend this deadline, for cause, so long as the motion seeking an extension is filed prior to the deadline. *See In re McCormack*, 244 B.R. 203, 208 (Bankr. D. Conn. 2000) ("[A]ll that must occur before the discharge/dischargeability deadline is that a motion for extension be 'made', *i.e., filed*."). The same timing applies to a creditor's objection to the dischargeability of an individual's debt pursuant to § 523(a)(2), (4) or (6). *See* 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007.

3. In opposition, the Debtor argues that the Government has not established good cause for a further extension because it has not explained what discovery it conducted in the sixty days after the Section 341 creditors meeting, which documents he has provided and which are outstanding, and why those documents are important to the Government's investigation. *See* Opp. at 12. The Debtor also claims that he "exhaustively cooperated with the Government to the extent that he is able." *Id.* As set forth in the Motion and below, the Debtor has not complied with the

    *No, that is a simplistic restatement of our multiple arguments. Refer back to our formal Reply Affirmation in Opposition.*

2

discovery requests issued to date and has not completed his Rule 2004 examination or answered material questions related to his finances. Accordingly, the Government needs additional time to ascertain whether he will produce the outstanding information or whether it may be available from a different source. There is thus good cause for the Government's requested extension.

*This is a false statement-both the deposition and discovery requests (last being subpoena) were self-created by AUSA Dana Walsh Kumar and AUST Gregory Zipes to waste and buy more time, trying to blame it on Debtor.*

*For third time, what exactly are they asking Debtor to "produce?" There has been no answer since July 2023.*

*This is simply a self-conclusory statement, with no reason, logic.*

### A. The Debtor's Discovery Responses Are Incomplete and Raise Further Questions

4. The Government's May 5, 2023, motion to extend time and seek discovery set forth the steps the Government had taken as of that date. ECF No. 33. The Court granted the Government's motion and extended the relevant deadlines to September 8, 2023. ECF No. 44.

*This has always been an abuse of discretion by the Court. A third extension request in this situation would be even more egregious.*

5. The Government's September 7, 2023, motion to further extend the deadlines at issue set forth the additional steps the Government had taken as of that time. ECF No. 63. The questions raised in that motion are still outstanding since the Debtor has not completed his Rule 2004 examination and has caused delays in the requests for financial records from his banks. This establishes good cause for the Government's requested extension.

*Final deposition has already been scheduled by the court, Debtor has agreed, but was initially sabotaged by AUSA and AUST for reasons previously given.*

*The record shows that AUSA Dana Walsh Kumar wasted 3 months asking Debtor his "signature" on her own subpoenas, but then only today emailed Debtor that his signature was never required, cc'ed to the court. This is prima facie delay tactics and scienter.*

6. To summarize, since May 2023, the Government has worked with the Office of the United States Trustee ("UST") to gather relevant financial information from the Debtor. The Debtor initially refused to produce any additional documents or information, but later made three incomplete document productions on May 30, July 18, and August 6, 2023. The Government has identified additional information it needs beyond these materials to complete its investigation.

*Rehash of old arguments - Debtor's obligations for document discovery was concluded in July 2023 with hand delivery to both.*

*We have already indicated that any and all of the "additional information" listed is either impossible, not in Debtor's possession, redundant, ridiculous, does not exist, etc.*

7. Significantly, the documents the Debtor produced did not indicate what he did with the proceeds from the $500,000 SBA loan to his law firm. While the Debtor's production included bank statements showing that this loan was deposited (in two installments) into his law firm's bank accounts, the full amount of each of those deposits was immediately withdrawn, and the records produced to date do not indicate where the funds went or what they were used for. The Debtor claims that "he was told to remove [the proceeds] from checking and place it into savings and back

*Our tax returns, bank statements, credit card statements fully show that the SBA loan was used for its purpose, day to day law firm expenses, office rent, office mortgage, employee salaries, employee taxes, infrastructure, marketing, advertising, supplies, furniture, security, transportation, office expansion, remote working conditions due to COVID, business expansion, etc, everything that these small business loans are used for legally and equitably.*

3

again" because of a child support dispute. *See* Opp. at 5. In addition to this being a strange explanation, the records the Debtor has produced thus far do not show the loan proceeds being transferred "back" into any checking account for which the Government has records. Instead, there appear to be large amounts of money remaining in the savings accounts for which the Debtor produced incomplete records. And Debtor's purported explanation does not account for the timing of the two withdrawals, which took place approximately eighteen months apart, or explain how the funds were ultimately used after these account transfers. The Debtor admits that he "used the SBA loans intermingled with already existing balances over many years to partially pay for law office rent and as well as law office mortgage payments," Opp. at 6, which seems to indicate that he used SBA loan proceeds to pay the mortgage on his personal residence. The Government requires further information about the Debtor's use of the loan proceeds, which it intends to seek from the Debtor and the relevant financial institutions.

> This was in response to one time wherein our counsel at the time Robert Androsiglio advised us to withdraw loan funds (and then redeposit) due to a false lien placed by NYC DSS HRA immortalized in our lawsuit 160282/2020

> Also it is Debtor position that IRS and government periodically engineered closing of his bank accounts scaring bank personnel.

> It is impossible to distinguish where and how an SBA loan disbursed in 2 lump sum payments from 2019 to 2022, intermingled with regular law firm business deposits, either begin or end, especially when it's over a period of many years. This is the basis of AUSA and AUST's frustration and inability to find anything wrong or untowards in any capacity - but to arbitrarily hold up Debtor's discharge and manufacture delay/sabotage is not the solution.

8. In addition, certain bank statements appear to be missing from the Debtor's productions. For example, for one savings account at CitiBank, the Debtor produced statements for just a single month, January 12 to February 8, 2021. For another account at TD Bank, the debtor produced statements only from August 2022 to December 2022, but it is unclear whether the account was active before then. The Court has granted the Government's application to subpoena the three relevant banks to ensure the Government has a complete set of records. ECF No. 93.

> Because upon information and belief we only had the bank account for a short period of time before they closed it.

> Ditto, we think IRS did this by threatening, intimidating, scaring various bank personnel with their constant inquiries/harassment.

> We have not opposed this subpoena, we only oppose another 3 month extension (3rd time).

9. Furthermore, the Government has outstanding questions relating to the Debtor's purchase of his home in July 2022. Records from one of the law firm's bank accounts appear to show a disbursement for the downpayment used for the purchase of the home. The Debtor, however, produced only an incomplete set of statements for this account, and the source of the

> Home law office as per our tax returns, deductions, exemptions, and allowances per the IRC.

4

downpayment funds is not apparent. The Government therefore intends to request further information about these funds from the Debtor and the bank in question. <span style="margin-left:1em">Everything is "apparent" and transparent, just AUSA and AUST after 1 year can not find anything untowards.</span>

10. In addition to the gaps in the productions to date, the Government has questions about the documents the Debtor has produced and his use of funds in the year before he filed for bankruptcy. Many of the 2022 bank statements the Debtor produced include handwritten notations, which appear to categorize business and personal expenses for tax purposes. The Debtor <span style="margin-left:1em">Law Office Rent</span> noted as business expenses many items that do not seem to fit into that category, such as mortgage payments for his primary residence and other items that appear unrelated to the business. This appears to be corroborated by the Debtor's produced tax returns, which include large business deductions. The Government intends to question the Debtor further about these expenses and his sources of income and disbursements in 2022.

<span style="margin-left:1em">versus Law Office Mortgage payments are no different other than how much can be deducted, latter was cheaper.</span>

<span style="margin-left:1em">Our CPA/Accountants Marc Albaum and then Michael Arons prepare our tax returns, profit and loss, itemize deductions, exemptions, and bookkeeping for the last 10 years, with a few others interspersed therein, and we have never been audited nor have our returns been rejected even once. We always rely on the legal advice and counsel of our army of lawyers, financial reps, tax professionals and others who processed everything AUSA brings up with full transparency.</span>

**B. The Debtor Did Not Complete His Rule 2004 Deposition**

11. Furthermore, pursuant to the Court's order, the Government and the UST attempted to conduct a Rule 2004 deposition of the Debtor by Zoom on September 20, 2023. However, the Government and UST were unable to complete the questioning because the Debtor repeatedly interrupted the questions and refused to answer them, instead offering long, non-responsive answers and ad hominem attacks. As previously explained, approximately two and a half hours, the court reporter terminated the examination because she was unable to transcribe a clear record.

<span style="margin-left:1em">AUSA Dana Walsh Kumar gaslights here, as the only ones who "interrupted," "refused," engaged in "ad hominem attacks" were her, and AUST Gregory Zipes. We have already reported them to the appropriate authorities. And what exactly is the definition of "long, non-responsive answers?"</span>

<span style="margin-left:1em">Yes the court reporter that AUSA and AUST chose, on their own, and paid directly - what a surprise at her bias and manufactured incompetence in properly and duly "transcribing a clear record."</span>

12. The parties agreed to continue the examination on November 6, 2023, but the Debtor did not appear at the time agreed upon because he stated that he was suffering health issues. The examination is now scheduled to take place on January 26, 2024. ECF No. 96.

<span style="margin-left:1em">Sorry for having serious and severe medical problems proximately caused by the intentional torts and criminal conduct of AUSA and AUST, currently being litigated in SDNY case 23-CV-7637.</span>

13. For all of these reasons and for the reasons stated in the Motion, there is "good cause" to further extend the time for the United States to file a complaint objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727 or an adversary proceeding alleging that certain of his debts

5

are nondischargeable to the extent required by 11 U.S.C. § 523(c). *See In re Rubin*, No. 2:16-BK-12936 (RK), 2016 WL 4442846, at *2 (Bankr. C.D. Cal. Aug. 22, 2016) (granting extension where creditor made "showing that it [was] diligently pursuing its investigation").

[Margin annotation: No, there's not "good cause" demonstrated here, for the third extension request.]

### C. Debtor's Threat of Sanctions

14. In his opposition, the Debtor makes multiple ad hominem attacks and threatens to move for sanctions against counsel for the Government. The Debtor's proposed sanctions motion is without any basis in law or fact, and seems only to be an impermissible means to harass. *See Malkan v. Mutua*, 699 F. App'x 81, 83 (2d Cir. 2017) (affirming denial of sanctions motion because the district court "reasonably found that the motion had no factual or legal basis, and was meant to harass"). The Government has addressed the Debtor's non-frivolous legal or factual arguments in its Motion and has established good cause for the requested extensions.

[Margin annotation: Rule 11 Sanctions are totally appropriate here, when Debtor has documented with concrete examples of "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."]

### CONCLUSION

WHEREFORE, the United States requests entry of an order substantially in the form attached to the Motion as Exhibit A: (a) pursuant to Bankruptcy Rule 4004(b), extending the time to March 25, 2024, for the United States to file a complaint under 11 U.S.C. § 727 objecting to the Debtor's discharge in this case; and (b) pursuant to Bankruptcy Rule 4007, extending the time to March 25, 2024, for the United States to file an adversary proceeding alleging that certain of the Debtor's debts are non-dischargeable to the extent required by 11 U.S.C. § 523(c) and/or Rule 4007. Objected to, vociferously.

6

Dated: January 5, 2024
New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: */s/ Dana Walsh Kumar*
DANA WALSH KUMAR
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2641
E-mail: dana.walsh.kumar@usdoj.gov

**Via FedEx, ECF, and Email**:
Rahul Dev Manchanda
270 Victory Blvd. N
New Rochelle, New York 10801
info@manchanda-law.com
rdm@manchanda-law.com
*Chapter 7 Debtor*

**CERTIFICATE OF SERVICE**

On January 6, 2024, I, Rahul Manchanda, served a copy of this Debtor Letter In Opposition to AUSA Dana Walsh Kumar Illegal Sur-Reply and any attached pages to 86 Chambers Street, 3rd Floor, New York, New York 10007 via Electronic and U.S. Mail.

_____
By: Rahul Manchanda, Esq.
Manchanda Law Office PLLC
270 Victory Boulevard
New Rochelle, New York 10804
Tel: (212) 968-8600
Fax: (212) 968-8601